1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, et al.,** | **CIVIL ACTION NUMBER:** |
| *Plaintiffs*, | **1:24-cv-03993-HB** |
| **vs.** | |
| **BLACKBAUD, INC., et al.,** | **STATUS CONFERENCE** |
| *Defendants.* | |
| | |
| **ATLAS DATA PRIVACY CORPORATION, et al.,** | **CIVIL ACTION NUMBER:** |
| *Plaintiffs*, | **1:24-cv-03998-HB** |
| **vs.** | |
| **WHITEPAGES, INC., et al.,** | |
| *Defendants.* | |

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101
Monday, June 3, 2024
Commencing at 9:57 a.m.

**B E F O R E:**           **THE HONORABLE HARVEY BARTLE, III,**
                          **UNITED STATES DISTRICT JUDGE (EDPA)**

(CAPTION CONTINUED ONTO NEXT PAGES)

John J. Kurz, Federal Official Court Reporter
John_Kurz@njd.uscourts.gov
(856)576-7094

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

——————————————————————

**ATLAS DATA PRIVACY CORPORATION,**
**et al.,**                                          CIVIL ACTION NUMBER:
            *Plaintiffs*,                            **1:24-cv-04000-HB**
**vs.**

**HIYA, INC., et al.,**
            *Defendants.*
——————————————————————

**ATLAS DATA PRIVACY CORPORATION,**
**et al.,**                                          CIVIL ACTION NUMBER:
            *Plaintiffs*,                            **1:24-cv-04037-HB**
**vs.**

**WE INFORM, LLC,**
            *Defendants.*
——————————————————————

**ATLAS DATA PRIVACY CORPORATION,**
**et al.,**                                          CIVIL ACTION NUMBER:
            *Plaintiffs*,                            **1:24-cv-04041-HB**
**vs.**

**INFOMATICS, LLC, et al.,**
            *Defendants.*
——————————————————————

**ATLAS DATA PRIVACY CORPORATION,**
**et al.,**                                          CIVIL ACTION NUMBER:
            *Plaintiffs*,                            **1:24-cv-04045-HB**
**vs.**

**THE PEOPLE SEARCHERS, LLC, et al.,**
            *Defendants.*
——————————————————————

**ATLAS DATA PRIVACY CORPORATION,**
**et al.,**                                          CIVIL ACTION NUMBER:
            *Plaintiffs*,                            **1:24-cv-04073-HB**
**vs.**

**COMMERCIAL REAL ESTATE EXCHANGE,**
**INC., et al.,**
            *Defendants.*
——————————————————————

(CAPTION CONTINUED ONTO NEXT PAGES)

```
1    _____

2    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
3                      Plaintiffs,          1:24-cv-04075-HB
     vs.
4
     DM GROUP, INC., et al.,
5                      Defendants.
     _____
6

7    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
8                      Plaintiffs,          1:24-cv-04077-HB
     vs.
9
     CARCO GROUP INC., et al.,
10                     Defendants.
     _____
11

12   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
13                     Plaintiffs,          1:24-cv-04080-HB
     vs.
14
     DELUXE CORPORATION, et al.,
15                     Defendants.
     _____
16   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
17                     Plaintiffs,          1:24-cv-04095-HB
     vs.
18
     TWILIO INC., et al.,
19                     Defendants.

20   _____

21   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
22                     Plaintiffs,          1:24-cv-04096-HB
     vs.
23
     DELVEPOINT, LLC, et al.,
24                     Defendants.
     _____
25                 (CAPTION CONTINUED ONTO NEXT PAGES)
```

```
1    _____

2    ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
3                      Plaintiffs,            1:24-cv-04098-HB
     vs.
4
     QUANTARIUM ALLIANCE, LLC, et al.,
5                      Defendants.
     _____
6

7    ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
8                      Plaintiffs,            1:24-cv-04103-HB
     vs.
9
     YARDI SYSTEMS, INC., et al.,
10                     Defendants.
     _____
11

12   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
13                     Plaintiffs,            1:24-cv-04104-HB
     vs.
14
     6SENSE INSIGHTS, INC., et al.,
                       Defendants.
15   _____

16   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
17                     Plaintiffs,            1:24-cv-04105-HB
     vs.
18
     LIGHTBOX PARENT, L.P., et al.,
19                     Defendants.
20   _____

21   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
22                     Plaintiffs,            1:24-cv-04106-HB
     vs.
23
     SEARCH QUARRY, LLC, et al.,
                       Defendants.
24   _____

25                    (CAPTION CONTINUED ONTO NEXT PAGES)
```

| | |
|---|---|
| 1 | _____ |
| 2 | **ATLAS DATA PRIVACY CORPORATION,** **et al.,** | **CIVIL ACTION NUMBER:** |
| 3 | *Plaintiffs,* | **1:24-cv-04107-HB** |
| 4 | vs. |
| | **ACXIOM, LLC, et al.,** |
| 5 | *Defendants.* |
| | _____ |
| 6 | |
| 7 | **ATLAS DATA PRIVACY CORPORATION,** **et al.,** | **CIVIL ACTION NUMBER:** |
| 8 | *Plaintiffs,* | **1:24-cv-04110-HB** |
| 9 | vs. |
| | **ENFORMION, LLC, et al.,** |
| 10 | *Defendants.* |
| | _____ |
| 11 | |
| 12 | **ATLAS DATA PRIVACY CORPORATION,** **et al.,** | **CIVIL ACTION NUMBER:** |
| 13 | *Plaintiffs,* | **1:24-cv-04111-HB** |
| | vs. |
| 14 | **COSTAR GROUP, INC., et al.,** |
| | *Defendants.* |
| 15 | _____ |
| 16 | **ATLAS DATA PRIVACY CORPORATION,** **et al.,** | **CIVIL ACTION NUMBER:** |
| 17 | *Plaintiffs,* | **1:24-cv-04112-HB** |
| 18 | vs. |
| | **ORACLE INTERNATIONAL CORPORATION,** |
| 19 | **et al.,** |
| | *Defendants.* |
| 20 | _____ |
| 21 | **ATLAS DATA PRIVACY CORPORATION,** **et al.,** | **CIVIL ACTION NUMBER:** |
| 22 | *Plaintiffs,* | **1:24-cv-04113-HB** |
| 23 | vs. |
| | **RED VIOLET, INC., et al.,** |
| 24 | *Defendants.* |
| | _____ |
| 25 | (CAPTION CONTINUED ONTO NEXT PAGES) |

*United States District Court*
*District of New Jersey*

```
1    _____

2    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
3                    Plaintiffs,            1:24-cv-04114-HB
     vs.
4
     RE/MAX, LLC, et al.,
5                    Defendants.
     _____
6
7    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
                     Plaintiffs,            1:24-cv-04141-HB
8    vs.
9    DIGITAL SAFETY PRODUCTS, LLC, et al.,
                     Defendants.
10   _____

11   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
12                   Plaintiffs,            1:24-cv-04143-HB
     vs.
13
     CIVIL DATA RESEARCH,
14                   Defendants.

15   _____

16   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
17                   Plaintiffs,            1:24-cv-04160-HB
     vs.
18   SCALABLE COMMERCE, LLC, et al.,
                     Defendants.
19   _____

20   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
21                   Plaintiffs,            1:24-cv-04168-HB
     vs.
22
     EPSILON DATA MANAGEMENT, LLC, et al.,
23                   Defendants.
     _____
24

25              (CAPTION CONTINUED ONTO NEXT PAGES)
```

---

**ATLAS DATA PRIVACY CORPORATION,**                CIVIL ACTION NUMBER:
**et al.,**
                    *Plaintiffs,*                **1:24-cv-04171-HB**
**vs.**

**PEOPLE DATA LABS, INC., et al.,**
                    *Defendants.*

---

**ATLAS DATA PRIVACY CORPORATION,**                CIVIL ACTION NUMBER:
**et al.,**
                    *Plaintiffs,*                **1:24-cv-04174-HB**
**vs.**

**LABELS & LISTS, INC.,**
                    *Defendants.*

---

**ATLAS DATA PRIVACY CORPORATION,**                CIVIL ACTION NUMBER:
**et al.,**
                    *Plaintiffs,*                **1:24-cv-04175-HB**
**vs.**

**CLARITAS, LLC, et al.,**
                    *Defendants.*

---

**ATLAS DATA PRIVACY CORPORATION,**                CIVIL ACTION NUMBER:
**et al.,**
                    *Plaintiffs,*                **1:24-cv-04176-HB**
**vs.**

**INNOVIS DATA SOLUTIONS INC., et al.,**
                    *Defendants.*

---

**ATLAS DATA PRIVACY CORPORATION,**                CIVIL ACTION NUMBER:
**et al.,**
                    *Plaintiffs,*                **1:24-cv-04178-HB**
**vs.**

**ACCURATE APPEND, INC., et al.,**
                    *Defendants.*

---

                    (CAPTION CONTINUED ONTO NEXT PAGES)

ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04181-HB
vs.

DATA AXLE, INC., et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04182-HB
vs.

REMINE INC., et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04184-HB
vs.

LUSHA SYSTEMS, INC., et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04217-HB
vs.

TELTECH SYSTEMS, INC., et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04227-HB
vs.

PEOPLECONNECT, INC., et al.,
                    *Defendants*.

---

(CAPTION CONTINUED ONTO NEXT PAGES)

```
1   ─────────────────────────────

2   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
3                    Plaintiffs,            1:24-cv-04230-HB
    vs.
4
    CORELOGIC, INC., et al.,
5                    Defendants.
    ─────────────────────────────
6
    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
7   et al.,
                     Plaintiffs,            1:24-cv-04233-HB
8   vs.

9   BLACK KNIGHT TECHNOLOGIES, LLC,
    et al.,
10                   Defendants.
    ─────────────────────────────
11
    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
12  et al.,
                     Plaintiffs,            1:24-cv-04256-HB
13  vs.

14  ZILLOW, INC., et al.,
                     Defendants.
15  ─────────────────────────────

16  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
17                   Plaintiffs,            1:24-cv-04261-HB
    vs.
18
    EQUIMINE, INC., et al.,
19                   Defendants.

20  ─────────────────────────────

    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
21  et al.,
                     Plaintiffs,            1:24-cv-04269-HB
22  vs.

23  THOMSON REUTERS CORPORATION, et al.,
                     Defendants.
24  ─────────────────────────────

25                  (CAPTION CONTINUED ONTO NEXT PAGES)
```

1   ─────────────────────────────

2   **ATLAS DATA PRIVACY CORPORATION,**     **CIVIL ACTION NUMBER:**
    **et al.,**

3                ***Plaintiffs,***       **1:24-cv-04271-HB**

    **vs.**

4

5   **CHOREOGRAPH LLC, et al.,**

              ***Defendants.***

6   ─────────────────────────────

7   **ATLAS DATA PRIVACY CORPORATION,**     **CIVIL ACTION NUMBER:**
    **et al.,**

8                ***Plaintiffs,***       **1:24-cv-04288-HB**

    **vs.**

9   **TRANSUNION, LLC, et al.,**

              ***Defendants.***

10   ─────────────────────────────

11   **ATLAS DATA PRIVACY CORPORATION,**     **CIVIL ACTION NUMBER:**
    **et al.,**

12                ***Plaintiffs,***       **1:24-cv-04292-HB**

    **vs.**

13

14   **MELISSA DATA CORP., et al.,**

              ***Defendants.***

15   ─────────────────────────────

16   **ATLAS DATA PRIVACY CORPORATION,**     **CIVIL ACTION NUMBER:**
    **et al.,**

17                ***Plaintiffs,***       **1:24-cv-04298-HB**

    **vs.**

18   **EQUIFAX INC., et al.,**

              ***Defendants.***

19   ─────────────────────────────

20   **ATLAS DATA PRIVACY CORPORATION,**     **CIVIL ACTION NUMBER:**
    **et al.,**

21                ***Plaintiffs,***       **1:24-cv-04299-HB**

    **vs.**

22

23   **SPOKEO, INC., et al.,**

              ***Defendants.***

24   ─────────────────────────────

25          (CAPTION CONTINUED ONTO NEXT PAGES)

```
 1   _____

 2   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
 3                    Plaintiffs,           1:24-cv-04324-HB
     vs.
 4
     RESTORATION OF AMERICA, et al.,
 5                    Defendants.
     _____
 6
     ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
 7   et al.,
                      Plaintiffs,           1:24-cv-04345-HB
 8   vs.

 9   i360, LLC, et al.,
                      Defendants.
10   _____

11   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
12                    Plaintiffs,           1:24-cv-04354-HB
     vs.
13
     TELNYX LLC, et al.,
14                    Defendants.
     _____
15
     ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
16   et al.,
                      Plaintiffs,           1:24-cv-04380-HB
17   vs.

18   GOHUNT, LLC, et al.,
                      Defendants.
19   _____

20   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
21                    Plaintiffs,           1:24-cv-04383-HB
     vs.
22
     ACCUZIP, INC., et al.,
23                    Defendants.
     _____
24

25              (CAPTION CONTINUED ONTO NEXT PAGES)
```

---

ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04385-HB
vs.

SYNAPTIX TECHNOLOGY, LLC, et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04389-HB
vs.

JOY ROCKWELL ENTERPRISES, INC.,
et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04390-HB
vs.

FORTNOFF FINANCIAL, LLC, et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04392-HB
vs.

MYHERITAGE, LTD., et al.,
                    *Defendants*.

---

ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    *Plaintiffs*,        1:24-cv-04434-HB
vs.

E-MERGES.COM, INC.,
                    *Defendants*.

---

(CAPTION CONTINUED ONTO NEXT PAGES)

```
ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    Plaintiffs,        1:24-cv-04442-HB
vs.

WILAND, INC., et al.,
                    Defendants.


ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    Plaintiffs,        1:24-cv-04447-HB
vs.

ATDATA, LLC, et al.,
                    Defendants.


ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    Plaintiffs,        1:24-cv-04566-HB
vs.

LEXISNEXIS RISK DATA MANAGEMENT,
LLC, et al.,
                    Defendants.


ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    Plaintiffs,        1:24-cv-04571-HB
vs.

PRECISELY HOLDINGS, LLC, et al.,
                    Defendants.


ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
et al.,
                    Plaintiffs,        1:24-cv-04609-HB
vs.

NUWBER, INC., et al.,
                    Defendants.
```

(CAPTION CONTINUED ONTO NEXT PAGES)

1 ───────────────────────────

2 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
  **et al.,**
3                      *Plaintiffs,*          **1:24-cv-04664-HB**
  **vs.**
4
  **ROCKETREACH LLC, et al.,**
5                      *Defendants.*
  ───────────────────────────
6
7 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
  **et al.,**
                       *Plaintiffs,*          **1:24-cv-04696-HB**
8 **vs.**
9 **OUTSIDE INTERACTIVE, INC.,**
                       *Defendants.*
10 ───────────────────────────

11 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
12                      *Plaintiffs,*          **1:24-cv-04770-HB**
   **vs.**
13
   **VALASSIS DIGITAL CORP., et al.,**
14                      *Defendants.*
   ───────────────────────────
15
16 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
                        *Plaintiffs,*          **1:24-cv-04850-HB**
17 **vs.**
18 **THE LIFETIME VALUE CO. LLC, et al.,**
                        *Defendants.*
19 ───────────────────────────

20 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
21                      *Plaintiffs,*          **1:24-cv-04949-HB**
   **vs.**
22
   **BELLES CAMP COMMUNICATIONS, INC., et al.,**
23                      *Defendants.*
   ───────────────────────────
24

25                    (CAPTION CONTINUED ONTO NEXT PAGES)

1  _____

2  **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
3              *Plaintiffs,*                     1:24-cv-05334-HB
   **vs.**
4
   **FIRST AMERICAN FINANCIAL**
5  **CORPORATION, et al.,**
              *Defendants.*
6  _____

7  **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
8              *Plaintiffs,*                     1:24-cv-05600-HB
   **vs.**
9
   **PROPERTYRADAR, INC., et al.,**
10             *Defendants.*
11 _____

12 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
13             *Plaintiffs,*                     1:24-cv-05656-HB
   **vs.**
14 **THE ALESCO GROUP, L.L.C.,**
              *Defendants.*
15 _____

16 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
17             *Plaintiffs,*                     1:24-cv-05658-HB
   **vs.**
18
   **SEARCHBUG, INC.,**
19             *Defendants.*
20 _____

21 **ATLAS DATA PRIVACY CORPORATION,**          CIVIL ACTION NUMBER:
   **et al.,**
22             *Plaintiffs,*                     1:24-cv-05775-HB
   **vs.**
23 **AMERILIST, INC., et al.,**
              *Defendants.*
24 _____

25

1    **A P P E A R A N C E S:**

2        BOIES SCHILLER FLEXNER LLP
         BY: ADAM R. SHAW, ESQUIRE
3        30 South Pearl Street, 12th Floor
         Albany, New York 12207
4        For the Plaintiffs

5        BOIES SCHILLER FLEXNER LLP
         BY:  HSIAO (MARK) C. MAO, ESQUIRE
6        44 Montgomery Street, 41st Floor
         San Francisco, California 94104
7        For the Plaintiffs

8        MORGAN & MORGAN
         BY:  RYAN JOSEPH McGEE, ESQUIRE
9        201 N. Franklin Street, 7th Floor
         Tampa, Florida 33602
10       For the Plaintiffs

11       PEM LAW LLP
         BY:  RAJIV D. PARIKH, ESQUIRE
12       1 Boland Drive, Suite 101
         West Orange, New Jersey 07052
13       For the Plaintiffs

14

         TROUTMAN PEPPER HAMILTON SANDERS LLP
15       BY:  ANGELO A. STIO III, ESQUIRE
             MELISSA CHUDEREWICZ, ESQUIRE
16       301 Carnegie Center, Suite 400
         Princeton, New Jersey 08543
17       For the Defendants CARCO Group Inc.; Acxiom, LLC;
         AtData, LLC; Deluxe Corporation; DM Group, Inc.;
18       Enformion, LLC; Red Violet, Inc.; Remine Inc.;
         RocketReach LLC; CoreLogic, Inc.
19

20       VEDDER PRICE, P.C.
         BY:  BLAINE C. KIMREY, ESQUIRE
21       222 North LaSalle Street
         Chicago, Illinois 60601
22       For the Defendants Whitepages, Inc., and Hiya, Inc.,
         et al.
23

24               (Appearances continued onto next page.)

25

**A P P E A R A N C E S:** (Continued)

```
        SEYFARTH SHAW LLP
        By:  ROBERT T. SZYBA, Esquire
        620 Eighth Avenue, 32nd Floor
        New York, New York 10018
        For the Defendants Infomatics, LLC; The People
        Searchers, LLC; and We Inform, LLC, et al.

        McCARTER & ENGLISH, LLP
        BY:  SCOTT S. CHRISTIE, ESQUIRE
        Four Gateway Center
        100 Mulberry Street
        Newark, New Jersey 07102
        For the Defendants Black Knight Technologies, LLC and
        Black Knight, Inc.

        HOGAN LOVELLS US LLP
        BY:  DAVID M. CHEIFETZ, ESQUIRE
        390 Madison Avenue
        New York, New York 10017
        For the Defendant The Lifetime Value Co.

        LATHAM & WATKINS, LLP
        BY:  ROBERT C. COLLINS, III, ESQUIRE
        330 North Wabash Avenue, Suite 2800
        Chicago, Illinois 60611
        For the Defendants CoStar Group, Inc.; CoStar Realty
        Information, Inc.; Lightbox Parent, L.P.; Lightbox
        Holdings, L.P.; Oracle International Corporation; Oracle
        America, Inc.; Oracle Corp.; PeopleConnect Holdings,
        Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC


        FAEGRE DRINKER BIDDLE & REATH LLP
        BY:  ROSS LEWIN, ESQUIRE
        105 College Road East, Suite 300
        Princeton, New Jersey 08542
        For the Defendants Epsilon Data Management, LLC;
        Conversant LLC; and Citrus Ad International, Inc.


        SAUL EWING LLP
        BY:  WILLIAM C. BATON, ESQUIRE
        1 Riverfront Plaza, 1037 Raymond Boulevard
        Apartment 1520
        Newark, New Jersey 07102
        For the Defendants Precisely and Valassis
```

(Appearances continued onto next page.)

*18*

1  **A P P E A R A N C E S:** **(Continued)**

2          PARKER POE ADAMS & BERNSTEIN, LLP
           BY:  SARAH FULTON HUTCHINS, ESQUIRE
3          620 South Tryon Street, Suite 800
           Charlotte, North Carolina 28202
4          For the Defendant BlackBaud, Inc.

5  **Also Present:**

6  Larry MacStravic, The Courtroom Deputy

7  Maria Cosma, Judicial Law Clerk

8  (Further appearances of counsel are listed on sign-in sheet,
   Attachment 1, to the docket minute entry.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (PROCEEDINGS held in open court before The Honorable

2     Harvey Bartle, III, United States District Judge, at

3     9:57 a.m. as follows:)

4              THE COURTROOM DEPUTY:  All rise.

5              THE COURT:  Good morning.  You may be seated.

6              MR. SHAW:  Good morning, Your Honor.

7              MR. PARIKH:  Good morning.

8              MR. STIO:  Good morning, Your Honor.

9              MS. CHUDEREWICZ:  Good morning.

10             THE COURT:  Thank you for coming.  The topic of this

11    morning's conference centers on the scope of discovery with

12    respect to the remand motions and also a briefing schedule.

13    But before we get to that, there's some issue that's been

14    raised about the form of discovery.

15             Mr. Stio has disputed that.  And I guess the question

16    is whether we should try to go through the various requests,

17    get it decided here today, and put it in an order, rather than

18    wait for Rule 34 motions to be filed and then objections and

19    all the rest of it.  Because I think the issues are pretty well

20    teed up here at this point.

21             Mr. Stio, I'll hear from you on that.

22             MR. STIO:  Good morning, Your Honor.

23             THE COURT:  Good morning.

24             MR. STIO:  My view on that is that there's a process

25    under the federal rules so that we can have certainty as to

1    what documents are being requested, whether there are documents

2    that are being withheld, whether there are documents that they

3    don't have, and if they're claiming privilege over documents,

4    we would like to see what they're claiming privilege over.

5            I think with the order, it provides a vagueness where

6    a party could take advantage of that.  And my preference would

7    be to follow the federal rules.  There's a process in place.  I

8    know that other courts have employed that even with subject

9    matter jurisdiction, and I would respectfully request that we

10   use that here, Your Honor.

11           THE COURT:  Mr. Shaw.

12           MR. SHAW:  Good morning, Your Honor.  Adam Shaw for

13   the plaintiffs.

14           THE COURT:  Good morning.  Yeah.

15           MR. SHAW:  We think that that's just an overburden in

16   this situation here.  We tried to follow Your Honor's direction

17   at the last conference that we not slice this too thin.  We are

18   trying to give them everything about the assignment that they

19   could gain the information that they need for this

20   jurisdiction.

21           I think it's important to remember the context.  The

22   context is they have the burden of proving that we colluded for

23   the purpose of somehow getting these, you know, subset of

24   undefined group of the remand defendants into state court, even

25   though there's double that amount that are in federal court.

1        I mean, the initial assumption is a fiction.  We

2   asked them, what is it that you want?  What's the basis of it?

3   And they said, we don't have a factual basis for determining

4   collusion.  We have speculation.  And so we're trying to put a

5   reasonable, efficient way of getting them the information that

6   they need.

7        They want information about the assignments, here's

8   our list, we're giving you the assignments, we're giving you --

9   you could determine the amount of the assignment, the timing of

10  the assignment, the relationship between the parties in the

11  assignment.  We're giving them that.  They raised an issue

12  about the PBA.  We're going to give them the PBA documents.

13  Most importantly, we're going to give them a 30(b)(6) witness.

14  Half of these questions that they have about motive, they could

15  just get it from the 30(b)(6) witness.  Instead they want us to

16  engage in this wholesome process that we think goes too far,

17  because then we're going to start arguing about, you know, what

18  are the sources, what are the search terms, what are all of the

19  things that are just unnecessary here, especially when you have

20  a 30(b)(6) witness.

21        THE COURT:  Mr. Stio.

22        MR. STIO:  I think we got a little bit off of the

23  subject of what is the form, but, Your Honor, I want to try to

24  prevent gamesmanship here.  I want to serve document requests.

25  I want to serve a Rule 30(b)(6) notice.  They are not

1    burdensome.  They are very narrow.  They focus on the *Grassi*
2    factors that the plaintiffs admit are relevant.  And one of the
3    things that they fail to recognize to Your Honor but they have
4    in their document, the letter that they submitted, is all the
5    cases that we have put in our letter talk about the totality of
6    the circumstances.  And the scope is not narrow collusion.  The
7    scope is, who is the real party in interest?

8            And our document requests, our topics are targeted to
9    that.  And they're targeted to issues of what communications
10   occurred here.  And we're not looking for broad ESI.  But we
11   have put before Your Honor a factual basis for why we think
12   that there is collusion and why Atlas isn't a real party in
13   interest.

14           In April of 2023, Atlas started soliciting all of
15   these police officers.  They have come to this Court on two
16   prior occasions saying, we have to get these nondisclosure
17   requests in place, we need people to start taking things down.
18   They held on to these documents since April of 2023, these
19   assignments, some of them.

20           We need to know what representations, what
21   communications were occurring with the PBA.

22           Now, they said, well, we're going to give the PBA
23   documents.  No.  If you look at what they proposed, they're
24   going to give us a contract.  They're not going to give us any
25   communications with Pat Colligan of why he's writing a letter

1    on April 5th saying, "Atlas Privacy, the time is now, sign up."

2            They jerry-rigged this to create a lawsuit --

3            THE COURT:  I think we're getting off the subject.  I

4    really want to talk about the format.

5            MR. STIO:  Okay.

6            THE COURT:  And there are two ways to go here.  One

7    is the more traditional way, you file your motion or your

8    request for production and so forth, and then the plaintiff

9    objects if it believes that you're asking for things that

10   you're not entitled to.  And that's going to delay it.

11           Now, in this case, unlike many cases, you've already

12   set forth what you want in your letter to me and to counsel,

13   and they have set forth what they're prepared to give.  So it

14   seems to me it would expedite the matter if the Court entered

15   an order, after discussion here today, what the plaintiff will

16   be required to produce.

17           Your record is protected because this hearing is on

18   the record, and like any other hearing, you have made a record

19   as to what you wanted and what the Court may not permit you to

20   have and any other discovery dispute.  So it seems to me we're

21   in a position to go through the list today.  We know what the

22   plaintiff is willing to produce, and then you can make your

23   pitch about what should be added and then I enter an order,

24   require the plaintiffs to produce the documents within a

25   certain period of time, and we'll deal with that subject with

1    respect to the Rule 30(b)(6) depositions, what the topics are,

2    and we'll get that straightened out, and then you'll have your

3    30(b)(6) deposition after you receive the documents, and then

4    we'll have briefing.  I mean, it seems to me pretty

5    straightforward, particularly the way it's been set up so far

6    with your disclosing exactly what you want.

7              So in effect, you have prepared your Rule 34 request.

8              MR. STIO:  I understand that, Your Honor.

9              Can I ask a question?

10             THE COURT:  Sure.

11             MR. STIO:  Would any order include the obligation to

12   identify what documents are being withheld, what documents

13   don't exist, and a privilege log if they're withholding

14   documents on privilege?

15             THE COURT:  Well, according to their letter, there

16   are certain things that they said they would be willing to

17   produce, but they say they have no documents.  That's true in

18   any discovery.  You file your request under Rule 34, and the

19   other side responds, "we don't have any documents," correct?

20   So if I order them to produce documents and then they say they

21   don't have the documents, unless you find out later they do,

22   that's the end of the story, isn't it?

23             MR. STIO:  I --

24             THE COURT:  I mean, discovery depends on the good

25   faith of the parties.

1          MR. STIO:  Correct, Your Honor.  But what I would

2    like --

3          THE COURT:  I'm not about to go make an inspection of

4    all of their records, nor is anyone else.

5          MR. STIO:  No; I hear Your Honor.  But what I'm

6    asking for is, when they produce documents, if they are not

7    going to produce a category, I would like to have it in

8    writing.  Or if they are withholding documents on the basis of

9    privilege, before I go down a path of having to take a

10   deposition, I just want to know, if documents exist, if they

11   are claiming that they're going to withhold anything on

12   privilege.

13         THE COURT:  Well, they're always entitled to withhold

14   privileged documents, but you just want the identification of

15   any relevant document that you think -- that they think is

16   privileged; is that right?

17         MR. STIO:  And I'm fine with them exercising their

18   right for privilege, but I think I should be able to see a

19   privilege log of what they're claiming privilege over.

20         THE COURT:  Well, let me ask Mr. Shaw.  I guess -- go

21   ahead.

22         MR. SHAW:  You know, he said he didn't want to get

23   involved in gamesmanship and Your Honor said, you know, there's

24   got to be good faith.  We're coming to this in good faith.  If

25   he asks a question at the 30(b)(6) deposition and it gets into

```
 1    a time period when Atlas was talking to attorneys, then a
 2    privilege assertion will be made.
 3              THE COURT:  Absolutely.
 4              MR. SHAW:  I don't -- from our list, because our list
 5    is set up so that it's not excluding privileged documents
 6    necessarily, so --
 7              THE COURT:  It is excluding or is not?
 8              MR. SHAW:  I mean, I guess -- I don't think -- we
 9    didn't set it up that way.  We set it up with the documents
10    we're willing to give them.  We're not aware of any
11    documents -- I mean, obviously after litigation started and we
12    got into these kinds of things there's now privileged
13    documents.  But at the time of these assignments, I don't think
14    there was.
15              THE COURT:  Right.
16              MR. SHAW:  So I think he should just ask the 30(b)(6)
17    witness; and if he says there's privileged stuff, then we can
18    raise it at that point and then give them an identification of
19    those.
20              THE COURT:  Is there anyone else who wants to say
21    anything on this issue?  Let me hear from anybody else on the
22    form of discovery, whether the Court ought to enter an order
23    requiring plaintiff to produce certain documents, or should we
24    go the route of waiting until the defendants serve the Rule 34
25    request?
```

1            Anybody have anything to add on that subject?

2            All right.  Yes, sir.

3            MR. KIMREY:  Your Honor, Blaine Kimrey for Whitepages

4    and Hiya.

5            THE COURT:  Go ahead.

6            MR. KIMREY:  We're actually fine with formal requests

7    or an order by the Court because the effect will be the same.

8    And you're right, Your Honor.  We think that maybe an order

9    would be more efficient.

10           THE COURT:  Right.

11           MR. KIMREY:  But we agree with Mr. Stio that the rule

12   should be followed with respect to what's being produced,

13   what's being held back, what doesn't exist and that a privilege

14   log be provided.  Because I am concerned that plaintiffs'

15   counsel, in drafting their list, has drafted it in a way to

16   circumvent privileged documents and we need to know if there

17   are documents withheld based on privilege.

18           THE COURT:  Right.

19           MR. KIMREY:  So that's our position, Your Honor.

20           THE COURT:  All right.  Thank you.

21           MR. KIMREY:  And also to clarify something in the

22   letter that they sent last night, they suggested that the

23   defendants that didn't opt into the Troutman letter didn't

24   agree with it.

25           That's not the case.  My understanding -- we

1  supported the Troutman letter.

2             THE COURT:  Right.

3             MR. KIMREY:  And actually participated in one of the

4  meet-and-confers, which is noted in the footnote in the letter

5  of the opposition.

6             THE COURT:  Right.

7             MR. KIMREY:  I hesitate to do this again because it

8  kind of came back to haunt me when I did it last time, but I

9  don't think any one of the defense lawyers here opposes the

10  positions fundamentally that Mr. Stio is taking.

11             THE COURT:  All right.

12             MR. KIMREY:  I think that we support him.

13             THE COURT:  All right.  Well, that deals with the

14  scope of discovery.

15             All right.  I think what I'm going to do is I'm going

16  to ultimately enter an order which will identify the documents

17  to be produced by the plaintiff, and we'll set a deadline and

18  then time for the Rule 30(b)(6) deposition and then the

19  briefing schedule.

20             But I think what we need to do now is take

21  Mr. Parikh's letter and, Mr. Stio, you can start with that, and

22  you can make your argument as to what additional materials are

23  to be produced, all right, so I can then have a --

24             MR. PARIKH:  Your Honor.

25             THE COURT:  Yeah.

1          MR. PARIKH:  Your Honor, Raj Parikh on behalf of the

2     plaintiffs.  Just one thing on the privilege log before we

3     start going through the categories.

4          THE COURT:  Yeah.

5          MR. PARIKH:  So I think we're fine with advising

6     them, you know, if there's a category of documents, we've

7     talked about what it is.  So if we say, for example, the

8     service terms, and we're talking about providing multiple

9     iterations of the service terms --

10          THE COURT:  Right.

11          MR. PARIKH:  -- we have no issue saying to them we've

12     withheld documents on the basis of privilege.  I think with

13     some of their categories, if there is a desire from the defense

14     that we produce a full-blown privilege log, then we're talking

15     about a significant amount of information, perhaps.  I'm not

16     sure, but, you know, if we start getting into emails and things

17     like that.

18          And just by way of simple example, Your Honor, you

19     know, most of these cases were filed starting in early

20     February.  So from some point in late January or mid-January

21     through early February, there's obviously a lot of activity to

22     get, you know, 140-plus cases ready for filing.

23          THE COURT:  Right.

24          MR. PARIKH:  To have to create a privilege log within

25     that time period would be significant in terms of the

1    proportionality analysis and for plaintiffs to have to go

2    through that, so if we put some time parameters on it.  If

3    they're interested in, you know, prior to the notices being

4    served, for example, in December and putting that on as a

5    privilege log, I think we can work through those issues.  But I

6    just want to frame that as, you know, one particular issue in

7    terms of proportionality.

8            THE COURT:  Well, what would be done in the normal

9    Rule 34 request for production?

10           MR. PARIKH:  So it would be that there would be a

11   full-blown privilege log, Your Honor.  But it would -- if we're

12   limiting it just to subject matter jurisdiction, then we would

13   be talking about search terms, you know, which custodians,

14   documents would have to be searched for, et cetera, and that

15   will add significant time, I think, to this process.

16           And so I think what we've proposed, because we've

17   gone through a good faith analysis with our client, we don't

18   believe that the communications that Mr. Stio is talking about

19   exist, but we don't want to end up in a gotcha game where, you

20   know, there might be one errant email or something along those

21   lines seven months down the road that somebody construes to be

22   related to this issue when it really is not.

23           THE COURT:  Okay.  Well, we'll get to that.

24           MR. PARIKH:  Okay.  Thank you, Your Honor.

25           THE COURT:  Why don't we -- I assume, Mr. Stio, you

1   have no objection to the production of the documents identified

2   in Mr. Parikh's June 2nd letter.  Start with that.  There are

3   items 1 through 7.

4                MR. STIO:  I do have an objection.

5                THE COURT:  All right.  Now, let's talk about what

6   you want in addition to that.

7                MR. STIO:  Well, no, I have an objection as to those

8   items.  And the objection is, Your Honor --

9                THE COURT:  You object to the production?

10               MR. STIO:  On what they have in their letter, yeah.

11               If Your Honor would go to page 2 of their letter --

12               THE COURT:  Yeah.

13               MR. STIO:  -- they have used a defined term as

14   "relevant time period," or "relevant period."

15               During the last --

16               THE COURT:  Well, what --

17               MR. STIO:  On Item No. 1, it's at -- three-quarters

18   down there.

19               THE COURT:  Oh, I see.  You're right.

20               MR. STIO:  Yeah.

21               So during the last conference, Your Honor, they

22   represented that they were going to produce at least three

23   versions of the service terms.  And the versions date back to

24   January of 2023.

25               THE COURT:  Right.

1          MR. STIO:  This definition, which carries over not

2     only in number 1, but also in number 3 --

3          THE COURT:  Right.

4          MR. STIO:  -- seems to narrow that to the time that

5     they sent out their first nondisclosure request on Christmas

6     Eve or New Year's Eve, not dating back to January 2023, not at

7     the time of April 5, 2023 when they were out at conventions for

8     the PBA soliciting members to sign up.  And I think that

9     they've really constrained it and they've walked back from what

10    they represented to this Court.

11         THE COURT:  So what would you suggest is the time

12    period?

13         MR. STIO:  I think the relevant time period is

14    January 1, 2023 to the present.

15         THE COURT:  All right.  Let's just deal with that.

16         Mr. Shaw, what about that?

17         MR. PARIKH:  Your Honor, I can handle that.

18         THE COURT:  Mr. Parikh, go ahead.

19         MR. PARIKH:  Yes.

20         So we have no problem with January 1, 2023, Judge.

21    That's fine.  We've said that.  We said we would provide the

22    service terms.  I think coming up to the present date is a

23    little bit of an issue for the reasons that I said, to the

24    extent that they want privilege logs.  If it's just about the

25    service terms, that's fine, we can give them the service terms

1    in place for this --

2              THE COURT:  Yeah.  What would be the relevance of any

3    service terms that have been developed since the last case was

4    filed?

5              When was the last case filed?

6              MR. PARIKH:  Late February, Your Honor.

7              THE COURT:  Okay.  So if they recently developed a

8    service term in May, what relevance is that to our cases here?

9              MR. STIO:  My belief, Your Honor, I don't have the

10   document in front of me, when I looked at it, service terms

11   have a provision that say they can be amended by Atlas at any

12   time, similar to what their terms of use in their privacy

13   policies say.

14             So if there is a superseding document where someone

15   has a membership and has a service and the service term is

16   amended by something that occurs after February 4, 2024, which

17   is the latest one that was on their website, we would want to

18   look at that.

19             THE COURT:  Right.

20             MR. PARIKH:  So two points, Judge.  One, I'm not sure

21   what that has to do with subject matter jurisdiction, right?

22   They've -- the cases before that --

23             THE COURT:  Right.  Because the case was filed --

24   it's what happened as of the time the complaint was filed.  And

25   so what happened afterwards has nothing to do with collusion,

1   does it?

2            MR. STIO:  Your Honor, if they filed the case and the

3   percentage of sharing of the recovery has changed, I think it

4   goes back to whether or not this was a legitimate assignment.

5            THE COURT:  I see.

6            MR. PARIKH:  And to short-circuit, Your Honor, I

7   don't believe the service terms have been amended since before

8   the first case was filed.

9            THE COURT:  Well, then, why are we -- let's not fuss

10  about it.  It's a moot point.  We'll just say January 1, 2023

11  up to the present.

12           MR. PARIKH:  And what we said, Your Honor, because we

13  don't want to use that time period for every category, we said

14  until the last case was filed, because that would be relevant

15  to a subject matter-jurisdiction analysis.  And that's what we

16  put in our definition -- "to the date of the last filed

17  complaint."

18           THE COURT:  What about that, Mr. Stio?

19           MR. STIO:  Your Honor, I'm fine with "the last filed

20  complaint."

21           THE COURT:  All right.  "Last filed complaint."  All

22  right.

23           January 1, 2023, last filed complaint, as to

24  number 1.  All right.

25           How about number 2?

1          MR. STIO:  So, if we're dealing with relevant period

2     and that's the same for number 2a --

3          THE COURT:  Make it the same relevant period,

4     January 1, 2023 through February 4, 2024.

5          MR. STIO:  That's fine.

6          THE COURT:  All right.  Number 3.  Again, amending

7     the relevant time period.

8          MR. STIO:  As long as we get all versions with the

9     amended time period, that's fine.

10          THE COURT:  Okay.

11          MR. PARIKH:  Judge, on this one, I believe that some

12     of the defendants -- and I'm happy to continue forward if you'd

13     like to, but I know that some defendants -- and I believe

14     Mr. Christie is standing there to raise this very issue, I

15     presume -- but have requested copies of every single assignment

16     confirmation.

17          What we have proposed is to provide templates and

18     then a chart, essentially, that lists out what those issues

19     are.  So I wanted to raise that if this is the appropriate

20     moment to do so.

21          THE COURT:  Mr. Stio, and then we'll hear from

22     Mr. Christie.

23          MR. STIO:  One of the issues that we have, Your

24     Honor, on that is they have produced the spreadsheets that Your

25     Honor ordered them to produce of the assignors.

```
 1            THE COURT:  Right.

 2            MR. STIO:  And the spreadsheets have far, far more

 3    names identified than what we believe were sent out.  They have

 4    far, far more names identified than actually what is alleged in

 5    each of the complaints.  And in my client's instances, we've

 6    received spreadsheets of, you know, 35,000 names, 40,000 names.

 7    And you look at the complaint, and the number of covered

 8    persons or assignors are 19,000.

 9            THE COURT:  Right.

10            MR. STIO:  And we just want to know, well, what's

11    going on and who are the assignors?  I think we're entitled to

12    know the identity.

13            THE COURT:  Mr. Parikh.

14            MR. PARIKH:  So, with all due respect to Mr. Stio,

15    that's factually inaccurate.  The lists may have 40,000

16    entries, but it still is the 16-, 17-, 18,000, 19,000 names for

17    each particular defendant.  And the reason why the list is set

18    up that way is because you have an individual, a police

19    officer, that may have made a request to Mr. Stio's client to

20    remove their home address and a phone number and a second phone

21    number, which would be three requests for that one person.

22            THE COURT:  I see.

23            MR. PARIKH:  So when you talk about 35- to 40,000,

24    that's the reason.

25            The other thing, Your Honor, is the list is unique
```

1    for each and every single defendant entity.  And so as I

2    mentioned during our prior conferences, different people on

3    board at a different time since the Atlas system and they sent

4    to a different entity.

5                THE COURT:  Okay.

6                MR. PARIKH:  So the list we provided in order to have

7    these defendants comply with Daniel's Law, which some of them

8    still haven't done that as we stand here today, was as a

9    courtesy so that they could do that.

10               We have represented to them these are the individuals

11   that have transmitted requests to your entity.

12               Some of the defendants, Judge, and obviously with

13   even just the 30-plus defendants here that are remand

14   defendants, some of them put blocks in place.  So they stopped

15   receiving emails because they didn't want them.  Others it went

16   to spam.  So there's all kinds of little issues.  None of that

17   has to do with subject matter jurisdiction, which is what we're

18   here for.

19               So we got a request that they want the dates of the

20   assignments.  We said, we don't really think it's necessary for

21   subject matter jurisdiction, but fine, we'll give it to you,

22   we'll put it in a chart.  You'll have the name of the person.

23   You'll have the date of their assignment, the information that

24   they requested to be redacted, and then we also went the extra

25   step to say that we'll also provide to you a categorization of

1    who that person is, whether they're law enforcement, a

2    prosecutor, a judicial officer, or a family member.

3                THE COURT:  All right.

4                MR. STIO:  Do you want to hear from Mr. Christie?

5                THE COURT:  All right.  Yes.

6                MR. CHRISTIE:  Thank you.

7                THE COURT:  You're welcome.

8                State your name for the record, please.

9                MR. CHRISTIE:  Yes, Your Honor.  Scott Christie on

10   behalf of Black Knight Technologies.

11               THE COURT:  Yes.

12               MR. CHRISTIE:  A couple quick things, Judge.

13               We have received, as Mr. Stio mentioned, the covered

14   persons list.  We have crunched them based on what we can do by

15   virtue of comparison to the emails that we received, and there

16   are thousands, Judge, thousands of names that we do not

17   recognize from the emails.

18               I've conversed with Mr. Parikh about this.  And,

19   based on their concern that we actually reduce and redact the

20   data of the covered persons that made the requests, have asked

21   for the emails.  He tells me he will not produce them because

22   he thinks it is, by virtue of the request, goes to merits

23   discovery and that it's not appropriate for us to get that

24   information now.

25               His position is that based on the covered persons

1    list, if you don't take down all the data for those people, you

2    do so at your peril.  In essence, what they are doing, Judge,

3    is trying to add additional take-down requests by virtue of

4    these covered persons lists based upon emails that haven't been

5    sent by the covered persons, which is required.

6                THE COURT:  But what does this have to do with

7    subject matter jurisdiction?

8                MR. CHRISTIE:  It does not have to do with subject

9    matter --

10                THE COURT:  Well, let's deal with subject matter

11    jurisdiction.  And if there are any other issues, we'll deal

12    with them later this morning if they're pressing, all right?

13                MR. CHRISTIE:  All right.  May I just quickly address

14    the scope of the discovery?

15                Our position, Judge, is that Your Honor mentioned

16    that the scope should be limited to the date of the last filed

17    complaint.

18                Our perception is that Atlas, you know, should not

19    have a hard-and-fast end period of that point for two reasons.

20                Number one, to the extent that they are planning, as

21    we have heard, to make, you know, additional bombardment with

22    additional email requests.

23                And number two, to the extent that any of the

24    complaints are amended in any way.

25                So our perception --

```
 1            THE COURT:  Well, if they amend them, then we'll deal
 2    with that at that point.  But we have to just deal with the
 3    facts as they exist today, so.
 4            All right.  Thank you.
 5            MR. CHRISTIE:  I understand, Judge.
 6            MR. PARIKH:  Your Honor, just one point with respect
 7    to what counsel just raised.  And I know we're not going to get
 8    into details.  But in one of our letters, you'll notice that we
 9    talked about we would argue waiver of personal jurisdiction.
10    We are unequivocally clear as to what Your Honor's directive
11    was, but it's these types of requests from the defendants where
12    we said if the defendants are going to go beyond the, kind of,
13    narrow corridor that Your Honor set up for subject matter
14    jurisdiction, then it would be a waiver of personal
15    jurisdiction arguments, and we would maintain that to the
16    extent it goes beyond that corridor.
17            THE COURT:  I think I made it pretty clear that we're
18    not -- there's no waiver of anything else here.
19            MR. PARIKH:  I understand.
20            THE COURT:  Let's just focus on the facial challenge
21    and also on the remand.
22            MR. PARIKH:  Correct, Judge.  Thank you.
23            THE COURT:  All right.
24            Let's move on now to number 4.
25            MR. STIO:  Yes.
```

1          Your Honor, we would need that to be expanded to

2     include communications.  And the communications relate back to

3     this April 5, 2023 letter, what they were communicating to the

4     PBA about the litigations, about the relationship, about the

5     real party in interest.

6               THE COURT:  It says, "Contracts between Atlas and law

7     enforcement unions based in New Jersey."  Okay.

8               MR. STIO:  Correct.

9               THE COURT:  And that would be the same period, right?

10    January 1, 2023 through February 4, 2024?

11              MR. STIO:  Well, they have it unlimited, Your Honor.

12    I don't know when they went into a contract with --

13              THE COURT:  Well, what time period -- this is

14    unlimited, number 4?

15              MR. PARIKH:  Yeah.  I think we would -- I think

16    it's -- I think we're fine doing it up until today, Your Honor.

17              THE COURT:  All right.

18              MR. PARIKH:  You know, at the end of the day, I think

19    the distinction Mr. Stio is trying to draw is communications

20    versus contracts.  You know, again, I think I would go back to

21    when we get into communications, the most efficient pathway

22    here is for them to ask the 30(b)(6) witness questions.

23              If the 30(b)(6) witness says oh, yeah, you know what,

24    I had, you know, all of these email exchanges, which I don't

25    think he'll testify and say that because I don't think they

1    exist, but if he testifies to that, then we can revisit that

2    issue if we need to.

3            THE COURT:  Well, I don't know.  It seems to me now

4    the contracts are one thing, but it would be communications I

5    assume between -- you just don't -- there are obviously

6    communications that accompany contracts.

7            MR. PARIKH:  Yeah.  And I think the question, Judge,

8    is communications related to subject matter jurisdiction,

9    right?  Again, that's the framework we're talking about here.

10           THE COURT:  Right.

11           MR. PARIKH:  So if the communications are, well, hey,

12   you know, this is our platform and we have the ability to help

13   police officers, you know, effectuate their rights under

14   Daniel's Law or under some other privacy law, those

15   communications aren't relevant or even discoverable as it

16   relates to subject matter jurisdiction.  And that's part of the

17   issue here, is that we've gotten requests from the defendants

18   that are saying all documents, all communications, without

19   narrowing them as to within the framework of subject matter

20   jurisdiction.

21           THE COURT:  All right.

22           MR. STIO:  Your Honor, that's inaccurate.

23           Your Honor, the issue here is who are the real

24   parties in interest.  Even in Mr. Parikh's example there --

25           THE COURT:  Right.

1          MR. STIO:  -- that would be relevant.

2          Let me tell you how I can allow you to enforce your

3     rights.  The assignors is a real party in interest.

4          THE COURT:  Right.

5          MR. STIO:  We should be entitled to communications

6     with the PBA.  We have one document that shows as far back as

7     April of 2023, Atlas was getting assignments and signing up

8     people.

9          Now, if I were a police officer and I was concerned

10    that I need my stuff taken down, I would say when are you going

11    to send the take-down notices?  What's the delay?  What's going

12    on?

13         THE COURT:  But what does that have to do with

14    subject matter jurisdiction?

15         MR. STIO:  It has --

16         THE COURT:  It may be -- and there may be some

17    impropriety, but that has nothing to do with subject matter

18    jurisdiction, does it?

19         MR. STIO:  No, it does.

20         THE COURT:  Why?

21         MR. STIO:  Because if the person is saying these are

22    my rights, these are my interests --

23         THE COURT:  Yeah.

24         MR. STIO:  -- they're the real party in interest.

25    That goes to the totality of circumstances.

1          What's being lost here is what *Long John Silver's* and

2  *Grassi* and their progeny say.  They say you look at the

3  totality of circumstances related to the assignment.

4          All the plaintiffs want to do is give assignment

5  documents and policies that their counsel drafted.  And we are

6  entitled to know the circumstances to determine not just if

7  it's a sham, who is the real party in interest, because that is

8  what all the case law says you look at.

9          THE COURT:  Can't you tell that by the contract?

10          MR. STIO:  You can get some of it from the contract,

11  Your Honor, but not all of it.

12          THE COURT:  Well, the contract sets the rights of the

13  parties, doesn't it, of the assignor and assignee?

14          MR. STIO:  It does set rights of parties, but it's,

15  again --

16          THE COURT:  And don't we have a parol evidence rule?

17          MR. STIO:  Your Honor, *Grassi*, *Long John Silver*'s

18  allowed -- those are two.  There were others cited in my

19  letter -- allowed discovery beyond the assignment itself.  And

20  they did that because they want to determine is there an

21  assignment that's entered into that is used for the sole

22  purpose of defeating court jurisdiction, who's the real party

23  in interest.

24          And this type of information about communications

25  with the PBA is not going to be difficult for them to obtain.

1    It goes to the surrounding circumstances and who is the real

2    party in interest.

3            In all the other cases, *Grassi*, *Long John Silver's*,

4    there's an assignment and the Court still said you're entitled

5    to information about who the real party in interest is.  All

6    we're trying to do is get to that.

7            THE COURT:  Of course, isn't behind all this a New

8    Jersey statute which permits assignments?

9            Now, I know the fact that an assignment may be legal

10   under state law doesn't answer the question.  You have to go

11   beyond that.  But in none of those other cases do we have a

12   statute which determined it was good public policy in New

13   Jersey to permit these assignments to a company like Atlas to

14   facilitate possible recovery by the individual law enforcement

15   officer.

16           In other words, for an individual law enforcement

17   officer to sue 50 or 100 databases, that's a pretty burdensome

18   thing for an individual to do, to protect his rights to

19   privacy.

20           So the Legislature determined that there would be a

21   procedure where these could be assigned.  And I assume --

22   obviously I haven't looked at the documents -- that the law

23   enforcement officer, if Atlas prevails, will get part of the

24   recovery and Atlas will get part of the recovery.  I mean,

25   isn't that the statutory scheme we're talking about here?

```
 1              MR. STIO:  So --

 2              THE COURT:  What's so unusual about that?

 3              MR. STIO:  Two points, Your Honor.

 4              One, there is a statute in place, Daniel's Law.

 5              THE COURT:  I understand.

 6              MR. STIO:  Two, there's a federal statute, CAFA, that

 7    allows that individual assignor to represent the entire class.

 8    If there are communications with the PBA that say we want you

 9    to assign the case to us so that we can pursue it, we have a

10    Delaware corporation and we can avoid CAFA jurisdiction, I

11    think that's relevant to a motion -- in opposition to a motion

12    for remand, because it does show activity related to trying to

13    defeat the jurisdiction of the federal court.

14              THE COURT:  Well, then, what if there was any

15    subject -- any document that discussed CAFA, you want it

16    limited to that?

17              I mean, I'm -- look, we don't want the tail wagging

18    the dog here.  Discovery has to be proportional, you know.

19              MR. STIO:  Your Honor, they're suing us for

20    $19 million.

21              THE COURT:  I understand they're suing you.  But

22    we're talking about subject matter jurisdiction here.  We're

23    not deciding the case on the merits.

24              MR. STIO:  Right.  But the case law says we're

25    entitled to the totality of circumstances, and the plaintiffs
```

1  are getting up saying let me tell you what those circumstances

2  are.

3           THE COURT:  I understand.  But I'm trying to -- the

4  discovery has to be relevant.  It has to be proportional.  The

5  discovery rules are quite clear on that now.  So we have to --

6  there have to be some bounds to discovery.

7           MR. STIO:  Right.

8           THE COURT:  And so what I'm trying to do is to see

9  what -- to probe this issue, determine what really is necessary

10 to determine this issue.

11          I understand totality of the circumstances, but that

12 doesn't mean you have carte blanche to discovery.

13          MR. STIO:  And we're not asking for that, Your Honor.

14 We're asking for discovery related to communications with the

15 PBA and the police unions to sign these up.  We're not asking

16 for every single person.

17          THE COURT:  You're saying any communications?

18          MR. STIO:  Related to Atlas' services.

19          THE COURT:  Well, that's everything.

20          MR. STIO:  How is it?  No.  They came up with, well,

21 what if, you know, we had a contract for someone with PBA who's

22 going to, you know, do the maintenance.  We don't want that.

23 But to limit it to CAFA itself, I mean, I think it has to be a

24 little bit broader than that.

25          How about related to the assignment, any discussion

```
 1    of the assignment?  That's the issue here.
 2              THE COURT:  Well, I mean, that's the whole purpose.
 3    I'm just trying to understand the statutory scheme.  The
 4    Legislature determined that the individual police officer or
 5    law enforcement officer or prosecutor or judge could assign his
 6    or her claim to Atlas, correct?
 7              MR. STIO:  Correct, Your Honor.
 8              THE COURT:  And that Atlas could bring the action on
 9    behalf of the individual and that Atlas would get part of any
10    recovery, and the law enforcement officer would get a portion
11    of the recovery.
12              Isn't that the basic scheme?
13              MR. STIO:  The basic scheme, except for I don't think
14    the statute talks about any type of recovery or splitting --
15              THE COURT:  No.  But, I mean, that has got to be --
16    the Legislature didn't contemplate you'd assign your claim for
17    free to Atlas and let Atlas recover and the law enforcement
18    officer get nothing.  I mean, let's make -- let's use our
19    common sense here.
20              What would be the purpose of doing it if the law
21    enforcement officer wasn't to get some recovery?
22              MR. STIO:  Your Honor, if the case is about --
23              THE COURT:  No.  Look --
24              MR. STIO:  You said what is the purpose.  I'm going
25    to answer.
```

```
1              THE COURT:  What was the -- listen, let's be -- what
2    was the purpose of the statute, as you understand it, of the
3    assignment?
4              MR. STIO:  The purpose of the statute?
5              THE COURT:  Of the assignment.
6              MR. STIO:  Of the assignment?
7              THE COURT:  Yeah.
8              MR. STIO:  To allow the plaintiffs to enforce the
9    rights belonging to the --
10             THE COURT:  And why?  Why would the Legislature do
11   that?  Let's be -- let's use our common sense.
12             MR. STIO:  Right.  Yeah.
13             THE COURT:  Why would they do that?
14             MR. STIO:  For privacy reasons, Your Honor.
15             THE COURT:  For what?
16             MR. STIO:  For privacy reasons, not to allow a
17   private entity to monetize privacy rights.
18             Your Honor, this whole scheme here wasn't to take the
19   names down, to redact information.  If it was, they would have
20   sent out nondisclosure requests in April of 2023.
21             THE COURT:  Okay.  All right.
22             MR. STIO:  It was about creating a situation of
23   noncompliance.  And we want to know the totality of the
24   circumstances.
25             And I don't want to go broad, Your Honor.  I'm trying
```

1    to keep it narrow.  But we have a document, and they keep

2    saying, well, just ask our 30(b)(6) witness.  I would like to

3    see the documents so that I can have questions.

4            THE COURT:  Right.  I understand.  I understand your

5    point.

6            MR. STIO:  Okay.  Thank you.

7            THE COURT:  What about that, Mr. Parikh?

8            MR. PARIKH:  Your Honor, I mean, all of these

9    requests are based on a fiction.  We can't forget the fact

10   that --

11           THE COURT:  No.  Wait a minute.  You have -- you're

12   putting the cart before the horse.  You say it's fiction.

13           MR. PARIKH:  Your Honor, we can't forget the fact

14   that we're here because these defendants, the only way that

15   they were able to remove these cases from state court was to

16   come up with this concept of collusive joinder, the fact that

17   somehow Atlas colluded with the police officers, 19,000 of

18   them, and specifically selected Delaware as a corporate

19   residency just to avoid these specific defendants being in

20   federal court.

21           And remember, there are the other half of the

22   defendants that we've not sought to remand because they're

23   properly before the Court.

24           And so I say that, Your Honor, because when we talk

25   about communications with the PBA and kind of go to that

1    breadth, we have to remember a few different things.

2              The officers here are the ones that transmitted these

3    requests to the defendants.  That happened starting in December

4    of 2023.  And it was only after these defendants, as opposed to

5    other companies that complied, these defendants made a choice

6    not to comply with Daniel's Law by removing that information

7    within ten business days.  They then had additional time.  They

8    had all through January for most of them where they didn't

9    remove that information.  And when that occurred finally in

10   February, there were assignments that were issued or

11   assignments that were given to Atlas from these individuals and

12   therefore then lawsuits were filed.

13             And so when we talk about communications going back

14   to 2023, again, I'm not sure how that gets into relevance

15   related to who the real party in interest is, which is the term

16   they keep using, or how it relates to collusiveness in a manner

17   that is proportional to simply just asking questions of the

18   30(b)(6) witness.  They can ask these questions and say what

19   were your -- they're going to ask it anyway, right -- what were

20   your discussions with the PBA about subject matter

21   jurisdiction?  What were your conversations with the PBA about

22   CAFA?  Ask the 30(b)(6) witness those questions.  And if

23   through that process at the deposition they discover that there

24   may be other communications and documents, et cetera, then we

25   have that discussion if we reach that point in time.

1          THE COURT:  Well, I'm just wondering -- go ahead.

2          MR. KIMREY:  Your Honor, Blaine Kimrey for Whitepages

3    and Hiya again.

4          THE COURT:  Yes.

5          MR. KIMREY:  So the opposition is characterizing this

6    as just a query into collusiveness and a sham and dastardly

7    motives, but that's only one factor in the *Grassi*, *the Long*

8    *John Silver's*, and the *Attorneys Trust* cases.

9          The issues that should be subject to discovery are as

10   follows, and I'm just going to list them out from *Long John*

11   *Silver's,* from *Grassi*, and from *Attorneys Trust*.

12         In *Long John Silver's*, number one, whether the

13   assignors may share in the recovery, if any.  So that's number

14   one.

15         THE COURT:  And that we're going to be able to find

16   out from the contracts, correct?  And the assignments are going

17   to say that officer X gets a certain percentage of any

18   recovery.

19         MR. KIMREY:  Sure.

20         THE COURT:  Then we would know that.

21         MR. KIMREY:  The contracts themselves should provide

22   for the contingent fee arrangements, yes, Your Honor.

23         THE COURT:  Yes, right.

24         MR. KIMREY:  Who is funding the litigation, number

25   two, under *Long John Silver's*.

1         Number three, motive.

2         Now, motive is not dispositive.

3         THE COURT:  Right.

4         MR. KIMREY:  It's not essential.  It's just one of

5    the factors that may be considered.

6         THE COURT:  Right.

7         MR. KIMREY:  But it's not a prerequisite to finding

8    that you should disregard Atlas' Delaware registration for

9    purposes of diversity.  The opposition is trying to cast this

10   very narrowly as a collusive joinder situation under 1359,

11   28 U.S.C., 1359.

12        THE COURT:  Right.

13        MR. KIMREY:  But that's not what's at issue here.

14   28 U.S.C., 1359 is not what's at issue.  By analogy it is, but

15   we're not invoking 1359.

16        THE COURT:  Right.

17        MR. KIMREY:  Because we're not arguing collusive

18   joinder.  We're arguing that Atlas should not be considered a

19   real party in interest for purposes of diversity jurisdiction.

20        THE COURT:  Right.

21        MR. KIMREY:  The next item or factor, fourth factor

22   under *Long John Silver's*, is whether there is the presence or

23   absence of some independent, preexisting, legitimate interest

24   in the assignee.  That factor, Your Honor, is a bridge to

25   *Grassi*, because *Grassi* also has that factor within it.

1        And *Grassi* also adds:  The size of the interest

2   assigned; whether the assignor and assignee had separate

3   counsel; whether the assignee's attorney is controlling the

4   litigation; the timing of the assignment; whether the

5   assignment could be considered a sort of contingent fee

6   arrangement; and whether there was a strong likelihood of

7   prejudice against the defendant if citizenship of the assignee

8   was considered for purposes of diversity jurisdiction.

9        *Attorneys Trust* then adds two additional factors on

10  top of that.  They kind of overlap a little bit, but they do

11  sound phrased a bit differently, whether there were good

12  business reasons for the assignment, and whether any

13  consideration was given to the assignee.

14       So we've gone through all of the requests for

15  production that Troutman proposed to the opposition.

16       THE COURT:  Right.

17       MR. KIMREY:  And we've drawn a line from each one of

18  those to each one of those factors.  So they all are relevant

19  to those factors, Your Honor.  I understand your

20  proportionality point.  I understand you're saying that this is

21  just subject matter jurisdiction discovery and it's not

22  full-blown merits discovery, which totally agree.  But all of

23  those requests go to those issues.

24       And I just, every time I hear the opposition say, oh,

25  how could there be a sham between all these police officers and

1    Atlas, it's a red flag to me because we're not saying that it's

2    necessarily a sham.  It may be.  But we don't have to show that

3    it's a sham.  We just have to satisfy and address these factors

4    to Your Honor, which are illustrative.  Even these are just

5    illustrative, they're not exhaustive.

6              THE COURT:  Well, let me ask this:  In number 4, if

7    we talked about communications which relate to subject matter

8    jurisdiction; in other words, not every communication between

9    Atlas and the PBA, but only the Delaware subject matter

10   jurisdiction.

11             MR. PARIKH:  I think -- I mean, Your Honor, in theory

12   that's good.  But, for example, if there's communications

13   between Atlas and in this case the PBA saying, you know,

14   so-and-so data broker is located in New Jersey, right?  And it

15   has nothing to do with subject matter jurisdiction, but

16   remember part of this was also how to, you know, where do

17   notices get delivered, how do they get delivered.  It's a whole

18   product.  So if it's that type of contact information, then

19   there may be communications.  I'm not sure.

20             But, again, to me, Your Honor, from a proportional

21   perspective, and I know Mr. Shaw has something to say with

22   respect to what counsel just mentioned so I'll let him go as

23   well, but the most efficient way is for them to just ask the

24   30(b)(6) witness these questions.

25             THE COURT:  Yeah.  But it's always helpful to have

 1   documents on which you can base your question.

 2          MR. PARIKH:  I understand.  And we're not saying "no"

 3   to the documents, Your Honor.  I think, you know, for example,

 4   they raised this issue of contracts with the unions.  It wasn't

 5   in our first proposed list of things to provide, and we said,

 6   okay, you know what, fine, we'll give those to you, that makes

 7   sense.

 8          I think Mr. Shaw had something he wanted to mention

 9   as well, Your Honor.

10          THE COURT:  All right.  I think I hear --

11          MR. SHAW:  If I may, Your Honor, excuse me.  I do

12   think the communications relating to assignments goes too far.

13   And I think my colleague just said what do you do with a

14   communication that has an address in it?  Would that be within

15   the terms?  And that's why we're trying to get some parameters

16   on the terms.

17          I think Your Honor might have recognized that

18   something that says an address, you know, probably is not

19   responsive, but we don't want to be --

20          THE COURT:  No, it wouldn't be.

21          MR. SHAW:  Right.  We don't want to be in that

22   position to have to make those calls necessarily.

23          But the other thing that I heard from counsel, which

24   I find very surprising, is that his requests relating to

25   subject matter jurisdiction are untethered from the statute,

1    that somehow they don't have to show collusion.  That's the

2    basis of their motion.  28 U.S.C., 1359, that's their motion.

3    If he's saying they're not using that anymore, then we should

4    ask them to stop their motion.  I don't know what their motion

5    is about.

6          If it's about CAFA, there are no cases that show that

7    you get discovery as to the real party in interest under CAFA.

8    There's none.

9          THE COURT:  Right.

10          MR. SHAW:  The *Grassi*, the other one, that's not part

11    of it.

12          All of these -- all of these factors, so to speak,

13    are in service of 1359, definition of collusion.  That's what

14    this -- that's what the subject matter -- that's what their

15    basis of the remand -- of the removal is.

16          THE COURT:  Yeah.  Well, if the communications were

17    limited -- I'm just throwing it out here -- to any specific

18    reference to subject matter jurisdiction or CAFA, in other

19    words, those words would have to be used.  I mean, you have to

20    have some limit.  And so that's what we'll do on that.

21          Let's move on to number 5.

22          MR. STIO:  Your Honor, can I just ask one question?

23          THE COURT:  No.  Not -- go ahead, on number 4.

24          So it would be contracts or any communications

25    specifically mentioning subject matter jurisdiction or CAFA.

1    All right.

2              MR. PARIKH:  That's fine, Your Honor.

3              THE COURT:  Number 5.

4              MR. STIO:  Your Honor, we're fine with these.

5              THE COURT:  Number 5.

6              MR. STIO:  Subject to what Mr. Christie said, if he

7    wants to speak later about that, but that's fine.

8              THE COURT:  All right.

9              How about number 6?

10             It may be a moot point, according to what the

11   plaintiffs say, but we --

12             MR. STIO:  Yeah.  As long as they confirm it in

13   writing and our response.

14             THE COURT:  All right.  Six.

15             All right.  Now, with respect to requests, you had

16   certainly a broader listing.  Is there anything else you want

17   to reference in your list dealing with -- I mean, for example,

18   you talked about --

19             MR. STIO:  Your Honor, I can go through those if you

20   want me to.  I have a list I can walk through.

21             THE COURT:  Yeah, your list.  Yeah.

22             MR. STIO:  Yeah.  If you go to my list.

23             THE COURT:  That would be in addition to the seven

24   items here that we talked about?

25             MR. STIO:  Yes.

1          THE COURT:  All right.  I've got that here in front

2     of me.  And best to discuss the ones that would be in addition

3     to.

4          I know one of the items is you want all documents

5     related to communications between Atlas and I guess the

6     Legislature of New Jersey.

7          MR. STIO:  Concerning just the provision on the

8     assignment of claims.  If they are going to rely upon it, the

9     Court has referenced it, we would like to know what they are

10    saying with regard to the assignment of claims provision.

11         THE COURT:  You mean whatever they said to a

12    legislator about that provision in the law, is that what you're

13    saying?

14         MR. STIO:  Correct, Your Honor.

15         THE COURT:  All right.  Mr. Parikh.

16         MR. PARIKH:  I don't know what that has to do with

17    subject matter jurisdiction, Your Honor.  At the end of the

18    day, you know, there are other defendants in this room whose

19    law firms and whose clients have lobbied the Legislature for

20    all kinds of things, including on Daniel's Law and other

21    privacy-related legislation.

22         The Legislature decides what it wants to do.  In this

23    case they passed a bill, an amendment.  This was, I think, the

24    third or fourth amendment to Daniel's Law, and then eventually

25    the Governor's Office reviewed it and signed it.

1        You know, the idea that there was some type of --

2   that that process now relates to, you know, whether it's the

3   real parties in interest, collusive joinder, whatever it may

4   be, the law is what the law is.  And this is where we disagreed

5   with counsel and we don't have anything to produce because it

6   doesn't seem relevant to anything related to subject matter

7   jurisdiction from our perspective.

8        MR. STIO:  Your Honor, it goes to motive.  It goes to

9   the CAFA issues.  It goes to subject matter jurisdiction.

10       THE COURT:  Well, I don't see the relevance, and I

11  don't see how it's proportional, and I will not require the

12  plaintiffs to produce any documentation related to discussions

13  with the Legislature of New Jersey or the legislators of New

14  Jersey concerning the provisions of Daniel's Law.

15       MR. STIO:  Understood, Your Honor.

16       Your Honor, number 8, documents about control over

17  the claims, that comes directly from the case law where it says

18  control is a factor under both *Grassi* and *Long John Silver's*.

19  We think that they should --

20       THE COURT:  Yeah.  Wouldn't that be included in the

21  contracts and the assignments, who has control of what?  It

22  seems to me that would state all that information.

23       MR. STIO:  Again, Your Honor, it's what circumstances

24  were related to getting these people to assign their claims and

25  who is the real party in interest.  And I understand there's a

1    contract, but the case law says it's beyond the contract.

2            They've acknowledged in their letter that the *Long*

3    *John Silver's* factors are relevant.  But they say we're not

4    going to give you any documents on it, just ask our 30(b)(6)

5    witness.

6            And part of discovery, Your Honor, is for us to be

7    able to not only ask the question but to test the veracity of

8    the answer.  And what we're being put in a situation by

9    plaintiffs is trust us.  And, Your Honor, with all due respect,

10    they started getting these assignments in April of 2023, and

11    they weren't sent until the holidays of Christmas.  And they

12    weren't sent because they wanted to create a situation of

13    noncompliance, not compliance.  And if there are communications

14    that talk about who controls the interest, what are their

15    rights and there's an explanation of it, we should be entitled

16    to it.

17            I think it could be narrow, which is control, state

18    court, federal court.  I don't think that that's going to come

19    up with an unusual number of hits.  And if it does, Your Honor,

20    they can come to us and we'll try to narrow it or we could come

21    back to you.  But I do not think that producing that

22    information that is directly related to a factor in *Long John*

23    *Silver's* is burdensome, disproportional, and it is highly

24    relevant.

25            MR. SHAW:  Judge, I think this gets to the parol

1    evidence rule you're talking about.  The contract says what the

2    relationship is of the parties, number one.

3            Number two, he keeps referring to these cases allow

4    you to go outside of it.  That's not in this context where the

5    assignments are allowed.  That's in the context where a

6    guardian gets rights to pursue a case where it might not have

7    the details of the monetary exchange in the case.

8            This case, the actual assignments themselves say the

9    relationship of the party, who controls what, and the amount of

10   compensation.  It's in the contract itself.  We shouldn't have

11   to go and look through, you know, all of the parol evidence

12   essentially, number one.

13           Number two, he's also suggesting that these

14   assignments took place in mid-2023.  That's not correct.  They

15   took place after the time period of noncompliance.  That's when

16   they took place.  That's when the assignment confirmations took

17   place.

18           THE COURT:  All right.

19           MR. SHAW:  But in any event, it's just too far into

20   the details.

21           THE COURT:  I'll sustain the objection on 8.

22           What else do you want, Mr. Stio?

23           MR. STIO:  Again, this goes to the *Long John Silver's*

24   factor, documents related to --

25           THE COURT:  Which number?  Which number?

```
1              MR. STIO:  Oh, on mine, it's number 9, Your Honor.

2              THE COURT:  Number 9.

3              MR. STIO:  Documents related to separate counsel and

4    common counsel.  That would be, Your Honor, I believe, at a

5    minimum, the engagement letters.

6              MR. PARIKH:  Your Honor, again, this is a question

7    they could ask the 30(b)(6) witness.

8              From our understanding, with the exception of the

9    individual plaintiffs who vary in the cases, so there are, you

10   know, a group of eight people or so who are individual

11   plaintiffs that may be assignors in one case and maybe

12   individual plaintiffs in another where our three law firms

13   represent those folks, you know, in their capacity as

14   individual plaintiffs, and in other cases we're representing

15   Atlas as the assignee of those assignments.  But that has a

16   carve-out.  I don't believe there's any common counsel at all.

17             THE COURT:  Well, that should make it easy.  So --

18             MR. PARIKH:  Correct.  And so I think --

19             THE COURT:  Why don't we include that.  So if that's

20   an issue, that's not going to require a lot of time and effort,

21   is it?

22             MR. PARIKH:  Right.  And so, Your Honor, we suggested

23   to counsel they ask this question of the 30(b)(6) witness.

24   Now, they've gone an extra step and asked for engagement

25   agreements.  I don't think that that's relevant to subject
```

64

1  matter jurisdiction.  Again, if the inquiry relates to whether
2  there are common counsel or not and the answer is from the
3  30(b)(6) witness no, there's not --
4          THE COURT:  Well, we have a certain number of
5  individual plaintiffs.
6          MR. PARIKH:  We do.
7          THE COURT:  And they're being represented by your
8  firm; is that correct?
9          MR. PARIKH:  Correct.  Our collective firms, Your
10  Honor.
11          THE COURT:  Now, and there are only a handful of
12  those.  I can't remember the exact number.
13          MR. PARIKH:  Uh-huh.
14          THE COURT:  Is that a problem?  Is there any issue
15  with producing the engagement letters?
16          MR. PARIKH:  I do think so, Your Honor.  Well, so
17  there is an engagement letter -- engagement letters with
18  respect to Atlas and then with respect to individual
19  plaintiffs.
20          THE COURT:  Right.
21          MR. PARIKH:  You know, again, I don't -- you know, I
22  don't -- if the question under the case law relates to whether
23  there's common counsel or separate counsel and it relates to
24  issues of control, what the terms of the engagement are are
25  really irrelevant as to how it relates to terms of control and,

1    again, could be accomplished by simply asking questions of a

2    30(b)(6) witness.

3              THE COURT:  Well, I know.  Let's talk about the --

4              MR. SHAW:  If I could just --

5              THE COURT:  Wait a minute.  The contracts that exist

6    between the individual plaintiffs, what is the arrangement?

7    You have the individual plaintiffs, and they are being

8    represented by your firm, correct?

9              MR. PARIKH:  Correct, Your Honor.  Correct.  They're

10   represented -- so depending on the case, not all three firms

11   are in every single case.  So my firm and Mr. McGee's firm are

12   in all of the cases.

13             THE COURT:  Right.

14             MR. PARIKH:  And so the individual plaintiff will

15   have an engagement I think -- I believe it's with Mr. McGee's

16   law firm to represent them as it relates to Case No. 1.

17             Now, if that individual is not a plaintiff in

18   Case No. 2 and they're an assignor, then there's no engagement

19   agreement as it relates to that.

20             THE COURT:  All right.  Now, how --

21             MR. SHAW:  Your Honor, if I may, that's one problem,

22   as an individual plaintiff, they're not an assignor.  So the

23   inquiry here is whether the assignments are collusive, so

24   that's why we're --

25             THE COURT:  Okay.  I understand.  Right.

66

```
 1              MR. STIO:  Your Honor, could I --

 2              THE COURT:  Yeah.  Go ahead.

 3              MR. STIO:  It's really difficult for them to argue

 4    the document I requested is not relevant but you could ask the

 5    question of a 30(b)(6) witness.  It's relevant for both.

 6              THE COURT:  Right.  I got it.

 7              MR. STIO:  And we need it to test the veracity of

 8    what that witness says.

 9              THE COURT:  Yes.  Just give me some specific examples

10    of 9, Mr. Stio, "documents reflecting whether Atlas and the

11    purported assignors at issue have separate and/or common

12    counsel."

13              Now, isn't the issue whether they do have separate

14    counsel, not all the documentation related to that?

15              MR. STIO:  I'm just asking for the engagement

16    letters, Your Honor.

17              THE COURT:  Between --

18              MR. STIO:  Who the attorneys are for --

19              THE COURT:  For the 19,000 assignors, right?

20              MR. STIO:  If they have any, if they have counsel.

21    They may not.  But if Atlas has sent out an engagement letter

22    to 19,000 people for their -- or excuse me.

23              THE COURT:  Well, I don't know whether Atlas would

24    necessarily know whether they have separate counsel, maybe you

25    would, all these 19,000.
```

```
 1           MR. PARIKH:  I don't -- we don't know, Your Honor.  I
 2    mean, I'm sure in other contexts.  But as it relates to this
 3    assignment, I don't believe they do.
 4           And to answer Mr. Stio's question directly, our three
 5    law firms have not sent out engagement letters to 19,000 law
 6    enforcement officers as assignors related to these litigations.
 7           THE COURT:  Okay.
 8           MR. STIO:  Your Honor, what I want to see is, they
 9    have three law firms.  They obviously had to send engagement
10    letters to Atlas.  I suspect they sent engagement letters or
11    communications to the PBA and the other police associations.
12    It's not a burden.  They said we could ask it, it's relevant on
13    a 30(b)(6).  We should be able to get those documents.  It's
14    limited.
15           THE COURT:  Well, you certainly know law firms have
16    entered their appearances in these cases, correct?
17           MR. STIO:  They have, Your Honor.
18           THE COURT:  And you know who they're representing by
19    the fact that they entered their appearance.
20           MR. STIO:  In these -- in --
21           THE COURT:  In these cases.
22           MR. STIO:  In the case.
23           THE COURT:  Right.
24           MR. STIO:  Yeah.
25           THE COURT:  Now, they are representing Atlas and
```

1  they're representing all the individual plaintiffs, correct?

2  Is that true?  All your firms or are there some different here?

3            MR. PARIKH:  The Boies Schiller firm, Your Honor, is

4  not in every single case.  But other than that, yes, our three

5  law firms represent Atlas and we represent the individual

6  plaintiffs.

7            THE COURT:  Okay.  So now you're asking about the

8  assignors, is that right, who represents them?

9            MR. STIO:  I'm asking about Atlas and the assignors,

10  yes, Your Honor.

11            THE COURT:  Well, what do you want to -- tell me

12  specifically what you're -- give me an example.

13            MR. STIO:  So there's an RPC provision in New Jersey

14  that says if you have a joint representation of two clients,

15  you have to disclose that and get consent.

16            So to the extent that Atlas' counsel is representing

17  any of the assignors as well, that would be in the engagement

18  letter for a joint representation.

19            I would like to know, because the PBA isn't in this

20  case, but the PBA's fingerprints are all over this case, is

21  there an engagement letter between Atlas' counsel and the PBA?

22  And it goes directly back to this April 5, 2023 solicitation of

23  these people.

24            THE COURT:  Well, the PBA is separate from the

25  assignors, right?  What are they, all members, is that it?

```
 1    It's like a police union.  Is that what you're talking about?

 2              MR. STIO:  Correct.  It's the union, Your Honor.

 3              MR. PARIKH:  The PBA is one of the police unions,

 4    Your Honor, correct.

 5              THE COURT:  Yeah.

 6              MR. PARIKH:  And it is not an assignor.  It's just

 7    the union.

 8              THE COURT:  It's not a party --

 9              MR. PARIKH:  Correct.

10              THE COURT:  -- or assignor, assignee or anything

11    else?

12              MR. PARIKH:  That's right, Judge.

13              THE COURT:  So the question is what agreement that

14    Atlas has with the assignors.  And obviously that is evidenced

15    by the assignments, correct?

16              MR. STIO:  It's also evidenced by its counsel, who is

17    counsel.  It's evidenced by an engagement letter.

18              These law firms can look, they have a system, type in

19    the names, and they can get it up.  And I'm sure that when they

20    type in the names or they just do "Daniel's Law" or "Atlas"

21    they're going to have other names in that conflict check.  It's

22    a click of a few buttons.  It's not difficult.

23              THE COURT:  Well, the law firms representing Atlas,

24    are you also representing the assignors?

25              MR. SHAW:  No.
```

1          MR. PARIKH:  No, we're not, Your Honor.  Other than

2    those individual plaintiffs, no.

3          THE COURT:  Okay.

4          MR. STIO:  So that's an easy production for them.

5    It's a total of nine letters.

6          THE COURT:  Well, they made a representation here in

7    this courtroom before the Court that they are not representing

8    the assignors, haven't they?

9          MR. STIO:  Your Honor --

10         THE COURT:  So they're officers of the court.

11         MR. STIO:  They made a representation last case

12   management conference that there was only one assignment and

13   it's up to three now.

14         THE COURT:  Well --

15         MR. STIO:  They have represented to this Court that

16   it is so important that we need to immediately honor these

17   nondisclosure requests, and they were holding on to them since

18   April of 2023.  I think I'm entitled to test the veracity of

19   statements.

20         MR. PARIKH:  It's -- first of all, I take strong

21   offense to that.  Mr. Stio and I practiced in this courthouse

22   and this courtroom many, many times.  And the idea that he

23   would inflect or claim that any of the lawyers on this side of

24   the table are acting anything but as like highest quality

25   officers of the court is beyond reproach, Your Honor.

1            Okay.  What happened last time with respect to the

2    service terms was we were talking about assignments versus

3    overall service terms.  We acknowledged that there were

4    multiple versions.  We've offered to produce them.  Nobody's

5    hiding the ball here.

6            In terms of our representation of who we represent

7    and who we don't, if they want, have them just ask an

8    interrogatory, Judge, and we'll have Atlas sign an

9    interrogatory that says these are who the lawyers are.  Again,

10   this is a fishing expedition that's -- and it's based upon the

11   fact that these defendants realized they didn't have an actual

12   basis under Rule 11 to remove these cases from state court, and

13   now they're grasping at straws to be able to try to find

14   information about --

15            THE COURT:  Well, look, we're not going to get into

16   that type of issue here.

17            Mr. Parikh has stated that his firm is not

18   representing any of the assignors; is that correct?

19            Are there any other firms here representing Atlas

20   here?

21            MR. McGEE:  Your Honor, Ryan McGee of Morgan &

22   Morgan.  Same answer as Mr. Parikh provided.

23            THE COURT:  Which is what?

24            MR. McGEE:  We're not representing any of the

25   assignors.

```
 1              THE COURT:  All right.

 2              MR. MAO:  Go ahead, Adam.

 3              MR. SHAW:  Boies Schiller, same answer, Your Honor.

 4     We do not represent any of the assignors.

 5              MR. MAO:  That's correct, Your Honor.

 6              THE COURT:  All right.  That solves that.

 7              MR. STIO:  Can I make one statement, Your Honor?

 8              THE COURT:  Yes.

 9              MR. STIO:  They are representing at least the Named

10     Plaintiffs.  They said it.

11              THE COURT:  Well, they're not assignors.

12              MR. MAO:  They're not assignors.

13              MR. STIO:  Yes, they are, Your Honor.  They may not

14     be assignors in one case, but they are assignors in the other

15     70 cases.

16              THE COURT:  What they have said is they are -- they

17     are representing the Named Plaintiffs in all the cases that are

18     before us.  Is that correct?

19              MR. PARIKH:  Correct, Your Honor.

20              What Mr. Stio is trying to draw a distinction on is

21     that, you know, Mr. Maldonado may be an individual plaintiff in

22     30 cases and he's not an individual plaintiff in the other

23     hundred cases.  And so he has assigned, to the extent he had a

24     claim in those hundred cases, he would have assigned them to

25     Atlas.
```

1          THE COURT:  Right.

2          MR. PARIKH:  I acknowledge, yes, we are representing

3     Atlas in that circumstance, but we are representing

4     Mr. Maldonado as an individual plaintiff in the other cases.

5     Again --

6          THE COURT:  But not in every case where he may be an

7     assignor.

8          MR. PARIKH:  That is correct.

9          THE COURT:  If he's just an assignor, you're not

10    representing him?

11         MR. PARIKH:  Correct.

12         THE COURT:  If he's a Named Plaintiff in the case,

13    you are representing him?

14         MR. PARIKH:  That is correct, Your Honor.

15         THE COURT:  And that's the distinction that is being

16    made.

17         MR. PARIKH:  That is correct.

18         THE COURT:  All right.  That's clear on the record.

19         All right.  The next item, Mr. Stio.

20         MR. STIO:  Your Honor, I think I got through all of

21    the document requests.

22         THE COURT:  All right.  Now let's turn to the

23    30(b)(6) topics.

24         Before we get to that, maybe we'll just take a short

25    break.  Okay.

```
1              MR. SHAW:  Thank you, Judge.

2              MR. STIO:  Thank you, Your Honor.

3              THE COURTROOM DEPUTY:  All rise.

4              (Recess was taken at 11:05 a.m. until 11:13 a.m.)

5              THE COURTROOM DEPUTY:  All rise.

6              THE COURT:  You may be seated.

7         We will now turn to the topics for the 30(b)(6)

8    depositions.  And, Mr. Stio, we'll start with the plaintiffs'

9    letter which has seven topics.  And maybe that's where we ought

10   to begin.

11             MR. STIO:  Thank you, Your Honor.

12             THE COURT:  Yeah.

13             MR. STIO:  So the first topic in plaintiffs' letter

14   is documents produced in response to the categories listed

15   above insofar as the questions are relevant to subject matter

16   jurisdiction.

17        We have no problem as long as that's changed to

18   "documents that are produced in response to the Court's order."

19             THE COURT:  Yeah.  The Court order, okay.  Right.

20   We'll do that.  I mean, that makes sense.

21             MR. STIO:  For B, on their letter, Your Honor, we

22   would propose that it be changed to Atlas' interests in

23   Daniel's Law rights being asserted in actions prior to

24   obtaining the assignments.

25             THE COURT:  What does that mean?
```

1          MR. STIO:  Because it's close to what our request is,

2     Your Honor.  So their request in B is similar to what we have

3     in our topic 4.  And we would propose we just use our topic 4,

4     which is a little bit broader.

5          THE COURT:  Wait a minute.  Topic 4 of your request.

6          MR. STIO:  Yes, Your Honor.

7          THE COURT:  Your topics, let me just get that so I

8     have it in front of me.

9          Mr. Shaw, what about that?

10          MR. SHAW:  I thought that was narrower, so I'm fine

11     with that.  I mean, I thought that request got to whether Atlas

12     had some underlying interests.

13          THE COURT:  All right.  Well, we'll eliminate B and

14     we'll insert number 4 for the defendants.  All right.

15          How about C?

16          MR. STIO:  C is no modification necessary, Your

17     Honor.

18          THE COURT:  Okay.  D.

19          MR. STIO:  Your Honor, I don't have a modification

20     for D.

21          THE COURT:  Okay.  E.

22          MR. STIO:  Your Honor, E is similar to our topic 1.

23     We would request that it be our topic 1.

24          THE COURT:  Mr. Shaw.

25          MR. SHAW:  Can you read your topic 1?  For some

1    reason, we're --

2            MR. PARIKH:  I don't -- does your letter have a

3    topic 1, Mr. Stio, or is it numbered as 2?

4            THE COURT:  It's number 1.  Assignments...

5            MR. STIO:  I'll pull it up.

6            Yeah.  Our topic 1, I thought, was not in dispute.

7            So I'll read it out, though.  It is the assignments

8    Atlas purportedly obtained from the assignors including, but

9    not limited to, when the assignments were obtained, how the

10   assignments were obtained, the number of assignments obtained,

11   and the communications about the assignments.

12           These were all topics they said we could ask the

13   30(b)(6) witness.

14           MR. PARIKH:  I don't have an issue with that one

15   instead of --

16           THE COURT:  All right.  What we'll do is we'll

17   substitute their Topic No. 1 for your E.

18           MR. PARIKH:  Thank you, Judge.

19           THE COURT:  All right.  How about F?

20           MR. STIO:  Your Honor, we're fine with -- well, I

21   don't like the word "explanation," right?  I would like to have

22   the person who is going to be the corporate designee to testify

23   about the Daniel's Law services that Atlas purports to provide

24   to the assignors.

25           THE COURT:  Well, then we'll leave out "explanation

```
 1   of" and just say "the services."

 2              MR. STIO:  That's fine.

 3              THE COURT:  All right.  How about G?

 4              MR. PARIKH:  Your Honor, just moving back one really

 5   quickly with respect to what was E on our list and replacement

 6   number 1.

 7              THE COURT:  Right.

 8              MR. PARIKH:  In their number 1 they talk about

 9   communications about the assignments.  We have no problem with

10   them asking questions about whether communications exist or

11   not, but we don't want that to then open the door to document

12   requests that Your Honor has already ruled about.

13              THE COURT:  Whatever I've ruled on the document

14   requests is what I've ruled on.

15              MR. PARIKH:  Understood.  Thank you, Judge.

16              THE COURT:  Okay.

17              MR. STIO:  Your Honor, I think we're fine with G.

18              THE COURT:  G is fine.  Okay.

19              All right.  That covers the 30(b)(6) topics.  Do you

20   have any additional ones?

21              MR. STIO:  We had additional ones, Your Honor.

22              THE COURT:  All right.  Go ahead.

23              MR. STIO:  And we had additional ones because during

24   the document production, one of their defenses was, well, you

25   could just ask questions about that, you don't need documents
```

1    on it.  I'd like to be able to ask questions on certain things.
2         So the first one would be any participation or
3    interest in the litigations by the assignors.
4         THE COURT:  Where is that?  What number is that?
5         MR. STIO:  It's number 6 on mine, Your Honor.
6         THE COURT:  Okay.  Any objection to that?
7         MR. SHAW:  It seems like it's subsumed in the --
8         THE COURT:  Well, we'll add it on number 6, would be
9    H.
10        All right.  Anything else?
11        MR. STIO:  I have number 7, Your Honor, Atlas'
12   ability to identify or communicate with any assignor, including
13   during the litigation, of the litigations.
14        MR. PARIKH:  Your Honor, I don't understand how that
15   relates to subject matter jurisdiction.
16        THE COURT:  Yeah.  I don't --
17        MR. PARIKH:  I mean, at the end of the day, all of
18   these law enforcement officers are customers.  They use the
19   Atlas platform.  All the defendants know that.  It's in the
20   complaint.  So their ability to identify or communicate with
21   them, I'm not really sure what that relates to in terms of --
22        THE COURT:  I don't either.  I'm not going to permit
23   that.
24        Go ahead.  Next one.
25        MR. STIO:  Communications about involvement in --

```
 1              THE COURT:  Which number is this now?
 2              MR. STIO:  Oh, I'm sorry, Your Honor.  Number 9 on
 3      mine.
 4              THE COURT:  Right.
 5              MR. STIO:  About the potential or actual lawsuits
 6      being brought by Atlas.
 7              And if I can take a step back, Your Honor.
 8              THE COURT:  Yeah.  Go ahead.
 9              MR. STIO:  The reason we have that in there is,
10      again, it goes to the totality of the circumstances, but these
11      service terms are not a document that Atlas has and they go to
12      Angelo Stio and they say, here, Angelo, read it, sign it,
13      assign your claims.
14              The way this works is, this is terms of service
15      that's on a website.  It's a contract by your question.  They
16      have the PBA driving their members to go to this website and
17      click on and accept terms of service, and then they have a
18      unilateral assignment confirmation that's sent out to the
19      individuals that the individual had no control over one way or
20      another, just sent out.  I would like to explore how this
21      process works and what discussion is related to the lawsuits
22      with the 30(b)(6) witness.
23              MR. PARIKH:  The whole point of the assignment is in
24      the statute, Judge.  We've talked about that.  Your Honor has
25      kind of gone through that with Mr. Stio.  I'm still not
```

1   understanding, you know, we're talking -- to have a witness be

2   prepared about communications with 20,000 individual people is

3   pretty, pretty extraordinary.

4          THE COURT:  Yeah.

5          MR. PARIKH:  You know, I don't -- we're not going to

6   object if they have general questions related to, you know,

7   these topics and the documents that we've already produced.

8   But the idea of communications with any assignor about

9   potential actual lawsuits brought by Atlas, I mean, we already

10  dealt with this on the document side of it, it just seems

11  extraordinary.

12         THE COURT:  All right.  I'll sustain --

13         MR. STIO:  Your Honor, can I say one thing?

14         THE COURT:  Go ahead.

15         MR. STIO:  They say there are no communications.  Why

16  are they objecting to this if I explore it with their witness?

17         THE COURT:  I'm not going to permit that.

18         Go ahead.  Next.

19         MR. STIO:  The responsibility for payment of legal

20  fees and expenses associated with the litigation, I think

21  that's subsumed by the service terms.  I don't think that

22  should be objectionable.

23         MR. PARIKH:  I -- if it relates to the service terms

24  and what's in the service terms about, you know, the allocation

25  of any award and things like that, there's no issue with that

1   one, Your Honor, if it's about the responsibility of the

2   assignors versus Atlas with respect to legal fees.  If it

3   delves into other questions related to what a fee structure

4   might be or how those things are being designed within Atlas,

5   then I think that that goes outside of the subject matter

6   jurisdiction component in the way that this topic is drafted.

7          So if it's limited to subject matter jurisdiction

8   and, you know, the notion of responsibility of legal fees from

9   Atlas as an assignee versus any legal obligations of the

10  assignors --

11         THE COURT:  Yeah.  I think that's what you're talking

12  about, aren't you?

13         MR. STIO:  But, Your Honor, that topic goes directly

14  to control and payment of legal fees under the *Long John*

15  *Silver's* factors.

16         THE COURT:  Well, wouldn't the -- wouldn't the

17  assignment deal with that?

18         MR. PARIKH:  It does, Your Honor, correct.

19         THE COURT:  I mean, it would say, you know, the

20  police officer is assigning his rights to Atlas.  It's

21  certainly going to say something about what the assignor's

22  legal responsibilities are, to pay fees or counsel fees or

23  costs or anything else, isn't it?

24         MR. PARIKH:  Correct, Judge.

25         THE COURT:  Well, then you can ask about whatever

1  is -- yeah.

2          MR. PARIKH:  Absolutely.  As it relates to the

3  service terms, absolutely.

4          THE COURT:  Or we do have that -- that's one of the

5  topics of discussion, isn't it, service terms?

6          MR. PARIKH:  It is, Your Honor.  That would be under

7  topic A, because it's related to the documents being produced.

8          THE COURT:  Yeah.  Wouldn't that take care of it,

9  number 1?

10          MR. STIO:  As long as I'm allowed to go down that

11  path, Your Honor, it's on the record.  That's fine.

12          THE COURT:  Well, I assume it's -- you think it's

13  included in number 1?

14          MR. PARIKH:  It's included in number 1 within the

15  confines of subject matter jurisdiction, Your Honor.  And,

16  again, this is that gray area.

17          We didn't agree to this particular topic that was

18  raised by the defendants because we think the way that they've

19  crafted this, it goes beyond and that they're seeking to go

20  beyond what would be permissible in subject matter jurisdiction

21  discovery.  So if it's limited to subject matter jurisdiction

22  discovery as it relates to legal fees that are --

23          THE COURT:  Well, obviously the whole thing is

24  related to subject matter jurisdiction.

25          MR. PARIKH:  Of course.  Of course.

```
 1              THE COURT:  That's the whole point.

 2              MR. PARIKH:  Of course.

 3              And I think, Your Honor, so the service terms will

 4    lay out -- it has to do with the contrast in terms of the, as

 5    they talked about, the real party in interest, so the

 6    obligations and responsibilities of the assignees versus the

 7    obligations and responsibilities of the assignors.

 8              And so if those are the questions as it relates to

 9    legal fees and obligations, then we have no problem in our

10    30(b)(6) witness --

11              THE COURT:  Yeah.  I think you have it in number A,

12    "Documents produced in response to the Court's order, insofar

13    as the questions are relevant to subject matter jurisdiction."

14              So that would include your right to examine about the

15    assignments and the nature of it and who has what

16    responsibilities.  All right.  I don't think we need to add

17    that.

18              Next one.

19              MR. STIO:  And that's it, Your Honor.

20              THE COURT:  All right.  The Court will then enter an

21    order consistent with what's been decided here today.

22              Go ahead.

23              MR. STIO:  Your Honor, I thought, was going to

24    revisit the issue of a privilege log and identification of what

25    is being withheld.  I don't think Your Honor previously ruled
```

1    on that.

2              THE COURT:  No, we haven't resolved that.

3              MR. PARIKH:  I -- we're happy to identify if they are

4    responsive documents that are being withheld under a privilege

5    designation, we're happy to identify that.

6              I think what my concern was, Your Honor, is when we

7    talk about when there were requests made regarding kind of

8    broad communications, which I don't think Your Honor has

9    allowed, so I think it should be okay for us to provide a

10   privilege log, it's getting into, you know, a specific, you

11   know, couple hundred-page log of emails with lawyers and things

12   like that.  So my concern ultimately, Your Honor, really kind

13   of focuses in on the time period again for this.

14             THE COURT:  Right.

15             MR. PARIKH:  So if it's that they'd like a privilege

16   log that predates, you know, let's say December 1, 2023, then,

17   you know, we have no issue.  We can provide a privilege log as

18   it relates to the document requests.

19             I think once we get into the time frame that's closer

20   to the litigation, it becomes a lot harder because lawyers were

21   starting to do work as it relates to noncompliance by

22   defendants and a requirement that, you know, that there's

23   unfortunately going to need to be litigation to enforce all of

24   these individuals' rights.

25             THE COURT:  Yes, sir.

1           MR. McGEE:  And, Judge, Ryan McGee with Morgan &

2       Morgan for the plaintiffs.  If it's okay to address you from

3       here, Judge.

4           THE COURT:  Yeah.  All right.

5           MR. McGEE:  I think the other issue is, in any

6       litigation that I've been in for the past six and a half years

7       on the plaintiffs' side, I've never had a defendant produce a

8       privilege log with expediency.  That's kind of one of the

9       issues that we're facing here, too, we want to get over.  We

10      want to get through with this.  We know some of the cases are

11      staying with you, some of them are not.  So that was one of the

12      issues that we had with wholesale producing a privilege log.

13          But I think if we're in this more limited universe,

14      like Mr. Parikh has represented, we can figure something out.

15      But that was, to start the hearing, what our biggest issue was.

16          MR. STIO:  Your Honor, I don't know what that means.

17      There's a rule in place, Federal Rules of Civil Procedure

18      Rule 34.  We're asking for a privilege log if they're

19      withholding documents that the Court ordered them to produce on

20      the basis of privilege.

21          THE COURT:  Well, of course, the Court never orders

22      them to produce privileged documents.  I mean, the discovery

23      rule talks about relevant documents which aren't privileged

24      should be produced.  Am I right?

25          MR. STIO:  And it says that you have to have a

1    privilege log, though.

2              THE COURT:  Okay.

3              MR. STIO:  And all I'm asking for is let's follow the

4    rules.

5              THE COURT:  Okay.

6              MR. STIO:  And I understand the order, and we're

7    agreeable to it.  But I would like to know if anything is being

8    withheld from this narrow list that we've identified today.

9    It's not a huge list.  I don't think it's going to be that

10   difficult.

11             THE COURT:  All right.

12             MR. KIMREY:  Your Honor, Blaine Kimrey again.  I was

13   just going to say, in light of the fact that plaintiffs'

14   counsel has represented that they don't represent the

15   assignors, the privilege log should not be that burdensome

16   given how narrow application of privilege would be.

17             Also, if we can move off the privilege log issue,

18   Your Honor, I've got a couple other just housekeeping measures.

19             THE COURT:  Sure.  Go ahead.

20             MR. KIMREY:  One is, there are third-party entities

21   that have expressed an interest in filing amicus briefs related

22   to the consolidated motion to dismiss based on the facial

23   constitutional challenge.

24             THE COURT:  Right.

25             MR. KIMREY:  That's due on June -- the main brief is

1    due on June 10th.

2                   THE COURT:  10th.  Yes.

3                   MR. KIMREY:  Then there is a schedule thereafter.

4                   THE COURT:  Right.

5                   MR. KIMREY:  I assume, Your Honor, you'd like to see

6    from those who would like to file -- and I don't have anyone

7    secured yet.  There are several people in the hopper or several

8    entities.  You'd like to see a motion for leave with the actual

9    amicus brief attached.  When would you like to set a deadline

10   for motions for leave to file amicus briefs in light of the

11   schedule for briefing by the parties on these issues?

12                  THE COURT:  Better do it soon.  They're due the

13   10th of June.  So if they're going to file them, we'd have to

14   have it by the 10th of June, correct?

15                  MR. KIMREY:  Well, they won't have seen the brief yet

16   by the 10th of June.

17                  THE COURT:  I know.  So -- oh, they want to -- they

18   want to do it after?

19                  MR. KIMREY:  After it, yes.

20                  In federal -- in appellate court, Your Honor, as you

21   know, it's a seven-day rule.  I was hoping that maybe we could

22   have a little bit more than that for potential motions for

23   amicus relief, something to follow the overall schedule.  So I

24   don't know, what is the last deadline in the briefing schedule?

25                  THE COURT:  I have it here.

1          MR. KIMREY:  I'm sorry, Your Honor.  I should have

2     that in front of me.

3          THE COURT:  I think the 10th of June, and then

4     there's a -- I think the 14th of June, isn't there, for

5     individual briefing?

6          MR. KIMREY:  There is supplemental briefs and --

7          MR. STIO:  The 14th, and 30 days, I believe, after

8     for the opposition.

9          THE COURT:  Yeah.  Sometime in July the opposition

10    brief is due.

11         MR. PARIKH:  Yeah.  I think it's July 15th, Your

12    Honor.

13         THE COURT:  July 15th, yeah.

14         So what are you proposing, I enter an order?

15         MR. KIMREY:  July 31st.

16         THE COURT:  For what?  You mean --

17         MR. KIMREY:  For motions for leave to file amicus.

18         THE COURT:  July 31st?

19         MR. SHAW:  How are we going to -- first of all, I

20    don't know whether the Court even wants amicus for these

21    issues, number one.

22         But number two, how would we address that if it's

23    20 days after our brief is due?

24         MR. KIMREY:  How about 21 --

25         THE COURT:  Well, how many amicus briefs are in the

```
 1   window?
 2              MR. KIMREY:  There might be zero, Your Honor.
 3              THE COURT:  How many?
 4              MR. KIMREY:  But it could be three to four possibly.
 5              THE COURT:  And what groups are these that are
 6   interested in filing amicus briefs?
 7              MR. KIMREY:  What are the groups?
 8              THE COURT:  Yeah.
 9              MR. KIMREY:  The ACLU New Jersey, which is litigating
10   Kratovil, has filed a petition for cert to the New Jersey
11   Supreme Court, although that's an as-applied challenge.
12   Possibly the Electronic Frontier Foundation.  Possibly the
13   Reporters Committee for Freedom of the Press.  Possibly -- what
14   else is in there?  Entities along those lines.  Largely, First
15   Amendment, Sunshine-related entities.
16              THE COURT:  So, I mean, why shouldn't we deal with
17   it, have it in the next couple of weeks, any motions?
18              MR. KIMREY:  Couple weeks after June 10th?
19              THE COURT:  Well, no.  I'm just thinking from now.  I
20   mean, they obviously know what the issues are all about.  It's
21   no surprise.
22              MR. KIMREY:  They're all nonprofits with very short
23   staffs, so.
24              THE COURT:  They must have known about this before
25   now.
```

```
1            MR. KIMREY:  If ultimately you say June 10th, Your
2     Honor, we'll live with that.  We'd at least like another seven
3     days beyond that to match --
4            THE COURT:  In other words, to file a brief or to --
5            MR. KIMREY:  To file a motion for leave to file the
6     amicus.  Because you may ultimately look at the amicus brief
7     and say you don't want to grant leave.  I mean, hopefully you
8     would grant leave.
9            MR. PARIKH:  Your Honor, I would suggest that perhaps
10    you just set June 14th as the date.  They'll then have days to
11    view the merits brief.
12           THE COURT:  To file their petition.
13           MR. PARIKH:  To file their -- I believe their motion
14    for leave to appear as amicus has to attach their proposed
15    amicus brief as part of it.
16           THE COURT:  Right.  Right.
17           MR. PARIKH:  But that gives them -- we all know what
18    the issues are already as we sit here today, so they can
19    prepare them.  They can see whatever main briefs --
20           THE COURT:  All right.  I'll consider that and enter
21    an order of some sort.
22           MR. KIMREY:  Okay.
23           THE COURT:  I'll either do it today or tomorrow.
24           MR. KIMREY:  All right.  Thank you, Your Honor.
25           Another point.  It's been suggested that the interest
```

1    underlying Daniel's Law is privacy.  The Legislature's

2    articulated interest is actually safety.  So I just wanted to

3    make that clear on the record.

4              THE COURT:  Right.

5              MR. KIMREY:  It's judicial, in other covered persons,

6    safety.  It's not actually -- the Legislature, as far as I'm

7    aware, has never articulated the privacy interest.  It's the

8    safety interest, Your Honor.

9              THE COURT:  All right.  Thank you.

10             Yes, sir.

11             MR. SHAW:  Your Honor, briefly, I think as counsel

12   has admitted, privacy is one of the central issues.  Defense

13   counsel has admitted that.

14             Getting back to the privilege log.  One of the issues

15   we have, Your Honor, is, you know, the statute says that

16   Daniel's Law cases can and may be filed in New Jersey.  So at

17   some point in time, Atlas is discussing with its lawyers about

18   filing in New Jersey, I mean, even going through the process of

19   where is the particular court that we're going to file and

20   those kinds of things.  That's going to -- if we have to

21   somehow amass that information and put it into a privilege log,

22   I don't know whether he --

23             THE COURT:  Well, it seems obvious that you would be

24   filing a case in the state of New Jersey involving a New Jersey

25   statute, involving New Jersey law enforcement personnel.  Where

1   else would you file it?

2             MR. SHAW:  Well, exactly.

3             THE COURT:  You wouldn't file it in California.

4             MR. SHAW:  But they want a privilege log with all

5   that information on it.  That's what the point is.

6             THE COURT:  Mr. Stio?

7             Obviously they're going to file the case in New

8   Jersey, isn't it?  Where else would you file it?

9             MR. STIO:  Your Honor, my request was a privilege

10  log, Your Honor.  I don't know when -- I don't have the

11  engagement letter.  I don't know when the engagement started.

12  So all I want is a privilege log if they are withholding a

13  document from the list that Your Honor ordered them to produce.

14            We have gone from formal requests and we were going

15  to put it in an order, and we're fine with that, but the reason

16  I wanted the formal request, because formal requests provide

17  for -- I get to know what is being produced, I get to know what

18  is being withheld, and I should know what the basis for

19  withholding is.

20            I don't think that this is a huge burden,

21  specifically as to subject matter jurisdiction, because our

22  requests have been narrowed significantly.

23            THE COURT:  Well, of course, they -- isn't the

24  opposing party always entitled to a privilege log?

25            MR. PARIKH:  They are, Your Honor.  But because of

1    the breadth of what we're talking about and the time frame, the

2    time frame again I think is the issue, right?  Because we're

3    talking about 140 cases, right?

4              THE COURT:  Right.

5              MR. PARIKH:  And parsing out, you know, we can't

6    parse out communications related to these specific remand

7    defendants as opposed to kind of a broader group with respect

8    to some of these topics.

9              I would propose, Your Honor, that kind of a

10   middle-of-the-road approach would be that if we withhold

11   records in response to these categories that are within Your

12   Honor's order on the basis of privilege, that we say to them

13   we've withheld the records on the basis of privilege and then

14   we meet and confer and figure out whether a privilege log for

15   that category is feasible or not feasible based upon the

16   volume.

17             So if it's a request, a document request that may

18   relate to communications and it would require us to spend one

19   month putting together a privilege log of tens of thousands of

20   emails amongst counsel and their clients, then we can have that

21   conversation and say we just think this is not proportional

22   here, we've withheld documents between counsel and Atlas, you

23   know, in this relevant time period from production versus if

24   it's something, as Mr. Stio has talked about, that goes back to

25   service terms from January of 2023, and there is three emails

1    that we're withholding on privilege, then of course we can

2    provide a privilege log with respect to that.

3            THE COURT:  What I'll do is with respect to that is

4    require counsel to meet and confer and then get back to me,

5    say, within a week.  And then we'll see where we are on that.

6    And then depending on what you say, we may have to have another

7    conference to deal with that subject, but we won't let things

8    otherwise be delayed.

9            All right.  Now, let's talk about scheduling of all

10   this.  You know the categories of documents to be produced.

11   What do you propose is the timetable for producing all this,

12   Mr. Parikh?

13           MR. PARIKH:  So I think, Your Honor, we can get all

14   these documents over to the defendants within three weeks with

15   the new categories.  We might be able to do it within two, but

16   I think three weeks, absolutely, we can get it done.  And

17   obviously, if we can get it done sooner, then that's great.

18           THE COURT:  So you're saying the 24th of June?

19           MR. PARIKH:  Correct.

20           THE COURT:  How about the 30(b)(6)?  I mean,

21   obviously, the defendants -- well, oh, I should have asked all

22   those sitting here in the courtroom, with respect to the topics

23   for production, anybody else want to say anything?  Mr. Stio

24   has been carrying the laboring oar on that.  Anybody have any

25   further comments on that, or on the Rule 30(b)(6) topics?

```
 1              (No response.)
 2              THE COURT:  All right.  Documents to be produced by
 3    the 24th of June.  And then you need some time, Mr. Stio, and
 4    your colleagues to review the documents.  What would you
 5    propose as a timetable for a 30(b)(6) deposition?
 6              MR. STIO:  Your Honor, I propose three weeks just
 7    because I would like to share them with the joint defense
 8    group.
 9              THE COURT:  Okay.  That's the 24th of June, that
10    would be 15th of July.
11              MR. STIO:  Yes, Your Honor.
12              THE COURT:  So we'll say the deposition, the 30(b)(6)
13    deposition would be after the 15th of July.  Does that make
14    sense?
15              MR. PARIKH:  Yeah.  I would say if it's after the
16    15th of July, that's fine with us, Judge.
17              THE COURT:  Yeah, after.  After July.
18              Well, maybe we should say on or before the 31st of
19    July.
20              MR. PARIKH:  That's fine, Your Honor.
21              THE COURT:  That will give you -- yes, sir.
22              MR. McGEE:  I think that's fine, Judge.  I just know
23    that myself and Mr. Lee will be -- he's not here right now.  We
24    have multiple hearings in other cases toward the end of July,
25    but we'll work with defense counsel and figure something out.
```

1          MR. STIO:  Your Honor, I am fine if they want to do
2     August 7th, if that will work.
3          MR. McGEE:  It actually gets into other hearings that
4     we have on August 7th.  So I would prefer July, just as long as
5     we've got some leeway in scheduling, Judge.
6          THE COURT:  I would say on or before July 31st.
7     Okay.  And then let's talk about the briefing.  We have
8     July 31st for the final deadline.  And let's just see here, the
9     31st, how about the 21st of August?  Is that too much time for
10    the opposition brief?
11         MR. PARIKH:  I think the oppositions will be the
12    defense, Your Honor.
13         THE COURT:  Yeah, I know.
14         MR. STIO:  Your Honor, the issue with that is
15    vacations and 34 parties to coordinate with.  I'd like to have
16    30 days.
17         THE COURT:  Okay.  That would be -- make it
18    August 30th.
19         MR. STIO:  Thank you, Your Honor.
20         THE COURT:  Now, as we did before, with respect to
21    the facial challenge, we'll say a consolidated brief would be
22    due the 30th of August with a -- like a seven-day window for
23    individual briefs, which shouldn't duplicate the other briefs.
24    And we'll work out the specific dates in an order.
25         But we'll follow the same format as we did earlier.

```
 1              MR. STIO:  Thank you, Your Honor.

 2              THE COURT:  And then in terms of your reply brief?

 3              MR. PARIKH:  I would think 30 days should be

 4   sufficient, Judge.

 5              THE COURT:  You need 30 days, all right.  That would

 6   be -- we'll say September 30th.

 7              MR. PARIKH:  Thank you, Judge.

 8              THE COURT:  And then we'll also enter the order on

 9   the amicus.  That will be a separate order relating to that.

10              MR. KIMREY:  Thank you, Your Honor.

11              THE COURT:  Is there anything else we need to do

12   today?

13              Yes, sir.

14              MR. CHRISTIE:  Your Honor, thank you.

15              Your Honor, mindful of your discussion earlier today

16   to parse out subject matter jurisdiction from other issues, I'd

17   just like to revisit with the Court the issue of plaintiffs'

18   unwillingness to provide the actual redaction emails.

19              We have a covered persons list that they've provided.

20   We've reviewed it carefully.  It contains thousands of names

21   that we do not believe -- from people who we do not believe

22   sent these suppression emails.  We want to make sure that we

23   cover --

24              THE COURT:  Now, my understanding is Atlas sends

25   information to you to be redacted; is that correct?  I mean,
```

```
 1    that's --
 2              MR. CHRISTIE:  Well, actually, no.  The covered
 3    persons themselves --
 4              THE COURT:  They send --
 5              MR. CHRISTIE:  -- through the Atlas --
 6              THE COURT:  Network.
 7              MR. CHRISTIE:  Platform, yes.
 8              THE COURT:  And so?
 9              MR. CHRISTIE:  So the problem is, Judge, they've
10    provided these covered persons lists.
11              THE COURT:  Who is it?
12              MR. CHRISTIE:  Atlas did, pursuant to Your Honor's
13    prior order.
14              THE COURT:  Yeah, right.
15              And these are people that Atlas says you have in your
16    system and that you're disclosing information about the
17    individuals; is that correct?
18              MR. CHRISTIE:  Atlas' view is that these covered
19    persons list include all of the individuals who sent the data
20    suppression requests months ago.
21              THE COURT:  Okay.  Right.
22              MR. CHRISTIE:  We've carefully reviewed those lists
23    and compared it to the emails that we received.  And it is not
24    a situation that plaintiff is mentioning where they have been
25    caught in spam and we don't know what they are with regard to
```

1    the names.  So we've gotten rid of the spam issue.

2            Based upon the totality of the analysis, our

3    perception is that there are thousands of names that are

4    included on these lists of individuals who did not send the

5    suppression emails several months ago.

6            THE COURT:  Okay.

7            MR. CHRISTIE:  We have come to the conclusion that

8    Atlas is now trying to expand the list of the so-called

9    suppression requests by virtue of these covered persons

10   lists --

11           THE COURT:  Right.

12           MR. CHRISTIE:  -- to include individuals who did not

13   send the emails several months ago which gave rise --

14           THE COURT:  To you?

15           MR. CHRISTIE:  To my clients, yes.

16           THE COURT:  Well --

17           MR. PARIKH:  And I've said this to counsel, Your

18   Honor, I've offered to meet and confer on this issue with him.

19   This goes to merits discovery.  The covered persons list that

20   we provided to Black Knight and to every other defendant is the

21   list that Atlas says.  Atlas says this is a list of individual

22   covered persons who transmitted a request to your client.

23   We've identified in the complaint an email address or email

24   addresses that those requests were sent to.

25           If they don't have those emails on their systems,

1    that's a -- that's an issue on their system.  So if they want

2    to engage in merits discovery, have us start doing forensic

3    examinations of their systems, have depositions of whether

4    their person checked the spam filter regularly or not, we're

5    happy to engage in that.  That would be a waiver of personal

6    jurisdiction argument, of course.  And that is what I've said

7    to counsel.  I've said, look, you -- as Your Honor had said,

8    they can choose to take this list and use it as a compliance

9    tool or not.  That's up to each one of these defendants whether

10   they want to comply.

11              THE COURT:  Right.

12              MR. PARIKH:  And that's the stage of the case that

13   we're in.

14              And so Black Knight has a list, it has the names of

15   all the individuals, it has the information that they've

16   requested to be redacted.  Now, with Your Honor's order,

17   because they're a remand defendant, they're also going to get

18   the date of the assignments and they're going to get a

19   categorization of whether that person is a judge, a judicial

20   officer or law enforcement officer, a prosecutor, or a family

21   member, and they can choose whether or not to take that

22   information and redact it or not.

23              And if eventually months from now in merits discovery

24   they have evidence that these requests were never transmitted,

25   then they're going to move to dismiss that assignment or that

1    particular claim with respect to their case or we'll stipulate

2    to it.

3            But from my perspective, Judge, the issue of whether

4    or not they received something, it's not a function of what was

5    done through the Atlas system.  It's a function of what they

6    did in their computer systems or what they did not do to comply

7    with the law.

8            THE COURT:  I think it's best to try to meet and

9    confer with them and deal with that issue.  I can't deal with

10   that today, all right?

11           MR. PARIKH:  All right.

12           THE COURT:  Thank you.

13           MR. CHRISTIE:  Okay.  The only thing, Judge, we're

14   asking for the emails themselves.  It shouldn't be unduly

15   burdensome.  And unfortunately --

16           THE COURT:  Because we may be getting into the

17   merits, and that's the other issue here that we're dealing

18   with.  And I think we have enough on our plate with the

19   constitutional challenge and the remand at this point.

20   Everything else, as you know, is stayed.

21           MR. CHRISTIE:  Understood, Judge.

22           THE COURT:  All right.  Thank you.

23           MR. CHRISTIE:  All right.  Thank you.

24           THE COURT:  Anything else?

25           Yes, ma'am.

1              MS. HUTCHINS:  Good morning, Your Honor.

2              THE COURT:  Good morning.

3              MS. HUTCHINS:  My name is Sarah Hutchins.  S-A-R-A-H,

4    Hutchins, H-U-T-C-H-I-N-S.

5              THE COURT:  Yes.

6              MS. HUTCHINS:  And I represent BlackBaud,

7    Incorporated.  And I just wanted to raise for Your Honor, based

8    on what I heard you say a moment ago, that you're going to

9    consider the parties' briefing limits with respect to remand.

10   And just ahead of that decision, I wanted to raise what I

11   understood from the last hearing, which was I guess more

12   opportunity for the defendants to have unique briefing because

13   the remand issues are a bit unique.  For example, my client has

14   only moved on CAFA, has not moved on collusive issues.

15             And so what I understood last time was that the Court

16   was considering 25 pages for any defendant that wished to

17   submit their own brief.  And I just remind Your Honor of that

18   potential discussion.

19             THE COURT:  Yeah.  I didn't discuss the page limit,

20   but I assume we'd follow the same format.  Do you have any

21   objection to that?

22             MS. HUTCHINS:  No, Your Honor.  Just more opportunity

23   then with respect to the constitutional briefing --

24             THE COURT:  Okay.

25             MS. HUTCHINS:  -- to have increased page limits for

 1    those that are going outside of the consolidated briefing.

 2              THE COURT:  Because of unique circumstances?

 3              MS. HUTCHINS:  Because of unique circumstances.

 4              MR. SHAW:  I'm not aware -- everyone moved on the

 5    basis of CAFA.  So that's not a unique circumstance.  That's

 6    actually the circumstance.

 7              MS. HUTCHINS:  I don't think that's correct.  I don't

 8    think every defendant has moved on the basis of CAFA.

 9              MR. SHAW:  Well, the consolidated briefing is going

10    to be on collusion.

11              THE COURT:  Right.

12              MR. SHAW:  And CAFA.

13              THE COURT:  Right.

14              MR. SHAW:  So to me, the central briefing is

15    collusion and CAFA.  So I'm not sure what the supplement is

16    separate from CAFA, if CAFA is part of the main.

17              THE COURT:  In other words --

18              MS. HUTCHINS:  Your Honor, my client did not move on

19    collusive, so using up our page limits for that --

20              THE COURT:  Well, I understand.  But the point is, if

21    the consolidated brief deals with two issues and you have only

22    one issue, then there wouldn't be any need to file a

23    supplemental brief unless that one issue that you're interested

24    in is not adequately dealt with.

25              MS. HUTCHINS:  Correct, Your Honor.  And I would also

1   put forth that my CAFA arguments are unique than some of the

2   other defendants with respect to the Rule 20 analog.

3          THE COURT:  Okay.

4          MS. HUTCHINS:  And I've recently amended my removal

5   to raise issues as to the assignment date.

6          So, again, and I'm just one defendant.  I'm sure

7   other defendants feel that their arguments are unique as well.

8   So when Your Honor was considering this issue before, I

9   interpreted the discussion to acknowledge that the issues could

10  be more unique with respect to remand than with respect to the

11  constitutional briefing.

12         THE COURT:  All right.  Well, we'll extend the page

13  limit somewhat then on that.

14         MS. HUTCHINS:  Thank you, Your Honor.

15         THE COURT:  All right.  Yes, sir.

16         MR. CHEIFETZ:  Good morning, Your Honor.

17         THE COURT:  Good morning.

18         MR. CHEIFETZ:  David Cheifetz from Hogan Lovells on

19  behalf of The Lifetime Value Companies.

20         THE COURT:  Yes.

21         MR. CHEIFETZ:  Given the hour, I'll try to be brief.

22  Just two points, please, Your Honor.  One is substantive, one

23  is more in the nature of housekeeping.

24         We've heard some representations today, Your Honor,

25  that the requests here for take-down notices were sent by the

1    covered persons.  And it's my client's position, and I think

2    the position of many other defendants, that, in fact, the

3    requests here were actually sent by Atlas.  And that's going to

4    become an important point later on.  I just wanted to be clear

5    for the record that my client's position is that, in fact,

6    requests here were improperly sent by Atlas and not the covered

7    persons themselves.

8             And two, with respect to the 30(b)(6) deposition, I

9    just want to clarify, will all defendants who wish to

10   participate be given the opportunity to participate in that

11   deposition, or will we have to work out some sort of procedure

12   where those that wish to participate ask for permission to do

13   so?

14            THE COURT:  Well, I would hope that -- we can't have,

15   you know, 40 lawyers.  That would be quite a nightmare.  I'm

16   just --

17            MR. CHEIFETZ:  Nobody wants that.

18            THE COURT:  I think -- I would hope we can work out

19   some system where maybe we have a couple of attorneys who could

20   work together to do the questioning.  The deposition, I think,

21   should be limited to eight hours.

22            Is there any reason not to do that?  30(b)(6) at this

23   point.

24            MR. PARIKH:  Seven hours under the rules, Your Honor.

25            THE COURT:  Or seven hours.

```
1              MR. PARIKH:  Yes.  What we --
2              THE COURT:  I meant seven hours.
3         Well, what do you propose?
4              MR. CHEIFETZ:  I just wanted to be clear for the
5    record that any defendant who wishes to participate can, I
6    suppose, meet and confer among ourselves, but there's really no
7    limitation placed by the Court on the number of attorneys --
8              THE COURT:  I would hope that you would be able to
9    work out something so that we don't have 40 lawyers examining
10   the 30(b)(6) witness.
11             MR. SHAW:  Yeah.  And I think we talked about last
12   time setting up a place, whether we could accommodate a number
13   of attorneys, and then also have some kind of Zoom or virtual.
14             THE COURT:  Yeah.
15             MR. SHAW:  One thing I just want to make clear is,
16   this is not every defendant, it's just the remand defendants.
17   I'm not sure if you're --
18             MR. CHEIFETZ:  Correct.  I represent defendants
19   subject to the potential remand.
20             THE COURT:  Yeah.  It's obviously remand.  Well,
21   that's why I say 40 as opposed to 70-something.
22             MR. SHAW:  Yeah.  Right.
23             THE COURT:  So, Mr. Stio, maybe since you have so
24   many of these defendants, we'd have to work out, and with
25   plaintiffs' counsel, work out a location for the deposition
```

1   maybe by Zoom.  And other defense counsel could at least --

2        MR. STIO:  We'll do that, Your Honor.

3        THE COURT:  -- participate remotely.  And work with

4   some of the defendants as to who's going to take the deposition

5   and maybe the small group or whatever.

6        MR. STIO:  Yeah.  We talked about that last time.

7   We'll try to get a small like committee to do it.

8        THE COURT:  Yeah.

9        MR. CHEIFETZ:  Okay.  Thank you very much.

10        THE COURT:  Let's see if you can do that.  If there's

11   a problem, obviously let me know.

12        MR. CHEIFETZ:  I don't anticipate there will be a

13   problem.  I've been working closely with Mr. Stio.

14        THE COURT:  No.  Obviously, I don't want to exclude

15   anybody from participation.

16        MR. CHEIFETZ:  Right.  I just wanted to make sure

17   that the Court was amenable to others participating.

18        THE COURT:  Yes.

19        MR. CHEIFETZ:  Thank you, Your Honor.

20        THE COURT:  Thank you.

21        Is there anything else we need to do for the good of

22   the order today?

23        MR. STIO:  Nothing from the defense.

24        THE COURT:  I will get the order entered in the next,

25   if not today, tomorrow.  So we'll full steam ahead.  Thank you

1   very much.

2           MR. SHAW:  Thank you, Your Honor.

3           MR. STIO:  Thank you, Your Honor.

4           MR. McGEE:  Thank you, Your Honor.

5           THE COURTROOM DEPUTY:  All rise.

6           (Proceedings concluded at 11:54 a.m.)

7           - - - - - - - - - - - - - - - - - - - - -

    **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

8           - - - - - - - - - - - - - - - - - - - - -

9       I certify that the foregoing is a correct transcript

10  from the record of proceedings in the above-entitled matter.

11

12

13  /S/John J. Kurz, RDR-RMR-CRR-CRC          June 6, 2024

14  Court Reporter/Transcriber

15

16

17

18

19

20

21

22

23

24

25

**MR. CHEIFETZ: [10]**
104/16 104/18 104/21
105/17 106/4 106/18
107/9 107/12 107/16
107/19
**MR. CHRISTIE: [20]**
38/6 38/9 38/12 39/8
39/13 40/5 97/14 98/2
98/5 98/7 98/9 98/12
98/18 98/22 99/7 99/12
99/15 101/13 101/21
101/23
**MR. KIMREY: [43]**
27/3 27/6 27/11 27/19
27/21 28/3 28/7 28/12
52/2 52/5 52/19 52/21
52/24 53/4 53/7 53/13
53/17 53/21 54/17 86/12
86/20 86/25 87/3 87/5
87/15 87/19 88/1 88/6
88/15 88/17 88/24 89/2
89/4 89/7 89/9 89/18
89/22 90/1 90/5 90/22
90/24 91/5 97/10
**MR. MAO: [3]** 72/2
72/5 72/12
**MR. McGEE: [7]** 71/21
71/24 85/1 85/5 95/22
96/3 108/4
**MR. PARIKH: [93]**
19/7 28/24 29/1 29/5
29/11 29/24 30/10 30/24
32/17 32/19 33/6 33/20
34/6 34/12 35/11 36/14
36/23 37/6 40/6 40/19
40/22 41/15 41/18 42/7
42/11 50/8 50/13 55/11
56/2 58/2 59/16 63/6
63/18 63/22 64/6 64/9
64/13 64/16 64/21 65/9
65/14 67/1 68/3 69/3 69/6
69/9 69/12 70/1 70/20
72/19 73/2 73/8 73/11
73/14 73/17 76/2 76/14
76/18 77/4 77/8 77/15
78/14 78/17 79/23 80/5
80/23 81/18 81/24 82/2
82/6 82/14 82/25 83/2
84/3 84/15 88/11 90/9
90/13 90/17 92/25 93/5
94/13 94/19 95/15 95/20
96/11 97/3 97/7 99/17
100/12 101/11 105/24
106/1
**MR. SHAW: [32]** 19/6
20/12 20/15 25/22 26/4
26/8 26/16 56/11 56/21
57/10 61/25 62/19 65/4
65/21 69/25 72/3 74/1
75/10 75/25 78/7 88/19
91/11 92/2 92/4 103/4
103/9 103/12 103/14
106/11 106/15 106/22
108/2
**MR. STIO: [146]**
**MS. CHUDEREWICZ:**
**[1]** 19/9

**MS. HUTCHINS: [11]**
102/1 102/3 102/6 102/22
102/25 103/3 103/7
103/18 103/25 104/4
104/14
**THE COURT: [336]**
**THE COURTROOM**
**DEPUTY: [4]** 19/4 74/3
74/5 108/5

**$**
**$19 [1]** 46/20
**$19 million [1]** 46/20

**/**
**/S/John [1]** 108/13

**0**
**07052 [1]** 16/12
**07102 [2]** 17/7 17/24
**08101 [1]** 1/13
**08542 [1]** 17/19
**08543 [1]** 16/16

**1**
**100 [2]** 17/7 45/17
**10017 [1]** 17/11
**10018 [1]** 17/3
**101 [1]** 16/12
**1037 [1]** 17/23
**105 [1]** 17/19
**10th [4]** 87/1 87/2 89/18
90/1
**10th of [4]** 87/13 87/14
87/16 88/3
**11 [1]** 71/12
**11:05 [1]** 74/4
**11:13 [1]** 74/4
**11:54 a.m [1]** 108/6
**12207 [1]** 16/3
**12th [1]** 16/3
**1359 [6]** 53/10 53/11
53/14 53/15 57/2 57/13
**140 [1]** 93/3
**140-plus [1]** 29/22
**14th [1]** 88/7
**14th of [1]** 88/4
**1520 [1]** 17/23
**15th [2]** 88/11 88/13
**15th of [3]** 95/10 95/13
95/16
**16 [1]** 36/16
**17 [1]** 36/16
**18,000 [1]** 36/16
**19,000 [7]** 36/8 36/16
50/17 66/19 66/22 66/25
67/5
**1:24-cv-03993-HB [1]**
1/4
**1:24-cv-03998-HB [1]**
1/8
**1:24-cv-04000-HB [1]**
2/3
**1:24-cv-04037-HB [1]**
2/7
**1:24-cv-04041-HB [1]**
2/12

**1:24-cv-04045-HB [1]**
2/16
**1:24-cv-04073-HB [1]**
2/21
**1:24-cv-04075-HB [1]**
3/3
**1:24-cv-04077-HB [1]**
3/8
**1:24-cv-04080-HB [1]**
3/12
**1:24-cv-04095-HB [1]**
3/17
**1:24-cv-04096-HB [1]**
3/22
**1:24-cv-04098-HB [1]**
4/3
**1:24-cv-04103-HB [1]**
4/8
**1:24-cv-04104-HB [1]**
4/12
**1:24-cv-04105-HB [1]**
4/17
**1:24-cv-04106-HB [1]**
4/21
**1:24-cv-04107-HB [1]**
5/3
**1:24-cv-04110-HB [1]**
5/8
**1:24-cv-04111-HB [1]**
5/12
**1:24-cv-04112-HB [1]**
5/17
**1:24-cv-04113-HB [1]**
5/22
**1:24-cv-04114-HB [1]**
6/3
**1:24-cv-04141-HB [1]**
6/7
**1:24-cv-04143-HB [1]**
6/12
**1:24-cv-04160-HB [1]**
6/16
**1:24-cv-04168-HB [1]**
6/21
**1:24-cv-04171-HB [1]**
7/3
**1:24-cv-04174-HB [1]**
7/8
**1:24-cv-04175-HB [1]**
7/12
**1:24-cv-04176-HB [1]**
7/17
**1:24-cv-04178-HB [1]**
7/21
**1:24-cv-04181-HB [1]**
8/3
**1:24-cv-04182-HB [1]**
8/7
**1:24-cv-04184-HB [1]**
8/12
**1:24-cv-04217-HB [1]**
8/16
**1:24-cv-04227-HB [1]**
8/21
**1:24-cv-04230-HB [1]**
9/3
**1:24-cv-04233-HB [1]**
9/7

**1:24-cv-04256-HB [1]**
9/12
**1:24-cv-04261-HB [1]**
9/17
**1:24-cv-04269-HB [1]**
9/21
**1:24-cv-04271-HB [1]**
10/3
**1:24-cv-04288-HB [1]**
10/7
**1:24-cv-04292-HB [1]**
10/12
**1:24-cv-04298-HB [1]**
10/16
**1:24-cv-04299-HB [1]**
10/21
**1:24-cv-04324-HB [1]**
11/3
**1:24-cv-04345-HB [1]**
11/7
**1:24-cv-04354-HB [1]**
11/12
**1:24-cv-04380-HB [1]**
11/16
**1:24-cv-04383-HB [1]**
11/21
**1:24-cv-04385-HB [1]**
12/3
**1:24-cv-04389-HB [1]**
12/7
**1:24-cv-04390-HB [1]**
12/12
**1:24-cv-04392-HB [1]**
12/17
**1:24-cv-04434-HB [1]**
12/21
**1:24-cv-04442-HB [1]**
13/3
**1:24-cv-04447-HB [1]**
13/7
**1:24-cv-04566-HB [1]**
13/12
**1:24-cv-04571-HB [1]**
13/17
**1:24-cv-04609-HB [1]**
13/21
**1:24-cv-04664-HB [1]**
14/3
**1:24-cv-04696-HB [1]**
14/7
**1:24-cv-04770-HB [1]**
14/12
**1:24-cv-04850-HB [1]**
14/16
**1:24-cv-04949-HB [1]**
14/21
**1:24-cv-05334-HB [1]**
15/3
**1:24-cv-05600-HB [1]**
15/8
**1:24-cv-05656-HB [1]**
15/12
**1:24-cv-05658-HB [1]**
15/17
**1:24-cv-05775-HB [1]**
15/21

**2**
**20 [1]** 104/2
**20 days [1]** 88/23
**20,000 [1]** 80/2
**201 [1]** 16/9
**2023 [22]** 22/14 22/18
31/24 32/6 32/7 32/14
32/20 34/10 34/23 35/4
41/3 41/10 43/7 49/20
51/4 51/14 61/10 62/14
68/22 70/18 84/16 93/25
**2024 [5]** 1/14 33/16 35/4
41/10 108/13
**21 [1]** 88/24
**21st [1]** 96/9
**222 [1]** 16/21
**24th of [3]** 94/18 95/3
95/9
**25 [1]** 102/16
**28 [1]** 57/2
**28 U.S.C [2]** 53/11 53/14
**2800 [1]** 17/13
**28202 [1]** 18/3
**2a [1]** 35/2
**2nd [1]** 31/2

**3**
**30 [41]** 16/3 21/13 21/15
21/20 21/25 24/1 24/3
25/25 26/16 28/18 41/22
41/23 50/2 51/18 51/22
55/24 61/4 63/7 63/23
64/3 65/2 66/5 67/13
72/22 73/23 74/7 76/13
77/19 79/22 83/10 88/7
94/20 94/25 95/5 95/12
96/16 97/3 97/5 105/8
105/22 106/10
**30-plus [1]** 37/13
**300 [1]** 17/19
**301 [1]** 16/16
**30th [2]** 96/18 97/6
**30th of [1]** 96/22
**31st [6]** 88/15 88/18
95/18 96/6 96/8 96/9
**32nd [1]** 17/3
**330 [1]** 17/13
**33602 [1]** 16/9
**34 [7]** 19/18 24/7 24/18
26/24 30/9 85/18 96/15
**35 [1]** 36/23
**35,000 [1]** 36/6
**390 [1]** 17/10

**4**
**40 [3]** 105/15 106/9
106/21
**40,000 [3]** 36/6 36/15
36/23
**400 [1]** 16/16
**41st [1]** 16/6
**44 [1]** 16/6
**4th [1]** 1/13

**5**
**50 [1]** 45/17
**576-7094 [1]** 1/22

**6**

**60601** [1]  16/21
**60611** [1]  17/14
**620** [2]  17/3 18/3
**6SENSE** [1]  4/14

**7**

**70** [1]  72/15
**70-something** [1]  106/21
**7094** [1]  1/22
**7th** [3]  16/9 96/2 96/4

**8**

**800** [1]  18/3
**856** [1]  1/22

**9**

**94104** [1]  16/6
**9:57** [1]  1/14
**9:57 a.m. as** [1]  19/3

**A**

**a.m** [4]  1/14 74/4 74/4 108/6
**a.m.** [1]  19/3
**ability** [3]  42/12 78/12 78/20
**able** [9]  25/18 50/15 52/15 61/7 67/13 71/13 78/1 94/15 106/8
**above** [2]  74/15 108/10
**above-entitled** [1]  108/10
**absence** [1]  53/23
**absolutely** [4]  26/3 82/2 82/3 94/16
**accept** [1]  79/17
**accommodate** [1]  106/12
**accompany** [1]  42/6
**accomplished** [1]  65/1
**according** [2]  24/15 58/10
**ACCURATE** [1]  7/23
**ACCUZIP** [1]  11/22
**acknowledge** [2]  73/2 104/9
**acknowledged** [2]  61/2 71/3
**ACLU** [1]  89/9
**acting** [1]  70/24
**action** [73]  1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 48/8
**actions** [1]  74/23

**activity** [2]  29/21 46/12
**actual** [6]  62/8 71/11 79/5 80/9 87/8 97/18
**actually** [10]  27/6 28/3 36/4 38/19 91/2 91/6 96/3 98/2 103/6 105/3
**ACXIOM** [2]  5/4 16/17
**Ad** [1]  17/20
**ADAM** [3]  16/2 20/12 72/2
**ADAMS** [1]  18/2
**add** [5]  27/1 30/15 39/3 78/8 83/16
**added** [1]  23/23
**addition** [3]  31/6 58/23 59/2
**additional** [9]  28/22 39/3 39/21 39/22 51/7 54/9 77/20 77/21 77/23
**address** [8]  36/20 39/13 55/3 56/14 56/18 85/2 88/22 99/23
**addresses** [1]  99/24
**adds** [2]  54/1 54/9
**adequately** [1]  103/24
**admit** [1]  22/2
**admitted** [2]  91/12 91/13
**advantage** [1]  20/6
**advising** [1]  29/5
**after** [15]  23/15 24/3 26/11 33/16 51/4 62/15 87/18 87/19 88/7 88/23 89/18 95/13 95/15 95/17 95/17
**afterwards** [1]  33/25
**again** [22]  28/7 35/6 41/20 42/9 44/15 51/14 52/3 55/20 60/23 62/23 63/6 64/1 64/21 65/1 71/9 73/5 79/10 82/16 84/13 86/12 93/2 104/6
**against** [1]  54/7
**ago** [4]  98/20 99/5 99/13 102/8
**agree** [4]  27/11 27/24 54/22 82/17
**agreeable** [1]  86/7
**agreement** [2]  65/19 69/13
**agreements** [1]  63/25
**ahead** [16]  25/21 27/5 32/18 52/1 57/23 66/2 72/2 77/22 78/24 79/8 80/14 80/18 83/22 86/19 102/10 107/25
**aided** [1]  1/23
**al** [139]
**Albany** [1]  16/3
**ALESCO** [1]  15/14
**all** [125]
**alleged** [1]  36/4
**ALLIANCE** [1]  4/4
**allocation** [1]  80/24
**allow** [4]  43/2 49/8 49/16 62/3
**allowed** [5]  44/18 44/19 62/5 82/10 84/9

**allows** [1]  46/7
**along** [2]  30/20 89/14
**already** [5]  23/11 77/12 80/7 80/9 90/18
**also** [18]  18/5 19/12 27/21 32/2 37/24 37/25 40/21 53/25 54/1 55/16 62/13 69/16 69/24 86/17 97/8 100/17 103/25 106/13
**although** [1]  89/11
**always** [3]  25/13 55/25 92/24
**am** [3]  27/14 85/24 96/1
**amass** [1]  91/21
**amenable** [1]  107/17
**amend** [1]  40/1
**amended** [6]  33/11 33/16 34/7 35/9 39/24 104/4
**amending** [1]  35/6
**amendment** [3]  59/23 59/24 89/15
**AMERICA** [2]  11/4 17/16
**AMERICAN** [1]  15/4
**AMERILIST** [1]  15/23
**amicus** [13]  86/21 87/9 87/10 87/23 88/17 88/20 88/25 89/6 90/6 90/6 90/14 90/15 97/9
**among** [1]  106/6
**amongst** [1]  93/20
**amount** [4]  20/25 21/9 29/15 62/9
**analog** [1]  104/2
**analogy** [1]  53/14
**analysis** [4]  30/1 30/17 34/15 99/2
**ANGELO** [3]  16/15 79/12 79/12
**another** [5]  63/12 79/20 90/2 90/25 94/6
**answer** [4]  45/10 48/25 61/8 64/2 67/4 71/22 72/3
**anticipate** [1]  107/12
**any** [52]  22/24 23/18 23/20 24/11 24/18 24/19 25/15 26/10 28/9 33/2 33/11 39/11 39/23 39/24 46/14 46/15 47/17 47/25 48/9 48/14 52/13 52/17 54/12 57/17 57/24 60/12 61/4 62/19 63/16 64/14 66/20 68/17 70/23 71/18 71/19 71/24 72/4 77/20 78/2 78/6 78/12 80/8 80/25 81/9 85/5 89/17 94/24 102/16 102/20 103/22 105/22 106/5
**anybody** [5]  26/21 27/1 94/23 94/24 107/15
**anymore** [1]  57/3
**anyone** [3]  25/4 26/20 87/6
**anything** [16]  25/11 26/21 27/1 40/18 58/16 60/5 60/6 69/10 70/24

**78/10 81/23 86/7 94/23 97/11 101/24 107/21
**anyway** [1]  51/19
**Apartment** [1]  17/23
**appear** [1]  90/14
**appearance** [1]  67/19
**appearances** [4]  16/24 17/25 18/8 67/16
**appellate** [1]  87/20
**APPEND** [1]  7/23
**application** [1]  86/16
**applied** [1]  89/11
**approach** [1]  93/10
**appropriate** [2]  35/19 38/23
**April** [10]  22/14 22/18 23/1 32/7 41/3 43/7 49/20 61/10 68/22 70/18
**April 5** [3]  32/7 41/3 68/22
**April 5th saying** [1]  23/1
**are** [138]
**area** [1]  82/16
**aren't** [3]  42/15 81/12 85/23
**argue** [2]  40/9 66/3
**arguing** [3]  21/17 53/17 53/18
**argument** [2]  28/22 100/6
**arguments** [3]  40/15 104/1 104/7
**arrangement** [2]  54/6 65/6
**arrangements** [1]  52/22
**articulated** [2]  91/2 91/7
**as-applied** [1]  89/11
**ask** [24]  24/9 25/20 26/16 41/22 50/2 51/18 51/19 51/22 55/6 55/23 57/4 57/22 61/4 61/7 63/7 63/23 66/4 67/12 71/7 76/12 77/25 78/1 81/25 105/12
**asked** [4]  21/2 38/20 63/24 94/21
**asking** [14]  23/9 25/6 47/13 47/14 47/15 51/17 65/1 66/15 68/7 68/9 77/10 85/18 86/3 101/14
**asks** [1]  25/25
**asserted** [1]  74/23
**assertion** [1]  26/2
**assign** [5]  46/9 48/5 48/16 60/24 79/13
**assigned** [4]  45/21 54/2 72/23 72/24
**assignee** [8]  44/13 53/24 54/2 54/7 54/13 63/15 69/10 81/9
**assignee's** [1]  54/3
**assignees** [1]  83/6
**assigning** [1]  81/20
**assignment** [31]  20/18 21/9 21/10 21/11 34/4 35/15 37/23 44/3 44/4 44/19 44/21 45/4 45/9

**47/25 48/1 49/3 49/5 49/6 54/4 54/5 54/12 59/8 59/10 62/16 67/3 70/12 79/18 79/23 81/17 100/25 104/5
**assignments** [31]  21/7 21/8 22/19 26/13 37/20 43/7 45/8 45/13 51/10 51/11 52/16 56/12 60/21 61/10 62/5 62/8 62/14 63/15 65/23 69/15 71/2 74/24 76/4 76/7 76/9 76/10 76/10 76/11 77/9 83/15 100/18
**assignor** [11]  44/13 46/7 54/2 65/18 65/22 69/6 69/10 73/7 73/9 78/12 80/8
**assignor's** [1]  81/21
**assignors** [30]  35/25 36/8 36/11 43/3 52/13 63/11 66/11 66/19 67/6 68/8 68/9 68/17 68/25 69/14 69/24 70/8 71/18 71/25 72/4 72/11 72/12 72/14 72/14 76/8 76/24 78/3 81/2 81/10 83/7 86/15
**associated** [1]  80/20
**associations** [1]  67/11
**assume** [6]  30/25 42/5 45/21 82/12 87/5 102/20
**assumption** [1]  21/1
**ATDATA** [2]  13/9 16/17
**ATLAS** [135]
**Atlas'** [7]  47/18 53/8 68/16 68/21 74/22 78/11 98/18
**attach** [1]  90/14
**attached** [1]  87/9
**Attachment** [1]  18/8
**attorney** [1]  54/3
**attorneys** [8]  26/1 52/8 52/11 54/9 66/18 105/19 106/7 106/13
**August** [5]  96/2 96/4 96/9 96/18 96/22
**August 30th** [1]  96/18
**August 7th** [2]  96/2 96/4
**Avenue** [3]  17/3 17/10 17/13
**avoid** [2]  46/10 50/19
**award** [1]  80/25
**aware** [3]  26/10 91/7 103/4
**AXLE** [1]  8/4

**B**

**back** [17]  27/13 28/8 31/23 32/6 32/9 34/4 41/2 41/20 43/6 51/13 61/21 68/22 72/4 79/7 91/14 93/24 94/4
**ball** [1]  71/5
**BARTLE** [2]  1/16 19/2
**base** [1]  56/1
**based** [12]  27/17 38/14 38/19 38/25 39/4 41/7

**B**

**based... [6]** 50/9 71/10 86/22 93/15 99/2 102/7
**basic [2]** 48/12 48/13
**basis [14]** 21/2 21/3 22/11 25/8 29/12 57/2 57/15 71/12 85/20 92/18 93/12 93/13 103/5 103/8
**BATON [1]** 17/22
**because [44]** 19/19 21/17 23/17 26/4 27/7 27/14 28/7 30/16 33/23 34/12 34/14 36/18 37/15 38/21 41/25 43/21 44/7 44/20 46/12 50/14 50/22 50/24 53/17 53/25 55/1 60/5 61/12 68/19 75/1 77/23 82/7 82/18 84/20 90/6 92/16 92/21 92/25 93/2 95/7 100/17 101/16 102/12 103/2 103/3
**become [1]** 105/4
**becomes [1]** 84/20
**been [12]** 19/13 24/5 33/3 34/7 39/4 83/21 85/6 90/25 92/22 94/24 98/24 107/13
**before [17]** 19/1 19/13 22/11 25/9 29/2 33/22 34/7 50/12 50/23 70/7 72/18 73/24 89/24 95/18 96/6 96/20 104/8
**begin [1]** 74/10
**behalf [4]** 29/1 38/10 48/9 104/19
**behind [1]** 45/7
**being [21]** 20/1 20/2 24/12 27/12 27/13 30/3 44/1 50/19 61/8 64/7 65/7 73/15 74/23 79/6 81/4 82/7 83/25 84/4 86/7 92/17 92/18
**belief [1]** 33/9
**believe [13]** 30/18 34/7 35/11 35/13 36/3 63/4 63/16 65/15 67/3 88/7 90/13 97/21 97/21
**believes [1]** 23/9
**BELLES [1]** 14/22
**belonging [1]** 49/9
**BERNSTEIN [1]** 18/2
**best [2]** 59/2 101/8
**Better [1]** 87/12
**between [11]** 21/10 41/6 42/5 54/25 55/8 55/13 59/5 65/6 66/17 68/21 93/22
**beyond [9]** 40/12 40/16 44/19 45/11 61/1 70/25 82/19 82/20 90/3
**BIDDLE [1]** 17/18
**biggest [1]** 85/15
**bill [1]** 59/23
**bit [8]** 21/22 32/23 47/24 54/10 54/11 75/4 87/22 102/13
**BLACK [6]** 9/9 17/8 17/8

38/10 99/20 100/14
**Black Knight [1]** 100/14
**BLACKBAUD [3]** 1/5 18/4 102/6
**BLAINE [4]** 16/20 27/3 52/2 86/12
**blanche [1]** 47/12
**blocks [1]** 37/14
**blown [3]** 29/14 30/11 54/22
**board [1]** 37/3
**BOIES [4]** 16/2 16/5 68/3 72/3
**Boland [1]** 16/12
**bombardment [1]** 39/21
**both [2]** 60/18 66/5
**Boulevard [1]** 17/23
**bounds [1]** 47/6
**breadth [2]** 51/1 93/1
**break [1]** 73/25
**bridge [1]** 53/24
**brief [16]** 86/25 87/9 87/15 88/10 88/23 90/4 90/6 90/11 90/15 96/10 96/21 97/2 102/17 103/21 103/23 104/21
**briefing [14]** 19/12 24/4 28/19 87/11 87/24 88/5 96/7 102/9 102/12 102/23 103/1 103/9 103/14 104/11
**briefly [1]** 91/11
**briefs [8]** 86/21 87/10 88/6 88/25 89/6 90/19 96/23 96/23
**bring [1]** 48/8
**broad [3]** 22/10 49/25 84/8
**broader [4]** 47/24 58/16 75/4 93/7
**broker [1]** 55/14
**brought [2]** 79/6 80/9
**Building [1]** 1/12
**burden [3]** 20/22 67/12 92/20
**burdensome [5]** 22/1 45/17 61/23 86/15 101/15
**business [2]** 51/7 54/12
**buttons [1]** 69/22

**C**

**CAFA [18]** 46/6 46/10 46/15 47/23 51/22 57/6 57/7 57/18 57/25 60/9 102/14 103/5 103/8 103/12 103/15 103/16 103/16 104/1
**California [2]** 16/6 92/3
**called [1]** 99/8
**calls [1]** 56/22
**Camden [1]** 1/13
**came [2]** 28/8 47/20
**CAMP [1]** 14/22
**can [47]** 19/25 23/22 24/9 26/17 28/21 28/22 28/23 30/5 32/17 32/25 33/11 38/14 42/1 43/2 44/10

46/9 46/10 50/3 51/18 56/1 57/22 58/19 58/20 61/20 69/18 69/19 72/7 75/25 79/7 80/13 81/25 84/17 85/14 86/17 90/18 90/19 91/16 93/20 94/1 94/13 94/16 94/17 100/8 100/21 105/18 106/5 107/10
**can't [7]** 44/9 50/9 50/13 64/12 93/5 101/9 105/14
**capacity [1]** 63/13
**CAPTION [14]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25
**CARCO [2]** 3/9 16/17
**care [1]** 82/8
**carefully [1]** 97/20 98/22
**Carnegie [1]** 16/16
**Carolina [1]** 18/3
**carries [1]** 32/1
**carrying [1]** 94/24
**cart [1]** 50/12
**carte [1]** 47/12
**carve [1]** 63/16
**carve-out [1]** 63/16
**case [38]** 23/11 27/25 33/3 33/5 33/23 34/2 34/8 34/14 44/8 46/9 46/23 46/24 48/22 55/13 59/23 60/17 61/1 62/6 62/7 62/8 63/11 64/22 65/10 65/11 65/16 65/18 67/22 68/4 68/20 68/20 70/11 72/14 73/6 73/12 91/24 92/7 100/12 101/1
**Case No [1]** 65/18
**cases [28]** 22/5 23/11 29/19 29/22 33/8 33/22 45/3 45/11 50/15 52/8 65/12 67/16 67/21 71/12 72/15 72/17 72/22 72/23 72/24 73/4 85/10 91/16 93/3 95/24
**cast [1]** 53/9
**categories [6]** 29/3 29/13 74/14 93/1 94/10 94/15
**categorization [2]** 37/25 100/19
**category [4]** 25/7 29/6 34/13 93/15
**caught [1]** 98/25
**Center [2]** 16/16 17/6
**centers [1]** 19/11
**central [2]** 91/12 103/14
**cert [1]** 89/10
**certain [6]** 23/25 24/16 26/23 52/17 64/4 78/1
**certainly [3]** 58/16 67/15 81/21
**certainty [1]** 19/25
**CERTIFICATE [1]** 108/7
**certify [1]** 108/9
**cetera [2]** 30/14 51/24

**challenge [5]** 40/20 86/23 89/11 96/21 101/19
**changed [3]** 34/3 74/17 74/22
**characterizing [1]** 52/5
**Charlotte [1]** 18/3
**chart [2]** 35/18 37/22
**check [1]** 69/21
**checked [1]** 100/4
**CHEIFETZ [2]** 17/10 104/18
**Chicago [2]** 16/21 17/14
**choice [1]** 51/5
**choose [2]** 100/8 100/21
**CHOREOGRAPH [1]** 10/4
**CHRISTIE [6]** 17/6 35/14 35/22 38/4 38/9 58/6
**Christmas [2]** 32/5 61/11
**CHUDEREWICZ [1]** 16/15
**circuit [1]** 34/6
**circumstance [3]** 73/3 103/5 103/6
**circumstances [13]** 22/6 43/25 44/3 44/6 45/1 46/25 47/1 47/11 49/24 60/23 79/10 103/2 103/3
**circumvent [1]** 27/16
**cited [1]** 44/18
**citizenship [1]** 54/7
**Citrus [1]** 17/20
**CIVIL [74]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 85/17
**claim [5]** 48/6 48/16 70/23 72/24 101/1
**claiming [4]** 20/3 20/4 25/11 25/19
**claims [5]** 59/8 59/10 60/17 60/24 79/13
**clarify [2]** 27/21 105/9
**CLARITAS [1]** 7/14
**class [1]** 46/7
**clear [8]** 40/10 40/17 47/5 73/18 91/3 105/4 106/4 106/15
**Clerk [1]** 18/7
**click [2]** 69/22 70/17
**client [5]** 30/17 36/19 99/22 102/13 103/18
**client's [3]** 36/5 105/1

105/5
**clients [4]** 59/19 68/14 93/20 99/15
**close [1]** 75/1
**closely [1]** 107/13
**closer [1]** 84/19
**CO [2]** 14/18 17/11
**Cohen [1]** 1/12
**colleague [1]** 56/13
**colleagues [1]** 95/4
**collective [1]** 64/9
**College [1]** 17/19
**Colligan [1]** 22/25
**COLLINS [1]** 17/13
**colluded [2]** 20/22 50/17
**collusion [8]** 21/4 22/6 22/12 33/25 57/1 57/13 103/10 103/15
**collusive [7]** 50/16 53/10 53/17 60/3 65/23 102/14 103/19
**collusiveness [2]** 51/16 52/6
**come [6]** 22/15 50/16 61/18 61/20 61/20 99/7
**comes [1]** 60/17
**coming [3]** 19/10 25/24 32/22
**Commencing [1]** 1/14
**comments [1]** 94/25
**COMMERCE [1]** 6/18
**COMMERCIAL [1]** 2/22
**committee [2]** 89/13 107/7
**common [7]** 48/19 49/11 63/4 63/16 64/2 64/23 66/11
**communicate [2]** 78/12 78/20
**communicating [1]** 41/3
**communication [2]** 55/8 56/14
**communications [42]** 14/22 22/9 22/21 22/25 30/18 41/2 41/2 41/19 41/21 42/4 42/6 42/8 42/11 42/15 42/18 43/5 44/24 46/8 47/14 47/17 50/25 51/13 51/24 55/7 55/12 55/19 56/12 57/16 57/24 59/5 61/6 67/11 76/11 77/9 77/10 78/25 80/2 80/8 80/15 84/8 93/6 93/18
**companies [2]** 51/5 104/19
**company [1]** 45/13
**compared [1]** 98/23
**comparison [1]** 38/15
**compensation [1]** 62/10
**complaint [9]** 33/24 34/17 34/20 34/21 34/23 36/7 39/17 78/20 99/23
**complaints [2]** 36/5 39/24
**compliance [2]** 61/13

**C**

compliance... [1] 100/8
complied [1] 51/5
comply [4] 37/7 51/6 100/10 101/6
component [1] 81/6
computer [2] 1/23 101/6
computer-aided [1] 1/23
concept [1] 50/16
concern [3] 38/19 84/6 84/12
concerned [2] 27/14 43/9
concerning [2] 59/7 60/14
concluded [1] 108/6
conclusion [1] 99/7
confer [5] 93/14 94/4 99/18 101/9 106/6
conference [6] 1/5 19/11 20/17 31/21 70/12 94/7
conferences [1] 37/2
confers [1] 28/4
confines [1] 82/15
confirm [1] 58/12
confirmation [2] 35/16 79/18
confirmations [1] 62/16
conflict [1] 69/21
consent [1] 68/15
consider [2] 90/20 102/9
consideration [1] 54/13
considered [4] 53/5 53/18 54/5 54/8
considering [2] 102/16 104/8
consistent [1] 83/21
consolidated [5] 86/22 96/21 103/1 103/9 103/21
constitutional [4] 86/23 101/19 102/23 104/11
constrained [1] 32/9
construes [1] 30/21
contact [1] 55/18
contains [1] 97/20
contemplate [1] 48/16
context [4] 20/21 20/22 62/4 62/5
contexts [1] 67/2
contingent [2] 52/22 54/5
continue [1] 35/12
continued [18] 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 16/24 17/1 17/25 18/1
contract [11] 22/24 41/12 44/9 44/10 44/12 47/21 61/1 61/1 62/1 62/10 79/15
contracts [10] 41/6 41/20 42/4 42/6 52/16 52/21 56/4 57/24 60/21 65/5
contrast [1] 83/4
control [8] 60/16 60/18 60/21 61/17 64/24 64/25 79/19 81/14
controlling [1] 54/3

controls [2] 61/14 62/9
conventions [1] 32/7
Conversant [1] 17/20
conversation [1] 93/21
conversations [1] 51/21
conversed [1] 38/18
Cooper [1] 1/13
coordinate [1] 96/15
copies [1] 35/15
CORELOGIC [2] 9/4 16/18
CORP [3] 10/13 14/13 17/16
corporate [2] 50/18 76/22
corporation [79] 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/14 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/18 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 9/23 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/5 15/7 15/11 15/16 15/20 16/17 17/15 46/10
correct [39] 24/19 25/1 40/22 41/8 48/6 48/7 52/16 59/14 62/14 63/18 64/8 64/9 65/8 65/9 65/9 67/16 68/1 69/2 69/4 69/9 69/15 71/18 72/5 72/18 72/19 73/8 73/11 73/14 73/17 81/18 81/24 87/14 94/19 97/25 98/17 103/7 103/25 106/18 108/9
corridor [2] 40/13 40/16
Cosma [1] 18/7
COSTAR [3] 5/14 17/14 17/14
costs [1] 81/23
could [26] 20/6 20/19 21/9 21/14 37/9 45/21 48/5 48/8 54/5 54/25 61/17 61/20 63/7 65/1 65/4 66/1 66/4 67/12 76/12 77/25 87/21 89/4 104/9 105/19 106/12 107/1
counsel [36] 18/8 23/12 27/15 40/7 44/5 54/3 55/22 56/23 60/5 63/3 63/4 63/16 63/23 64/2 64/23 64/23 66/12 66/14 66/20 66/24 68/16 68/21 69/16 69/17 81/22 86/14 91/11 91/13 93/20 93/22 94/4 95/25 99/17 100/7 106/25 107/1
couple [6] 38/12 84/11

86/18 89/17 89/18 105/19
course [8] 45/7 82/25 82/25 83/2 85/21 92/23 94/1 100/6
court [39] 1/1 1/21 19/1 20/24 20/25 22/15 23/14 23/19 26/22 27/7 32/10 44/22 45/4 46/13 50/15 50/20 50/23 59/9 61/18 61/18 70/7 70/10 70/15 70/25 71/12 74/19 83/20 85/19 85/21 87/20 88/20 89/11 91/19 97/17 102/15 106/7 107/17 108/7 108/14
Court's [2] 74/18 83/12
courtesy [1] 37/9
courthouse [2] 1/12 70/21
courtroom [4] 18/6 70/7 70/22 94/22
courts [1] 20/8
cover [1] 97/23
covered [16] 36/7 38/13 38/20 38/25 39/4 39/5 91/5 97/19 98/2 98/10 98/18 99/9 99/19 99/22 105/1 105/6
covers [1] 77/19
crafted [1] 82/19
CRC [1] 108/13
create [3] 23/2 29/24 61/12
creating [1] 49/22
CRR [1] 108/13
crunched [1] 38/14
custodians [1] 30/13
customers [1] 78/18
cv [72] 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21

**D**

Daniel's [12] 37/7 42/14 46/4 51/6 59/20 59/24 60/14 69/20 74/23 76/23 91/1 91/16
dastardly [1] 52/6
data [84] 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 6/22

7/2 7/4 7/7 7/11 7/16 7/18 7/20 8/2 8/4 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/13 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/13 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 17/20 38/20 39/1 55/14 98/19
databases [1] 45/17
date [8] 31/23 32/22 34/16 37/23 39/16 90/10 100/18 104/5
dates [2] 37/19 96/24
dating [1] 32/6
DAVID [2] 17/10 104/18
day [5] 41/18 59/18 78/17 87/21 96/22
days [8] 51/7 88/7 88/23 90/3 90/10 96/16 97/3 97/5
deadline [4] 28/17 87/9 87/24 96/8
deal [11] 23/25 32/15 39/10 39/11 40/1 40/2 81/17 89/16 94/7 101/9 101/9
dealing [3] 35/1 58/17 101/17
deals [2] 28/13 103/21
dealt [2] 80/10 103/24
December [3] 30/4 51/3 84/16
December 1 [1] 84/16
decided [2] 19/17 83/21
decides [1] 59/22
deciding [1] 46/23
decision [1] 102/10
defeat [1] 46/13
defeating [1] 44/22
defendant [13] 17/11 18/4 36/17 37/1 54/7 85/7 99/20 100/17 102/16 103/8 104/6 106/5 106/16
defendants [116]
defense [8] 28/9 29/13 91/12 95/7 95/25 96/12 107/1 107/23
defenses [1] 77/24
defined [1] 31/13
definition [3] 32/1 34/16 57/13
Delaware [4] 46/10 50/18 53/8 55/9
delay [2] 23/10 43/11
delayed [1] 94/8
delivered [2] 55/17 55/17
DELUXE [2] 3/14 16/17
DELVEPOINT [1] 3/23
delves [1] 81/3
depending [2] 65/10 94/6
depends [1] 24/24
deposition [13] 24/3

25/10 25/25 28/18 51/23 95/5 95/12 95/13 105/18 105/11 105/20 106/25 107/4
depositions [3] 24/1 74/8 100/3
Deputy [1] 18/6
designation [1] 84/5
designed [1] 81/4
designee [1] 76/22
desire [1] 29/13
details [3] 40/8 62/7 62/20
determine [5] 21/9 44/6 44/20 47/9 47/10
determined [3] 45/12 45/20 48/4
determining [1] 21/3
developed [2] 33/3 33/7
did [10] 28/8 44/20 96/20 96/25 98/12 99/4 99/12 101/6 101/6 103/18
didn't [10] 25/22 26/9 27/23 27/23 37/15 48/16 51/8 71/11 82/17 102/19
different [5] 37/2 37/3 37/4 51/1 68/2
different entity [1] 37/4
differently [1] 54/11
difficult [4] 44/25 66/3 69/22 86/10
DIGITAL [2] 6/9 14/13
direction [1] 20/16
directive [1] 40/10
directly [5] 60/17 61/22 67/4 68/22 81/13
disagreed [1] 60/4
disclose [1] 68/15
disclosing [2] 24/6 98/16
discover [1] 51/23
discoverable [1] 42/15
discovery [27] 19/11 19/14 23/20 24/18 24/24 26/22 28/14 38/23 39/14 44/19 46/18 47/4 47/5 47/6 47/12 47/14 52/9 54/21 54/22 57/7 61/6 82/21 82/22 85/22 99/19 100/2 100/23
discuss [2] 59/2 102/19
discussed [2] 46/15
discussing [1] 91/17
discussion [8] 23/15 47/25 51/25 79/21 82/5 97/15 102/18 104/9
discussions [2] 51/20 60/12
dismiss [2] 86/22 100/25
dispositive [1] 53/2
disproportional [1] 61/23
dispute [2] 23/20 76/6
disputed [1] 19/15
disregard [1] 53/8
distinction [3] 41/19 72/20 73/15
DISTRICT [4] 1/1 1/1

**D**

**DISTRICT... [2]** 1/16 19/2

**diversity [3]** 53/9 53/19 54/8

**DM [2]** 3/4 16/17

**docket [1]** 18/8

**document [19]** 21/24 22/4 22/8 25/15 33/10 33/14 43/6 46/15 50/1 66/4 73/21 77/11 77/13 77/24 79/11 80/10 84/18 92/13 93/17

**documentation [2]** 60/12 66/14

**documents [61]** 20/1 20/1 20/2 20/3 21/12 22/18 22/23 23/24 24/3 24/12 24/12 24/14 24/17 24/19 24/20 24/21 25/6 25/8 25/10 25/14 26/5 26/9 26/11 26/13 26/23 27/16 27/17 28/16 29/6 29/12 30/14 31/1 42/18 44/5 45/22 50/3 51/24 56/1 56/3 59/4 60/16 61/4 62/24 63/3 66/10 67/13 74/14 74/18 77/25 80/7 82/7 83/12 84/4 85/19 85/22 85/23 93/22 94/10 94/14 95/2 95/4

**does [13]** 34/1 39/6 39/8 43/13 43/18 43/19 44/14 46/12 61/19 74/25 76/2 81/18 95/13

**doesn't [5]** 27/13 44/13 45/10 47/12 60/6

**dog [1]** 46/18

**doing [4]** 39/2 41/16 48/20 100/2

**done [5]** 30/8 37/8 94/16 94/17 101/5

**door [1]** 77/11

**double [1]** 20/25

**down [11]** 22/17 25/9 30/21 31/18 39/1 39/3 43/10 43/11 49/19 82/10 104/25

**drafted [3]** 27/15 44/5 81/6

**drafting [1]** 27/15

**draw [2]** 41/19 72/20

**drawn [1]** 54/17

**DRINKER [1]** 17/18

**Drive [1]** 16/12

**driving [1]** 79/16

**due [8]** 36/14 61/9 86/25 87/1 87/12 88/10 88/23 96/22

**duplicate [1]** 96/23

**during [5]** 31/15 31/21 37/2 77/23 78/13

**E**

**E-MERGES.COM [1]** 12/23

**each [6]** 36/5 36/17 37/1

**earlier [2]** 96/25 97/15

**early [2]** 29/19 29/21

**East [1]** 17/19

**easy [2]** 63/17 70/4

**EDPA [1]** 1/16

**effect [2]** 24/7 27/7

**effectuate [1]** 42/13

**efficient [4]** 21/5 27/9 41/21 55/23

**effort [1]** 63/20

**eight [2]** 63/10 105/21

**Eighth [1]** 17/3

**either [2]** 78/22 90/23

**Electronic [1]** 89/12

**eliminate [1]** 75/13

**else [17]** 25/4 26/20 26/21 40/18 58/16 62/22 69/11 78/10 81/23 89/14 92/1 92/8 94/23 97/11 101/20 101/24 107/21

**email [5]** 30/20 39/22 41/24 99/23 99/23

**emails [16]** 29/16 37/15 38/15 38/17 38/21 39/4 84/11 93/20 93/25 97/18 97/22 98/23 99/5 99/13 99/25 101/14

**employed [1]** 20/8

**end [7]** 24/22 30/19 39/19 41/18 59/17 78/17 95/24

**enforce [3]** 43/2 49/8 84/23

**enforcement [13]** 38/1 41/7 45/14 45/16 45/23 48/5 48/10 48/17 48/21 67/6 78/18 91/25 100/20

**ENFORMION [2]** 5/9 16/18

**engage [3]** 21/16 100/2 100/5

**engagement [18]** 63/5 63/24 64/15 64/17 64/17 64/24 65/15 65/18 66/15 66/21 67/5 67/9 67/10 68/17 68/21 69/17 92/11 92/11

**ENGLISH [1]** 17/5

**enough [1]** 101/18

**enter [7]** 23/23 26/22 28/16 83/20 88/14 90/20 97/8

**entered [5]** 23/14 44/21 67/16 67/19 107/24

**ENTERPRISES [1]** 12/9

**entire [1]** 46/7

**entities [4]** 86/20 87/8 89/14 89/15

**entitled [11]** 23/10 25/13 36/11 43/5 44/6 45/4 46/25 61/15 70/18 92/24 108/10

**entity [4]** 37/1 37/4 37/11 49/17

**entries [1]** 36/16

**entry [1]** 18/8

**EPSILON [2]** 6/22 17/20

**EQUIFAX [1]** 10/18

**EQUIMINE [1]** 9/18

**errant [1]** 30/20

**ESI [1]** 22/10

**especially [1]** 21/19

**ESQUIRE [14]** 16/2 16/5 16/8 16/11 16/15 16/15 16/20 17/2 17/6 17/10 17/13 17/18 17/22 18/2

**essence [1]** 39/2

**essential [1]** 53/4

**essentially [2]** 35/18 62/12

**ESTATE [1]** 2/22

**et [141]**

**Eve [2]** 32/6 32/6

**even [8]** 20/8 20/24 37/13 42/15 42/24 55/4 88/20 91/18

**event [1]** 62/19

**eventually [2]** 59/24 100/23

**every [12]** 34/13 35/15 37/1 47/16 54/24 55/8 65/11 68/4 73/6 99/20 103/8 106/16

**everyone [1]** 103/4

**everything [3]** 20/18 47/19 101/20

**evidence [1]** 44/16 62/1 62/11 100/24

**evidenced [3]** 69/14 69/16 69/17

**EWING [1]** 17/22

**exact [1]** 64/12

**exactly [2]** 24/6 92/2

**examinations [1]** 100/3

**examine [1]** 83/14

**examining [1]** 106/9

**example [9]** 29/7 29/18 30/4 42/24 55/12 56/3 58/17 68/12 102/13

**examples [1]** 66/9

**except [1]** 48/13

**exception [1]** 63/8

**exchange [2]** 2/22 62/7

**exchanges [1]** 41/24

**exclude [1]** 107/14

**excluding [2]** 26/5 26/7

**excuse [2]** 56/11 66/22

**exercising [1]** 25/17

**exhaustive [1]** 55/5

**exist [8]** 24/13 25/10 27/13 30/19 40/3 42/1 65/5 77/10

**expand [1]** 99/8

**expanded [1]** 41/1

**expediency [1]** 85/8

**expedite [1]** 23/14

**expedition [1]** 71/10

**expenses [1]** 80/20

**explanation [3]** 61/15 76/21 76/25

**explore [2]** 79/20 80/16

**expressed [1]** 86/21

**extend [1]** 104/12

**extent [6]** 32/24 39/20

**39/23 40/16 68/16 72/23**

**extra [2]** 37/24 63/24

**extraordinary [2]** 80/3 80/11

**F**

**facial [3]** 40/20 86/22 96/21

**facilitate [1]** 45/14

**facing [1]** 85/9

**fact [9]** 45/9 50/9 50/13 50/16 67/19 71/11 86/13 105/2 105/5

**factor [8]** 52/7 53/21 53/21 53/24 53/25 60/18 61/22 62/24

**factors [9]** 22/2 53/5 54/9 54/18 54/19 55/3 57/12 61/3 81/15

**facts [1]** 40/3

**factual [2]** 21/3 22/11

**factually [1]** 36/15

**FAEGRE [1]** 17/18

**fail [1]** 22/3

**faith [4]** 24/25 25/24 25/24 30/17

**family [2]** 38/2 100/20

**far [10]** 21/16 24/5 36/2 36/2 36/4 36/4 43/6 56/12 62/19 91/6

**fast [1]** 39/19

**feasible [2]** 93/15 93/15

**February [7]** 29/20 29/21 33/6 33/16 35/4 41/10 51/10

**February 4 [3]** 33/16 35/4 41/10

**federal [11]** 1/21 19/25 20/7 20/25 46/6 46/13 50/20 61/18 85/17 87/20 108/7

**fee [3]** 52/22 54/5 81/3

**feel [1]** 104/7

**fees [8]** 80/20 81/2 81/8 81/14 81/22 81/22 82/22 83/9

**few [2]** 51/1 69/22

**fiction [3]** 21/1 50/9 50/12

**figure [3]** 85/14 93/14 95/25

**file [17]** 23/7 24/18 87/6 87/10 87/13 88/17 90/4 90/5 90/5 90/12 90/13 91/19 92/1 92/3 92/7 92/8 103/22

**filed [17]** 19/18 29/19 33/4 33/5 33/23 33/24 34/2 34/8 34/14 34/16 34/19 34/21 34/23 39/16 51/12 89/10 91/16

**filing [5]** 29/22 86/21 89/6 91/18 91/24

**filter [1]** 100/4

**final [1]** 96/8

**finally [1]** 51/9

**FINANCIAL [2]** 12/14

**15/4**

**find [4]** 24/21 52/15 56/24 71/13

**finding [1]** 53/7

**fine [25]** 25/17 27/6 29/5 32/21 32/25 34/19 35/5 35/9 37/21 41/16 56/6 58/2 58/4 58/7 75/10 76/20 77/2 77/17 77/18 82/11 92/15 95/16 95/20 95/22 96/1

**fingerprints [1]** 68/20

**firm [7]** 64/8 65/8 65/11 65/11 65/16 68/3 71/17

**firms [12]** 59/19 63/12 64/9 65/10 67/5 67/9 67/15 68/2 68/5 69/18 69/23 71/19

**first [9]** 15/4 32/5 34/8 56/5 70/20 74/13 78/2 88/19 89/14

**fishing [1]** 71/10

**flag [1]** 55/1

**FLEXNER [2]** 16/2 16/5

**Floor [4]** 16/3 16/6 16/9 17/3

**Florida [1]** 16/9

**focus [2]** 22/1 40/20

**focuses [1]** 84/13

**folks [1]** 63/13

**follow [6]** 20/7 20/16 86/3 87/23 96/25 102/20

**followed [1]** 27/12

**follows [2]** 19/3 52/10

**footnote [1]** 28/4

**foregoing [1]** 108/9

**forensic [1]** 100/2

**forget [2]** 50/9 50/13

**form [3]** 19/14 21/23 26/22

**formal [4]** 27/6 92/14 92/16 92/16

**format [3]** 23/4 96/25 102/20

**forth [4]** 23/8 23/12 23/13 104/1

**FORTNOFF [1]** 12/14

**forward [1]** 35/12

**Foundation [1]** 89/12

**four [2]** 17/6 89/4

**fourth [2]** 53/21 59/24

**frame [4]** 30/6 84/19 93/1 93/2

**framework [2]** 42/9 42/19

**Francisco [1]** 16/6

**Franklin [1]** 16/9

**free [1]** 48/17

**Freedom [1]** 89/13

**front [4]** 33/10 59/1 75/8 88/2

**Frontier [1]** 89/12

**full [4]** 29/14 30/11 54/22 107/25

**full-blown [3]** 29/14 30/11 54/22

**FULTON [1]** 18/2

**F**

function [2]  101/4 101/5
fundamentally [1]  28/10
funding [1]  52/24
further [2]  18/8 94/25
fuss [1]  34/9

**G**

gain [1]  20/19
game [1]  30/19
gamesmanship [2]  21/24 25/23
Gateway [1]  17/6
gave [1]  99/13
general [1]  80/6
gets [6]  25/25 51/14 52/17 61/25 62/6 96/3
getting [11]  20/23 21/5 23/3 29/16 43/7 47/1 60/24 61/10 84/10 91/14 101/16
give [17]  20/18 21/12 21/13 22/22 22/24 22/24 23/13 26/10 26/18 32/25 37/21 44/4 56/6 61/4 66/9 68/12 95/21
given [5]  51/11 54/13 86/16 104/21 105/10
gives [1]  90/17
giving [3]  21/8 21/8 21/11
goes [18]  21/16 34/4 38/22 40/16 43/25 45/1 56/12 60/8 60/8 60/9 62/23 68/22 79/10 81/5 81/13 82/19 93/24 99/19
GOHUNT [1]  11/18
gone [5]  30/17 54/14 63/24 79/25 92/14
good [21]  19/5 19/6 19/7 19/8 19/9 19/22 19/23 20/12 20/14 24/24 25/24 25/24 30/17 45/12 54/11 55/12 102/1 102/2 104/16 104/17 107/21
got [11]  21/22 25/24 26/12 37/19 48/15 59/1 66/6 73/20 75/11 86/18 96/5
gotcha [1]  30/19
gotten [2]  42/17 99/1
Governor's [1]  59/25
grant [2]  90/7 90/8
grasping [1]  71/13
Grassi [11]  22/1 44/2 44/17 45/3 52/7 52/11 53/25 53/25 54/1 57/10 60/18
gray [1]  82/16
great [1]  94/17
group [12]  3/4 3/9 5/14 15/14 16/17 16/17 17/14 20/24 63/10 93/7 95/8 107/5
groups [2]  89/5 89/7
guardian [1]  62/6
guess [5]  19/15 25/20

26/8 59/5 102/11

**H**

H-U-T-C-H-I-N-S [1]  102/4
half [3]  21/14 50/21 85/6
HAMILTON [1]  16/14
handful [1]  64/11
handle [1]  32/17
happened [4]  33/24 33/25 51/3 71/1
happy [4]  35/12 84/3 84/5 100/5
hard [1]  39/19
harder [1]  84/20
HARVEY [2]  1/16 19/2
has [49]  19/15 27/15 33/15 33/15 33/21 33/25 34/3 37/17 43/15 43/17 46/18 47/4 47/4 47/23 48/15 53/25 55/15 55/21 56/14 59/5 59/16 60/21 63/15 66/21 69/14 71/17 72/23 74/9 77/12 79/11 79/24 83/4 83/15 84/8 85/14 86/14 89/10 90/14 91/7 91/12 91/13 93/24 94/24 100/14 100/14 100/15 102/13 102/14 103/8
haunt [1]  28/8
have [180]
have any [1]  66/20
haven't [5]  37/8 39/4 45/22 70/8 84/2
having [1]  25/9
HB [72]  1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/1 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21
he [18]  25/22 25/22 25/25 26/16 26/17 38/21 38/21 38/22 42/1 56/8 58/6 62/3 70/22 72/23 72/23 72/24 73/6 91/22
he'll [1]  41/25
he's [7]  22/25 57/3 62/13 72/22 73/9 73/12 95/23
hear [7]  19/21 25/5 26/21 35/21 38/4 54/24 56/10 102/8 104/24
heard [4]  39/21 56/23 102/8 104/24
hearing [4]  23/17 23/18 85/15 102/11
hearings [2]  95/24 96/3

held [3]  19/1 22/18 27/13
help [1]  42/12
helpful [1]  55/25
her [1]  48/6
here [53]  19/17 19/20 20/10 20/16 21/19 21/24 22/10 23/6 23/15 28/9 33/8 37/8 37/13 37/18 40/18 41/22 42/9 42/17 42/23 44/1 45/25 46/18 46/22 48/1 48/19 49/18 50/14 51/2 53/13 57/17 58/24 59/1 65/23 68/2 70/6 71/5 71/16 71/19 71/20 79/12 83/21 85/3 85/9 87/25 90/18 93/22 94/22 95/23 96/8 101/17 104/25 105/3 105/6
here's [1]  21/7
hesitate [1]  28/7
hey [1]  42/11
hiding [1]  71/5
highest [1]  70/24
highly [1]  61/23
him [5]  28/12 55/22 73/10 73/13 99/18
his [6]  38/25 45/18 48/5 56/24 71/17 81/20
hits [1]  61/19
HIYA [4]  2/4 16/22 27/4 52/3
HOGAN [2]  17/9 104/18
holding [1]  70/17
HOLDINGS [3]  13/18 17/15 17/16
holidays [1]  61/11
home [1]  36/20
honor [191]
Honor's [5]  20/16 40/10 93/12 98/12 100/16
HONORABLE [2]  1/16 19/1
hope [3]  105/14 105/18 106/8
hopefully [1]  90/7
hoping [1]  87/21
hopper [1]  87/7
horse [1]  50/12
hour [1]  104/21
hours [4]  105/21 105/24 105/25 106/2
housekeeping [2]  86/18 104/23
HSIAO [1]  16/5
huge [2]  86/9 92/20
huh [1]  64/13
hundred [3]  72/23 72/24 84/11
hundred-page [1]  84/11
HUTCHINS [3]  18/2 102/3 102/4

**I**

I'd [3]  78/1 96/15 97/16
I'll [10]  19/21 55/22 62/21 76/5 76/7 80/12 90/20 90/23 94/3 104/21

I'm [42]  25/3 25/5 25/17 28/15 28/15 29/15 33/20 34/19 35/12 46/17 47/3 47/8 48/3 48/24 49/25 51/14 52/1 52/10 55/19 57/17 66/15 67/2 68/9 69/19 70/18 75/10 78/21 78/22 79/2 79/25 80/17 82/10 86/3 88/1 89/19 91/6 103/4 103/15 104/6 104/6 105/15 106/17
I've [13]  38/18 59/1 77/13 77/14 85/6 85/7 86/18 99/17 99/18 100/6 100/7 104/4 107/13
i360 [1]  11/9
idea [3]  60/1 70/22 80/8
identification [3]  25/14 26/18 83/24
identified [5]  31/1 36/3 36/4 86/9 99/21
identify [6]  24/12 28/16 78/12 78/20 84/3 84/5
identity [1]  36/12
III [4]  1/16 16/15 17/13 19/2
Illinois [2]  16/21 17/14
illustrative [2]  55/4 55/5
immediately [1]  70/16
important [3]  20/21 70/16 105/4
importantly [1]  21/13
improperly [1]  105/6
impropriety [1]  43/17
inaccurate [2]  36/15 42/22
INC [49]  1/5 1/10 2/4 2/23 3/4 3/9 3/18 4/9 4/14 5/14 5/23 7/4 7/9 7/18 7/23 8/4 8/9 8/13 8/18 8/22 9/4 9/14 9/18 10/18 10/22 11/22 12/9 12/23 13/4 13/23 14/9 14/22 15/9 15/18 15/23 16/17 16/17 16/18 16/18 16/18 16/22 16/22 17/8 17/14 17/15 17/16 17/16 17/20 18/4
include [6]  24/11 41/2 63/19 83/14 98/19 99/12
included [4]  60/20 82/13 82/14 99/4
including [3]  59/20 76/8 78/12
Incorporated [1]  102/7
increased [1]  102/25
independent [1]  53/23
individual [29]  36/18 45/14 45/16 45/18 46/7 48/4 48/9 63/9 63/10 63/12 63/14 64/5 64/18 65/6 65/7 65/14 65/17 65/22 68/1 68/5 70/2 72/21 72/22 73/4 79/19 80/2 88/5 96/23 99/21 individuals [8]  37/10 51/11 79/19 98/17 98/19

99/4 99/12 100/15
individuals' [1]  84/24
inflect [1]  70/23
INFOMATICS [2]  2/13 17/4
INFORM [2]  2/9 17/4
information [22]  17/15 20/19 21/5 21/7 29/15 37/23 38/24 44/24 44/5 49/19 51/6 51/9 55/18 60/22 61/22 71/14 91/21 92/5 97/25 98/16 100/15 100/22
initial [1]  21/1
INNOVIS [1]  7/18
inquiry [2]  64/1 65/23
insert [1]  75/14
INSIGHTS [1]  4/14
insofar [2]  74/15 83/12
inspection [1]  25/3
instances [1]  36/5
instead [2]  21/15 76/15
Intelius [1]  17/16
INTERACTIVE [1]  14/9
interest [25]  22/7 22/13 41/5 42/24 43/3 43/24 44/7 44/23 45/2 45/5 51/15 53/19 53/23 54/1 57/7 60/3 60/25 61/14 78/3 83/5 86/21 90/25 91/2 91/7 91/8
interested [3]  30/3 89/6 103/23
interests [3]  43/22 74/22 75/12
Intermediate [1]  17/16
INTERNATIONAL [3]  5/18 17/15 17/20
interpreted [1]  104/9
interrogatory [2]  71/8 71/9
invoking [1]  53/15
involved [1]  25/23
involvement [1]  78/25
involving [2]  91/24 91/25
irrelevant [1]  64/25
isn't [12]  22/12 24/22 45/7 45/25 48/12 66/13 68/19 81/23 82/5 88/4 92/8 92/23
issue [41]  19/13 21/11 26/21 29/11 30/6 30/22 32/23 35/14 42/2 42/17 42/23 47/9 47/10 48/1 53/13 53/14 56/4 63/20 64/14 66/11 66/13 71/16 76/14 80/25 83/24 84/17 85/5 85/15 86/17 93/2 96/14 97/17 99/1 99/18 100/1 101/3 101/9 101/17 103/22 103/23 104/8
issued [1]  51/10
issues [25]  19/19 22/9 30/5 35/18 35/23 37/16 39/11 52/9 54/23 60/9 64/24 85/9 85/12 87/11 88/21 89/20 90/18 91/12

**I**

**issues... [7]** 91/14 97/16 102/13 102/14 103/21 104/5 104/9
**it's July 15th [1]** 88/11
**item [3]** 31/17 53/21 73/19
**items [4]** 31/3 31/8 58/24 59/4
**iterations [1]** 29/9
**its [2]** 69/16 91/17
**itself [3]** 44/19 47/23 62/10

**J**

**January [12]** 29/20 29/20 31/24 32/6 32/14 32/20 34/10 34/23 35/4 41/10 51/8 93/25
**January 1 [6]** 32/14 32/20 34/10 34/23 35/4 41/10
**January 2023 [1]** 32/6
**jerry [1]** 23/2
**jerry-rigged [1]** 23/2
**JERSEY [23]** 1/1 1/13 16/12 16/16 17/7 17/19 17/24 41/7 45/8 45/13 55/14 59/6 60/13 60/14 68/13 89/9 89/10 91/16 91/18 91/24 91/24 91/25 92/8
**John [16]** 1/21 1/21 44/1 44/17 45/3 52/8 52/10 52/12 52/25 53/22 60/18 61/3 61/22 62/23 81/14 108/13
**joinder [4]** 50/16 53/10 53/18 60/3
**joint [3]** 68/14 68/18 95/7
**JOSEPH [1]** 16/8
**JOY [1]** 12/9
**judge [34]** 1/16 19/2 32/20 33/20 35/11 37/12 38/12 38/16 39/2 39/15 40/5 40/22 42/7 48/5 61/25 69/12 71/8 74/1 76/18 77/15 79/24 81/24 85/1 85/3 95/16 95/22 96/5 97/4 97/7 98/9 100/19 101/3 101/13 101/21
**judicial [4]** 18/7 38/2 91/5 100/19
**July [14]** 88/9 88/11 88/13 88/15 88/18 95/10 95/13 95/16 95/17 95/19 95/24 96/4 96/6 96/8
**July 15th [1]** 88/13
**July 31st [4]** 88/15 88/18 96/6 96/8
**June [16]** 1/14 31/2 86/25 87/1 87/13 87/14 87/16 88/3 88/4 89/18 90/1 90/10 94/18 95/3 95/9 108/13
**June 10th [3]** 87/1 89/18

90/1
**June 14th as [1]** 90/10
**June 2nd [1]** 31/2
**jurisdiction [47]** 20/9 20/20 30/12 33/21 34/15 37/17 37/21 39/7 39/11 40/9 40/14 40/15 42/8 42/16 42/20 43/14 43/18 44/22 46/10 46/13 46/22 51/21 53/19 54/8 54/21 55/8 55/10 55/15 56/25 57/18 57/25 59/17 60/7 60/9 64/1 74/16 78/15 81/6 81/7 82/15 82/20 82/21 82/24 83/13 92/21 97/16 100/6
**just [81]** 20/15 21/15 21/19 25/10 25/14 26/16 29/2 29/18 30/6 30/12 32/15 32/24 34/10 36/10 37/13 39/13 40/2 40/6 40/7 40/20 42/5 44/6 48/3 50/2 50/19 51/17 52/1 52/6 52/10 53/4 54/21 54/24 55/3 55/4 55/22 55/23 56/13 57/17 57/22 59/7 61/4 62/19 65/4 66/9 66/15 69/6 69/20 71/7 73/9 73/24 75/3 75/7 77/1 77/4 77/25 79/20 80/10 86/13 86/18 89/19 90/10 91/2 93/21 95/6 95/22 96/4 96/8 97/17 102/7 102/10 102/17 102/22 104/6 104/22 105/4 105/9 105/16 106/4 106/15 106/16 107/16

**K**

**keep [3]** 50/1 50/1 51/16
**keeps [1]** 62/3
**KIMREY [4]** 16/20 27/3 52/2 86/12
**kind [11]** 28/8 40/12 50/25 54/10 79/25 84/7 84/12 85/8 93/7 93/9 106/13
**kinds [4]** 26/12 37/16 59/20 91/20
**KNIGHT [6]** 9/9 17/8 17/8 38/10 99/20 100/14
**know [102]** 20/8 20/23 21/17 22/20 23/21 25/10 25/22 25/23 27/16 29/6 29/16 29/19 29/22 30/3 30/6 30/13 30/20 35/13 36/6 36/10 36/12 39/18 39/21 40/7 41/12 41/18 41/20 41/23 41/24 42/3 42/12 42/13 44/6 45/9 46/18 47/21 47/22 49/23 52/20 55/13 55/16 55/21 56/3 56/6 56/18 57/4 59/4 59/9 59/16 59/18 60/1 60/2 62/11 63/10 63/13 64/21 64/21 65/3 66/23 66/24 67/1 67/15 67/18

68/19 72/21 78/19 80/1 80/5 80/6 80/24 81/8 81/19 84/10 84/11 84/16 84/17 84/22 85/10 85/16 86/7 87/17 87/21 87/24 88/20 89/20 90/17 91/15 91/22 92/10 92/11 92/17 92/17 92/18 93/5 93/23 94/10 95/22 96/13 98/25 101/20 105/15 107/11
**known [1]** 89/24
**Kratovil [1]** 89/10
**Kurz [3]** 1/21 1/21 108/13

**L**

**L.L.C [1]** 15/14
**L.P [3]** 4/18 17/15 17/15
**LABELS [1]** 7/9
**laboring [1]** 94/24
**LABS [1]** 7/4
**Largely [1]** 89/14
**Larry [1]** 18/6
**LaSalle [1]** 16/21
**last [20]** 20/17 27/22 28/8 31/15 31/21 33/3 33/5 34/14 34/16 34/19 34/21 34/23 39/16 70/11 71/1 87/24 102/11 102/15 106/11 107/6
**late [2]** 29/20 33/6
**later [4]** 24/21 39/12 58/7 105/4
**latest [1]** 33/17
**LATHAM [1]** 17/12
**law [47]** 16/11 18/7 37/7 38/1 41/6 42/14 42/14 44/8 45/10 45/14 45/16 45/22 46/4 46/24 48/5 48/10 48/17 48/20 51/6 59/12 59/19 59/20 59/24 60/4 60/4 60/14 60/17 61/1 63/12 64/22 65/16 67/5 67/5 67/9 67/15 68/5 69/18 69/20 69/23 74/23 76/23 78/18 91/1 91/16 91/25 100/20 101/7
**lawsuit [1]** 23/2
**lawsuits [4]** 51/12 79/5 79/21 80/9
**lawyers [8]** 28/9 70/23 71/9 84/11 84/20 91/17 105/15 106/9
**lay [1]** 83/4
**least [4]** 31/22 72/9 90/2 107/1
**leave [8]** 76/25 87/8 87/10 88/17 90/5 90/7 90/8 90/14
**Lee [1]** 95/23
**leeway [1]** 96/5
**legal [5]** 45/9 80/19 81/2 81/8 81/9 81/14 81/22 82/22 83/9
**legislation [1]** 59/21
**legislator [1]** 59/12
**legislators [1]** 60/13

**Legislature [9]** 45/20 48/4 48/16 49/10 59/6 59/19 59/22 60/13 91/6
**Legislature's [1]** 91/1
**legitimate [2]** 34/4 53/23
**let [10]** 25/20 26/21 43/2 47/1 48/17 55/6 55/22 75/7 94/7 107/11
**let's [20]** 31/5 32/15 34/9 39/10 40/20 40/24 48/18 48/18 49/1 49/11 49/11 57/21 65/3 73/22 84/16 86/3 94/9 96/7 96/8 107/10
**letter [26]** 22/4 22/5 22/25 23/12 24/15 27/22 27/23 28/1 28/4 28/21 31/2 31/10 31/11 41/3 44/19 61/2 64/17 66/21 68/18 68/21 69/17 74/9 74/13 74/21 76/2 92/11
**letters [9]** 40/8 63/5 64/15 64/17 66/16 67/5 67/10 67/10 70/5
**LEWIN [1]** 17/18
**LEXISNEXIS [1]** 13/13
**LIFETIME [3]** 14/18 17/11 104/19
**light [2]** 86/13 87/10
**LIGHTBOX [3]** 4/18 17/15 17/15
**like [32]** 20/4 23/18 25/2 25/7 29/17 35/13 45/13 50/2 59/9 68/19 69/1 70/24 76/21 76/21 78/1 78/7 79/20 80/25 84/12 84/15 85/14 86/7 87/5 87/6 87/8 87/9 90/2 95/7 96/15 96/22 97/17 107/7
**likelihood [1]** 40/6
**limit [4]** 47/23 57/20 102/19 104/13
**limitation [1]** 106/7
**limited [9]** 39/16 46/16 57/17 67/14 76/9 81/7 82/21 85/13 105/21
**limiting [1]** 30/12
**limits [3]** 102/9 102/25 103/19
**line [1]** 54/17
**lines [2]** 30/21 89/14
**list [28]** 21/8 23/21 26/4 26/4 27/15 36/17 36/25 37/6 38/14 39/1 52/10 56/5 58/17 58/20 58/21 58/22 77/5 86/8 86/9 92/13 97/19 98/19 99/8 99/19 99/21 99/21 100/8 100/14
**listed [2]** 18/8 74/14
**listen [1]** 49/1
**listing [1]** 58/17
**lists [8]** 7/9 35/18 36/15 39/4 98/10 98/22 99/4 99/10
**litigating [1]** 89/9
**litigation [8]** 26/11 52/24

54/4 78/13 80/20 84/20 84/23 85/6
**litigations [4]** 41/4 67/6 78/3 78/13
**little [7]** 21/22 32/23 37/16 47/24 54/10 75/4 87/22
**live [1]** 90/2
**LLC [38]** 2/9 2/13 2/18 3/23 4/4 4/23 5/4 5/9 6/4 6/9 6/18 6/22 7/14 9/9 10/4 10/9 11/9 11/13 11/18 12/4 12/14 13/9 16/17 16/17 16/18 16/18 17/4 17/4 17/4 17/8 17/16 17/16 17/20 17/20
**LLP [11]** 16/2 16/5 16/11 16/14 17/12 17/5 17/9 17/12 17/18 17/22 18/2
**lobbied [1]** 59/19
**located [1]** 55/14
**location [1]** 106/25
**log [28]** 24/13 25/19 27/14 29/2 29/14 29/24 30/5 30/11 83/24 84/10 84/11 84/16 84/17 85/8 85/12 85/18 86/1 86/15 86/17 91/14 91/21 92/4 92/10 92/12 92/24 93/14 93/19 94/2
**logs [1]** 32/24
**long [18]** 35/8 44/1 44/17 45/3 52/7 52/10 52/12 52/25 53/22 58/12 60/18 61/2 61/22 62/23 74/17 81/14 82/10 96/4
**look [12]** 22/23 33/18 36/7 44/2 44/8 46/17 48/23 62/11 69/18 71/15 90/6 100/7
**looked [2]** 33/10 45/22
**looking [1]** 22/10
**lost [1]** 44/1
**lot [3]** 29/21 63/20 84/20
**LOVELLS [2]** 17/9 104/18
**LTD [1]** 12/18
**LUSHA [1]** 8/13

**M**

**ma'am [1]** 101/25
**MacStravic [1]** 18/6
**made [10]** 23/18 26/2 36/19 38/20 40/17 51/5 70/6 70/11 73/16 84/7
**Madison [1]** 17/10
**main [3]** 86/25 90/19 103/16
**maintain [1]** 40/15
**maintenance [1]** 47/22
**make [15]** 23/22 25/3 28/22 35/3 39/21 48/18 56/22 63/17 72/7 91/3 95/13 96/17 97/22 106/15 107/16
**makes [2]** 56/6 74/20

**M**

**Maldonado [2]** 72/21 73/4
**management [4]** 6/22 13/13 17/20 70/12
**manner [1]** 51/16
**many [7]** 23/11 70/22 70/22 88/25 89/3 105/2 106/24
**MAO [1]** 16/5
**Maria [1]** 18/7
**MARK [1]** 16/5
**match [1]** 90/3
**materials [1]** 28/22
**matter [42]** 20/9 23/14 30/12 33/21 34/15 37/17 37/21 39/7 39/9 39/10 40/13 42/8 42/16 42/19 43/14 43/17 46/22 51/20 54/21 55/7 55/9 55/15 56/25 57/14 57/18 57/25 59/17 60/6 60/9 64/1 74/15 78/15 81/5 81/7 82/15 82/20 82/21 82/24 83/13 92/21 97/16 108/10
**matter-jurisdiction [1]** 34/15
**MAX [1]** 6/4
**may [29]** 19/5 23/19 33/8 36/15 36/19 39/13 43/16 43/16 45/9 51/24 52/13 53/5 55/2 55/19 56/11 58/10 60/3 63/11 65/21 66/21 72/13 72/21 73/6 74/6 90/6 91/16 93/17 94/6 101/16
**maybe [11]** 27/8 63/11 66/24 73/24 74/9 87/21 95/18 105/19 106/23 107/1 107/5
**McCARTER [1]** 17/5
**McGEE [3]** 16/8 71/21 85/1
**McGee's [2]** 65/11 65/15
**me [29]** 23/12 23/14 23/20 24/4 25/20 26/21 28/8 33/10 38/21 42/3 43/2 47/1 55/1 55/6 55/20 56/11 58/20 59/2 60/22 66/9 66/22 68/11 68/12 75/7 75/8 88/2 94/4 103/14 107/11
**mean [32]** 21/1 24/4 24/24 26/8 26/11 45/24 46/17 47/12 47/23 48/2 48/15 48/18 50/8 55/11 57/19 58/17 59/11 67/2 74/20 74/25 75/11 78/17 80/9 81/19 85/22 88/16 89/16 89/20 90/7 91/18 94/20 97/25
**means [1]** 85/16
**meant [1]** 106/2
**measures [1]** 86/18
**mechanical [1]** 1/23
**meet [6]** 28/4 93/14 94/4 99/18 101/8 106/6

**MELISSA [2]** 10/13 16/15
**member [2]** 38/2 100/21
**members [3]** 32/8 68/25 79/16
**membership [1]** 33/15
**mention [1]** 56/8
**mentioned [4]** 37/2 38/13 39/15 55/22
**mentioning [2]** 57/25 98/24
**MERGES.COM [1]** 12/23
**merits [8]** 38/22 46/23 54/22 90/11 99/19 100/2 100/23 101/17
**mid [2]** 29/20 62/14
**mid-2023 [1]** 62/14
**mid-January [1]** 29/20
**middle [1]** 93/10
**might [6]** 30/20 56/17 62/6 81/4 89/2 94/15
**million [1]** 46/20
**mindful [1]** 97/15
**mine [3]** 63/1 78/5 79/3
**minimum [1]** 63/5
**minute [4]** 18/8 50/11 65/5 75/5
**Mitchell [1]** 1/12
**modification [2]** 75/16 75/19
**moment [2]** 35/20 102/8
**Monday [1]** 1/14
**monetary [1]** 62/7
**monetize [1]** 49/17
**Montgomery [1]** 16/6
**month [1]** 93/19
**months [5]** 30/21 98/20 99/5 99/13 100/23
**moot [2]** 34/10 58/10
**more [10]** 23/7 27/9 36/2 36/4 85/13 87/22 102/11 102/22 104/10 104/23
**MORGAN [6]** 16/8 16/8 71/21 71/22 85/1 85/2
**morning [14]** 19/5 19/6 19/7 19/8 19/9 19/22 19/23 20/12 20/14 39/12 102/1 102/2 104/16 104/17
**morning's [1]** 19/11
**most [5]** 21/13 29/19 41/21 51/8 55/23
**motion [11]** 23/7 46/11 46/11 57/2 57/2 57/4 57/4 86/22 87/8 90/5 90/13
**motions [6]** 19/12 19/18 87/10 87/22 87/17 89/17
**motive [4]** 21/14 53/1 53/2 60/8
**motives [1]** 52/7
**move [5]** 40/24 57/21 86/17 100/25 103/18
**moved [4]** 102/14 102/14 103/4 103/8
**moving [1]** 77/4
**Mr [6]** 36/13 38/4 50/7

59/15 85/14 107/13
**Mr. [51]** 19/15 19/21 20/11 21/21 25/20 27/11 28/10 28/21 28/21 30/18 30/25 31/2 32/16 32/18 34/18 35/14 35/21 35/22 36/14 36/19 38/13 38/18 41/19 42/24 55/21 56/8 58/6 62/22 65/11 65/15 66/10 67/4 70/21 71/17 71/22 72/20 72/21 73/4 73/19 74/8 75/9 75/24 76/3 79/25 92/6 93/24 94/12 94/23 95/3 95/23 106/23
**Mr. Christie [3]** 35/14 35/22 58/6
**Mr. Lee [1]** 95/23
**Mr. Maldonado [2]** 72/21 73/4
**Mr. McGee's [2]** 65/11 65/15
**Mr. Parikh [5]** 32/18 38/18 71/17 71/22 94/12
**Mr. Parikh's [3]** 28/21 31/2 42/24
**Mr. Shaw [7]** 20/11 25/20 32/16 55/21 56/8 75/9 75/24
**Mr. Stio [26]** 19/15 19/21 21/21 27/11 28/10 28/21 30/18 30/25 34/18 35/21 36/14 38/13 41/19 62/22 66/10 70/21 72/20 73/19 74/8 76/3 79/25 92/6 93/24 94/23 95/3 106/23
**Mr. Stio's [2]** 36/19 67/4
**much [3]** 96/9 107/9 108/1
**Mulberry [1]** 17/7
**multiple [3]** 29/8 71/4 95/24
**must [1]** 89/24
**my [25]** 19/24 20/6 27/25 33/9 36/5 43/10 43/22 43/22 44/18 56/13 58/22 65/11 84/6 84/12 92/9 97/24 99/15 101/3 102/3 102/13 103/18 104/1 104/4 105/1 105/5
**MYHERITAGE [1]** 12/18
**myself [1]** 95/23

**N**

**name [3]** 37/22 38/8 102/3
**Named [3]** 72/9 72/17 73/12
**names [14]** 36/3 36/4 36/6 36/6 36/16 38/16 49/19 69/19 69/20 69/21 97/20 99/1 99/3 100/14
**narrow [9]** 22/1 22/6 32/4 40/13 50/1 61/17 61/20 86/8 86/16
**narrowed [1]** 92/22

**narrower [1]** 75/10
**narrowing [1]** 42/19
**narrowly [1]** 53/10
**nature [2]** 83/15 104/23
**necessarily [4]** 26/6 55/2 56/22 66/24
**necessary [3]** 37/20 47/9 75/16
**need [19]** 20/19 21/6 22/17 22/20 27/16 28/20 41/1 42/2 43/10 66/7 70/16 77/25 83/16 84/23 95/3 97/5 97/11 103/22 107/21
**Network [1]** 98/6
**never [4]** 85/7 85/21 91/7 100/24
**new [30]** 1/1 1/13 16/3 16/12 16/16 17/3 17/3 17/7 17/11 17/11 17/19 17/24 32/6 41/7 45/7 45/12 55/14 59/6 60/13 60/13 68/13 89/9 89/10 91/16 91/18 91/24 91/24 91/25 92/7 94/15
**Newark [2]** 17/7 17/24
**next [23]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 16/24 17/25 53/21 73/19 78/24 80/18 83/18 89/17 107/24
**night [1]** 27/22
**nightmare [1]** 105/15
**nine [1]** 70/5
**njd.uscourts.gov [1]** 1/21
**no [42]** 22/23 24/17 25/5 29/11 31/1 31/7 31/17 32/20 40/18 43/19 47/20 48/15 48/23 50/11 56/2 56/20 57/6 57/23 64/3 65/16 65/18 65/18 69/25 70/1 70/2 74/17 75/16 76/17 77/9 79/19 80/15 80/25 83/9 84/2 84/17 89/19 89/21 95/1 98/2 102/22 106/6 107/14
**Nobody [1]** 105/17
**Nobody's [1]** 71/4
**noncompliance [4]** 49/23 61/13 62/15 84/21
**nondisclosure [4]** 22/16 32/5 49/20 70/17
**none [3]** 37/16 45/11 57/8
**nonprofits [1]** 89/22
**normal [1]** 30/8
**North [3]** 16/21 17/13 18/3
**not [130]**
**noted [1]** 28/4
**nothing [5]** 33/25 43/17 48/18 55/15 107/23
**notice [2]** 21/25 40/8
**notices [4]** 30/3 43/11 55/17 104/25
**notion [1]** 81/8
**now [36]** 22/22 23/1

23/11 26/12 28/20 31/5 38/24 40/24 42/3 43/9 45/9 47/5 53/2 58/15 60/2 63/24 64/11 65/17 65/20 66/13 67/25 68/7 70/13 71/13 73/22 74/7 79/1 89/19 89/25 94/9 95/23 96/20 97/24 99/8 100/16 100/23
**number [126]**
**number 1 [1]** 34/24
**numbered [1]** 76/3
**NUWBER [1]** 13/23

**O**

**oar [1]** 94/24
**object [2]** 31/9 80/6
**objecting [1]** 80/16
**objection [7]** 31/1 31/4 31/7 31/8 62/21 78/6 102/21
**objectionable [1]** 80/22
**objections [1]** 19/18
**objects [1]** 23/9
**obligation [1]** 24/11
**obligations [4]** 81/9 83/6 83/7 83/9
**obtain [1]** 44/25
**obtained [4]** 76/8 76/9 76/10 76/10
**obtaining [1]** 74/24
**obvious [1]** 91/23
**obviously [15]** 26/11 29/21 37/12 42/5 45/22 67/9 69/14 82/23 89/20 92/7 94/17 94/21 106/20 107/11 107/14
**occasions [1]** 22/16
**occurred [2]** 22/10 51/9
**occurring [1]** 22/21
**occurs [1]** 33/16
**off [3]** 21/22 23/3 86/17
**offense [1]** 70/21
**offered [2]** 71/4 99/18
**Office [1]** 59/25
**officer [15]** 36/19 38/2 43/9 45/15 45/17 45/23 48/4 48/5 48/10 48/18 48/21 52/17 81/20 100/20 100/20
**officers [9]** 22/15 42/13 50/17 51/2 54/25 67/6 70/10 70/25 78/18
**Official [2]** 1/21 108/7
**oh [7]** 31/19 41/23 54/24 63/1 79/2 87/17 94/21
**okay [36]** 23/5 30/23 30/24 33/7 35/10 37/5 41/7 49/21 50/6 56/6 65/25 67/7 68/7 70/3 71/1 73/25 74/19 75/18 75/21 77/16 77/18 78/6 84/9 85/2 86/2 86/5 90/22 95/9 96/7 96/17 98/21 99/6 101/13 102/24 104/3 107/9
**once [1]** 84/19

**O**

one [59] 22/2 23/6 28/3 28/9 29/2 30/6 30/20 33/17 33/20 35/11 35/23 36/21 39/20 40/6 40/8 42/4 43/6 46/4 52/7 52/12 52/14 53/4 54/17 54/18 57/10 57/22 59/4 62/2 62/12 63/11 65/21 69/3 70/12 72/7 72/14 76/14 77/4 77/24 78/2 78/24 79/19 80/13 81/1 82/4 83/18 85/8 85/11 86/20 88/21 91/12 91/14 93/18 100/9 103/22 103/23 104/6 104/22 104/22 106/15

ones [5] 51/2 59/2 77/20 77/21 77/23

only [11] 32/2 50/14 51/4 52/7 55/9 61/7 64/11 70/12 101/13 102/14 103/21

open [2] 19/1 77/11

opportunity [3] 102/12 102/22 105/10

opposed [3] 51/4 93/7 106/21

opposes [1] 28/9

opposing [1] 92/24

opposition [9] 28/5 46/11 52/5 53/9 54/15 54/24 88/8 88/9 96/10

oppositions [1] 96/11

opt [1] 27/23

ORACLE [4] 5/18 17/15 17/15 17/16

Orange [1] 16/12

order [27] 19/17 20/5 23/15 23/23 24/11 24/20 26/22 27/7 27/8 28/16 37/6 74/18 74/19 83/12 83/21 86/6 88/14 90/21 92/15 93/12 96/24 97/8 97/9 98/13 100/16 107/22 107/24

ordered [3] 35/25 85/19 92/13

orders [1] 85/21

other [45] 20/8 23/18 23/20 24/19 36/25 39/11 42/14 45/3 45/11 45/16 50/21 51/5 51/24 55/8 56/23 57/10 57/18 59/18 59/20 63/14 67/2 67/11 68/4 69/21 70/1 71/19 72/14 72/22 73/4 81/3 85/5 86/18 90/4 91/5 95/24 96/3 96/23 97/16 99/20 101/17 103/17 104/2 104/7 105/2 107/1 107/17

others [3] 37/15 44/18 107/17

otherwise [1] 94/8

ought [2] 26/22 74/9

our [43] 21/8 22/5 22/8 22/8 26/4 26/4 27/19

30/17 33/8 34/16 37/2 39/15 39/18 39/25 40/8 42/12 48/18 49/11 50/2 56/5 58/13 60/7 61/4 63/8 63/12 64/9 67/4 68/4 71/6 75/1 75/3 75/3 75/22 75/23 76/6 77/5 83/9 85/15 88/23 92/21 99/2 101/18 103/19

our perception [1] 39/25

ourselves [1] 106/6

out [30] 24/2 24/21 32/5 32/7 35/18 36/3 49/20 52/10 52/16 57/17 63/16 66/21 67/5 76/7 76/25 79/18 79/20 83/4 85/14 93/5 93/6 93/14 95/25 96/24 97/16 105/11 105/18 106/9 106/24 106/25

outside [4] 14/9 62/4 81/5 103/1

over [9] 20/3 20/4 25/19 32/1 60/16 68/20 79/19 85/9 94/14

overall [2] 71/3 87/23

overburden [1] 20/15

overlap [1] 54/10

own [1] 102/17

**P**

P.C [1] 16/20

page [8] 16/24 17/25 31/11 84/11 102/19 102/25 103/19 104/12

pages [15] 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 102/16

parameters [2] 30/2 56/15

PARENT [2] 4/18 17/15

PARIKH [11] 16/11 29/1 32/18 36/13 38/18 50/7 59/15 71/17 71/22 85/14 94/12

Parikh's [3] 28/21 31/2 42/24

PARKER [1] 18/2

parol [3] 44/16 61/25 62/11

parse [2] 93/6 97/16

parsing [1] 93/5

part [9] 42/16 45/23 45/24 48/9 55/16 57/10 61/6 90/15 103/16

participate [5] 105/10 105/10 105/12 106/5 107/3

participated [1] 28/3

participating [1] 107/17

participation [2] 78/2 107/15

particular [5] 30/6 36/17 82/17 91/19 101/1

particularly [1] 24/5

parties [9] 21/10 24/25

42/24 44/13 44/14 60/3 62/2 87/11 96/15

parties' [1] 102/9

party [19] 20/6 22/7 22/12 41/5 43/3 43/24 44/7 44/22 45/2 45/5 51/15 53/19 57/7 60/25 62/9 69/8 83/5 86/20 92/24

passed [1] 59/23

past [1] 85/6

Pat [1] 22/25

path [2] 25/9 82/11

pathway [1] 41/21

pay [1] 81/22

payment [2] 80/19 81/14

PBA [22] 21/12 21/12 22/21 22/22 32/8 41/4 43/6 44/25 46/8 47/15 47/21 50/25 51/20 51/21 55/9 55/13 67/11 68/19 68/21 68/24 69/3 79/16 80/2 87/7 97/21 98/15

PBA's [1] 68/20

Pearl [1] 16/3

PEM [1] 16/11

people [15] 2/18 7/4 17/4 22/17 37/2 39/1 43/8 60/24 63/10 66/22 68/23 80/2 87/7 97/21 98/15

PEOPLECONNECT [3] 8/22 17/16 17/16

PEPPER [1] 16/14

percentage [2] 34/3 52/17

perception [3] 39/18 39/25 99/3

perhaps [1] 29/15 90/9

peril [1] 39/2

period [18] 23/25 26/1 29/25 31/14 31/14 32/12 32/13 34/13 35/1 35/3 35/7 35/9 39/19 41/9 41/13 62/15 84/13 93/23

permissible [1] 82/20

permission [1] 105/12

permit [4] 23/19 45/13 78/22 80/17

permits [1] 45/8

person [8] 36/21 37/22 38/1 43/21 47/16 76/22 100/4 100/19

personal [3] 40/9 40/14 100/5

personnel [1] 91/25

persons [16] 36/8 38/14 38/20 38/25 39/4 39/5 91/5 97/19 98/3 98/10 98/19 99/9 99/19 99/22 105/1 105/7

perspective [3] 55/21 60/7 101/3

petition [2] 89/10 90/12

phone [2] 36/20 36/20

phrased [1] 54/11

pitch [1] 23/23

place [11] 20/7 22/17 33/1 37/14 46/4 62/14

62/15 62/16 62/17 85/17 106/12

placed [1] 106/7

plaintiff [13] 23/8 23/15 23/22 26/23 28/17 65/14 65/17 65/22 72/21 72/22 73/4 73/12 98/24

plaintiffs [101] 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21 16/4 16/7 16/10 16/13 20/13 22/2 23/24 29/2 30/1 44/4 46/25 49/8 58/11 60/12 61/9 63/9 63/11 63/12 63/14 64/5 64/19 65/6 65/7 68/1 68/6 70/2 72/10 72/17 85/2

plaintiffs' [7] 27/14 74/8 74/13 85/7 86/13 97/17 106/25

planning [1] 39/20

plate [1] 101/18

platform [3] 42/12 78/19 98/7

Plaza [1] 17/23

please [2] 38/8 104/22

plus [2] 29/22 37/13

POE [2] 18/2

point [20] 19/20 26/18 29/20 34/10 39/19 40/2 40/6 50/5 51/25 54/20 58/10 79/23 83/1 90/25 91/17 92/5 101/19 103/20 105/4 105/23

points [3] 33/20 46/3 104/22

police [12] 22/15 36/18 42/13 43/9 47/15 48/4 50/17 54/25 67/11 69/1 69/3 81/20

policies [2] 33/13 44/5

policy [1] 45/12

portion [1] 48/10

position [8] 23/21 27/19 38/25 39/15 56/22 105/1 105/2 105/5

positions [1] 28/10

possible [1] 45/14

possibly [4] 89/4 89/12 89/12 89/13

potential [5] 79/5 80/9 87/22 102/18 106/19

practiced [1] 70/21

PRECISELY [2] 13/18

17/24

predates [1] 84/16

preexisting [1] 53/23

prefer [1] 96/4

preference [1] 20/6

prejudice [1] 54/7

prepare [1] 90/19

prepared [3] 23/13 24/7 80/2

prerequisite [1] 53/7

presence [1] 53/22

present [4] 18/5 32/14 32/22 34/11

Press [1] 89/13

pressing [1] 39/12

presume [1] 35/15

pretty [6] 19/19 24/4 40/17 45/17 80/3 80/3

prevails [1] 45/23

prevent [1] 21/24

previously [1] 83/25

PRICE [1] 16/20

Princeton [2] 16/16 17/19

prior [5] 22/16 30/3 37/2 74/23 98/13

privacy [83] 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 23/1 33/12 42/14 45/19 49/14 49/16 49/17 59/21 91/1 91/7 91/12

privacy-related [1] 59/21

private [1] 49/17

privilege [44] 20/3 20/4 24/13 24/14 25/9 25/12 25/18 25/19 25/19 26/2 27/13 27/17 29/2 29/12 29/14 29/24 30/5 30/11 32/24 83/24 84/4 84/10 84/15 84/17 85/8 85/12 85/18 85/20 86/1 86/15 86/16 86/17 91/14 91/21 92/4 92/9 92/12 92/24 93/12 93/13 93/14 93/19 94/1 94/2

privileged [8] 25/14 25/16 26/5 26/12 26/17 27/16 85/22 85/23

probably [1] 56/18

probe [1] 47/9

problem [9] 32/20 64/14 65/21 74/17 77/9 83/9 98/9 107/11 107/13

**P**

**procedure [3]** 45/21 85/17 105/11
**proceedings [4]** 1/23 19/1 108/6 108/10
**process [8]** 19/24 20/7 21/16 30/15 51/23 60/2 79/21 91/18
**produce [19]** 23/16 23/22 23/24 24/17 24/20 25/6 25/7 26/23 29/14 31/22 35/25 38/21 60/5 60/12 71/4 85/7 85/19 85/22 92/13
**produced [14]** 1/23 27/12 28/17 28/23 35/24 74/14 74/18 80/7 82/7 83/12 85/24 92/17 94/10 95/2
**producing [4]** 61/21 64/15 85/12 94/11
**product [1]** 55/18
**production [9]** 23/8 30/9 31/1 31/9 54/15 70/4 77/24 93/23 94/23
**PRODUCTS [1]** 6/9
**progeny [1]** 44/2
**properly [1]** 50/23
**PROPERTYRADAR [1]** 15/9
**proportional [6]** 46/18 47/4 51/17 55/20 60/11 93/21
**proportionality [3]** 30/1 30/7 54/20
**propose [7]** 74/22 75/3 93/9 94/11 95/5 95/6 106/3
**proposed [6]** 22/23 30/16 35/17 54/15 56/5 90/14
**proposing [1]** 88/14
**prosecutor [2]** 38/2 48/5 100/20
**protect [1]** 45/18
**protected [1]** 23/17
**provide [11]** 32/21 35/17 37/25 52/21 56/5 76/23 84/9 84/17 92/16 94/2 97/18
**provided [6]** 27/14 37/6 71/22 97/19 98/10 99/20
**provides [1]** 20/5
**providing [1]** 29/8
**proving [1]** 20/22
**provision [5]** 33/11 59/7 59/10 59/12 68/13
**provisions [1]** 60/14
**public [1]** 45/12
**pull [1]** 76/5
**purported [1]** 66/11
**purportedly [1]** 76/8
**purports [1]** 76/23
**purpose [7]** 20/23 44/22 48/2 48/20 48/24 49/2 49/4
**purposes [3]** 53/9 53/19 54/8
**pursuant [1]** 98/12
**pursue [2]** 46/9 62/6
**put [12]** 19/17 21/4 22/5 22/11 30/2 34/16 37/14 37/22 61/8 91/21 92/15 104/1
**putting [1]** 30/4 50/12 93/19

**Q**

**quality [1]** 70/24
**QUANTARIUM [1]** 4/4
**QUARRY [1]** 4/23
**quarters [1]** 31/17
**query [1]** 52/6
**question [15]** 19/15 24/9 25/25 42/7 45/10 56/1 57/22 61/7 63/6 63/23 64/22 66/5 67/4 69/13 79/15
**questioning [1]** 105/20
**questions [16]** 21/14 41/22 50/3 51/17 51/18 51/22 55/24 65/1 74/15 77/10 77/25 78/1 80/6 81/3 83/8 83/13
**quick [1]** 38/12
**quickly [2]** 39/13 77/5
**quite [2]** 47/5 105/15

**R**

**raise [6]** 26/18 35/14 35/19 102/7 102/10 104/5
**raised [5]** 19/14 21/11 40/7 56/4 82/18
**Raj [1]** 29/1
**RAJIV [1]** 16/11
**rather [1]** 19/17
**Raymond [1]** 17/23
**RDR [1]** 108/13
**RDR-RMR-CRR-CRC [1]** 108/13
**RE [1]** 6/4
**RE/MAX [1]** 6/4
**reach [1]** 51/25
**read [3]** 75/25 76/7 79/12
**ready [1]** 29/22
**real [17]** 2/22 22/7 22/12 41/5 42/23 43/3 43/24 44/7 44/22 45/1 45/5 51/15 53/19 57/7 60/3 60/25 83/5
**realized [1]** 71/11
**really [11]** 23/4 30/22 32/9 37/20 47/9 64/25 66/3 77/4 78/21 84/12 106/6
**Realty [1]** 17/14
**reason [6]** 36/17 36/24 76/1 79/9 92/15 105/22
**reasonable [1]** 21/5
**reasons [5]** 32/23 39/19 49/14 49/16 54/12
**REATH [1]** 17/18
**receive [1]** 24/3
**received [5]** 36/6 38/13 38/15 98/23 101/4
**receiving [1]** 37/15
**recently [2]** 33/7 104/4
**Recess [1]** 74/4
**recognize [2]** 22/3 38/17
**recognized [1]** 56/17
**record [10]** 23/17 23/18 23/18 38/8 73/18 82/11 91/3 105/5 106/5 108/10
**recorded [1]** 1/23
**records [25]** 25/4 93/11 93/13
**recover [1]** 48/17
**recovery [10]** 34/3 45/14 45/24 45/24 48/10 48/11 48/14 48/21 52/13 52/18
**red [3]** 5/23 16/18 55/1
**redact [3]** 38/19 49/19 100/22
**redacted [3]** 37/24 97/25 100/16
**redaction [1]** 97/18
**reduce [1]** 38/19
**reference [2]** 57/18 58/17
**referenced [1]** 59/9
**referring [1]** 62/3
**reflecting [1]** 66/10
**regard [2]** 59/10 98/25
**regarding [1]** 84/7
**registration [1]** 53/8
**regularly [1]** 100/4
**relate [3]** 41/2 55/7 93/18
**related [26]** 30/22 42/8 44/3 46/12 47/14 47/18 47/25 51/15 59/5 59/21 60/6 60/12 60/24 61/22 62/24 63/3 66/14 67/6 79/21 80/6 81/3 82/7 82/24 86/21 89/15 93/6
**relates [18]** 42/16 51/16 60/2 64/1 64/22 64/23 64/25 65/16 65/19 67/2 78/15 78/21 80/23 82/2 82/22 83/8 84/18 84/21
**relating [3]** 56/12 56/24 97/9
**relationship [4]** 21/10 41/4 62/2 62/9
**relevance [4]** 33/2 33/8 51/14 60/10
**relevant [25]** 22/2 25/15 31/14 31/14 32/24 33/14 35/1 35/3 35/7 42/15 43/1 46/11 47/4 54/18 60/6 61/3 61/24 63/25 66/4 66/5 67/12 74/15 83/13 85/23 93/23
**relief [1]** 87/23
**rely [1]** 59/8
**remand [16]** 19/12 20/24 37/13 40/21 46/12 50/22 57/15 93/6 100/17 101/19 102/9 102/13 104/10 106/16 106/19 106/20
**remember [5]** 20/21 50/21 51/1 55/16 64/12
**remind [1]** 102/17
**REMINE [2]** 8/9 16/18
**remotely [1]** 107/3
**removal [2]** 57/15 104/4
**remove [4]** 36/20 50/15 51/9 71/12
**removing [1]** 51/6
**replacement [1]** 77/5
**reply [1]** 97/2
**Reporter [2]** 1/21 108/14
**REPORTER'S [1]** 108/7
**Reporter/Transcriber [1]** 108/14
**Reporters [1]** 89/13
**represent [10]** 46/7 63/13 65/16 68/5 68/5 71/6 72/4 86/14 102/6 106/18
**representation [5]** 68/14 68/18 70/6 70/11 71/6
**representations [2]** 22/20 104/24
**represented [9]** 31/22 32/10 37/10 64/7 65/8 65/10 70/15 85/14 86/14
**representing [17]** 63/14 67/18 67/25 68/1 68/16 69/23 69/24 70/7 71/18 71/19 71/24 72/9 72/17 73/2 73/3 73/10 73/13
**represents [1]** 68/8
**reproach [1]** 70/25
**request [20]** 20/9 23/8 24/7 24/18 26/25 30/9 32/5 36/19 37/19 38/22 75/1 75/2 75/5 75/11 75/23 92/9 92/16 93/17 93/17 99/22
**requested [5]** 20/1 35/15 37/24 66/4 100/16
**requests [35]** 19/16 21/24 22/8 22/17 27/6 36/21 37/11 38/20 39/3 39/22 40/11 42/17 49/20 50/9 51/3 54/14 54/23 56/24 58/15 70/17 73/21 77/12 77/14 84/7 84/18 92/14 92/16 92/22 98/20 99/9 99/24 100/24 104/25 105/3 105/6
**require [5]** 23/24 60/11 63/20 93/18 94/4
**required [2]** 23/16 39/5
**requirement [1]** 84/22
**requiring [1]** 26/23
**RESEARCH [1]** 6/13
**residency [1]** 50/19
**resolved [1]** 84/2
**respect [25]** 19/12 24/1 27/12 36/14 40/6 55/22 58/15 61/9 64/18 64/18 71/1 77/5 81/2 93/7 94/2 94/3 94/22 96/20 101/1 102/9 102/23 104/2 104/10 104/10 104/10 105/8
**respectfully [1]** 20/9
**responds [1]** 24/19
**response [6]** 58/13 74/14 74/18 83/12 93/11 95/1
**responsibilities [4]** 81/22 83/6 83/7 83/16
**responsibility [3]** 80/19 81/1 81/8
**responsive [2]** 56/19 84/4
**rest [1]** 19/19
**RESTORATION [1]** 11/4
**REUTERS [1]** 9/23
**review [1]** 95/4
**reviewed [3]** 59/25 97/20 98/22
**revisit [3]** 42/1 83/24 97/17
**rid [1]** 99/1
**rigged [1]** 23/2
**right [133]**
**rights [13]** 42/13 43/3 43/22 44/12 44/14 45/18 49/9 49/17 61/15 62/6 74/23 81/20 84/24
**rise [5]** 19/4 74/3 74/5 99/13 108/5
**RISK [1]** 13/13
**Riverfront [1]** 17/23
**RMR [1]** 108/13
**road [3]** 17/19 30/21 93/10
**ROBERT [2]** 17/2 17/13
**ROCKETREACH [2]** 14/4 16/18
**ROCKWELL [1]** 12/9
**room [1]** 59/18
**ROSS [1]** 17/18
**route [1]** 26/24
**RPC [1]** 68/13
**rule [18]** 19/18 21/25 24/1 24/7 24/18 26/24 27/11 28/18 30/9 44/16 62/1 71/12 85/17 85/18 85/23 87/21 94/25 104/2
**Rule 34 [1]** 85/18
**ruled [4]** 77/12 77/13 77/14 83/25
**rules [6]** 19/25 20/7 47/5 85/17 86/4 105/24
**RYAN [3]** 16/8 71/21 85/1

**S**

**safety [4]** 6/9 91/2 91/6 91/8
**said [26]** 21/3 22/22 24/16 25/22 25/23 32/21 32/21 32/23 34/12 34/13 37/20 40/12 45/4 48/24 56/5 56/13 58/6 59/11 67/12 72/10 72/16 76/12 99/17 100/6 100/7 100/7
**same [8]** 27/7 35/2 35/3 41/9 71/22 72/3 96/25 102/20
**San [1]** 16/6
**SANDERS [1]** 16/14
**SARAH [2]** 18/2 102/3
**satisfy [1]** 55/3
**SAUL [1]** 17/22
**say [45]** 24/17 24/20 26/20 29/7 33/11 33/13

**S**

**say... [39]** 34/10 37/25 41/25 43/10 44/2 44/2 46/8 50/12 50/24 51/18 52/17 54/24 55/21 58/11 61/3 62/8 77/1 79/12 80/13 80/15 81/19 81/21 84/16 86/13 90/1 90/7 93/12 93/21 94/5 94/6 94/23 95/12 95/15 95/18 96/6 96/21 97/6 102/8 106/21

**saying [16]** 22/16 23/1 29/11 42/18 43/21 47/1 47/17 50/2 54/20 55/1 55/13 56/2 57/3 59/10 59/13 94/18

**says [17]** 26/17 41/6 41/23 44/8 46/24 56/18 60/17 61/1 62/1 66/8 68/14 71/9 85/25 91/15 98/15 99/21 99/21

**SCALABLE [1]** 6/18

**schedule [6]** 19/12 28/19 87/3 87/11 87/23 87/24

**scheduling [2]** 94/9 96/5

**scheme [5]** 45/25 48/3 48/12 48/13 49/18

**SCHILLER [4]** 16/2 16/5 68/3 72/3

**scope [6]** 19/11 22/6 22/7 28/14 39/14 39/16

**SCOTT [2]** 17/6 38/9

**search [3]** 4/23 21/18 30/13

**SEARCHBUG [1]** 15/18

**searched [1]** 30/14

**SEARCHERS [2]** 2/18 17/4

**seated [1]** 19/5 74/6

**second [1]** 36/20

**secured [1]** 87/7

**see [16]** 20/4 25/18 31/19 34/5 36/22 47/8 50/3 60/10 60/11 67/8 87/5 87/8 90/19 94/5 96/8 107/10

**seeking [1]** 82/19

**seem [1]** 60/6

**seems [9]** 23/14 23/20 24/4 32/4 42/3 60/22 78/7 80/10 91/23

**seen [1]** 87/15

**selected [1]** 50/18

**send [5]** 43/11 67/9 98/4 99/4 99/13

**sends [1]** 97/24

**sense [5]** 48/19 49/11 56/7 74/20 95/14

**sent [19]** 27/22 32/5 36/3 37/3 39/5 49/20 61/11 61/12 66/21 67/5 67/10 79/18 79/20 97/22 98/19 99/24 104/25 105/3 105/6

**separate [9]** 54/2 63/3 64/23 66/11 66/13 66/24 68/24 97/9 103/16

**September [1]** 97/6

**September 30th [1]** 97/6

**serve [3]** 21/24 21/25 26/24

**served [1]** 30/4

**service [25]** 29/8 29/9 31/23 32/22 32/25 32/25 33/3 33/8 33/10 33/15 33/15 34/7 57/13 71/2 71/3 79/11 79/14 79/17 80/21 80/23 80/24 82/3 82/5 83/3 93/25

**services [3]** 47/18 76/23 77/1

**set [12]** 23/12 23/13 24/5 26/5 26/9 26/9 28/17 36/17 40/13 44/14 87/9 90/10

**sets [1]** 44/12

**setting [1]** 106/12

**seven [9]** 30/21 58/23 74/9 87/21 90/2 96/22 105/24 105/25 106/2

**seven-day [2]** 87/21 96/22

**several [4]** 87/7 87/7 99/5 99/13

**SEYFARTH [1]** 17/2

**sham [5]** 44/7 52/6 54/25 55/2 55/3

**share [2]** 52/13 95/7

**sharing [1]** 34/3

**SHAW [10]** 16/2 17/2 20/11 20/12 25/20 32/16 55/21 56/8 75/9 75/24

**sheet [1]** 18/8

**short [3]** 34/6 73/24 89/22

**short-circuit [1]** 34/6

**should [28]** 19/16 23/23 25/18 26/16 26/23 27/12 39/16 39/18 43/5 52/9 52/21 53/8 53/18 57/3 60/19 61/15 63/17 67/13 80/22 84/9 85/24 86/15 88/1 92/18 94/21 95/18 97/3 105/21

**shouldn't [4]** 62/10 89/16 96/23 101/14

**show [4]** 46/12 55/2 57/1 57/6

**shows [1]** 43/6

**side [4]** 24/19 70/23 80/10 85/7

**sign [6]** 18/8 23/1 32/8 47/15 71/8 79/12

**sign-in [1]** 18/8

**signed [1]** 59/25

**significant [3]** 29/15 29/25 30/15

**significantly [1]** 92/22

**signing [1]** 43/7

**Silver's [13]** 44/1 44/17 45/3 52/8 52/11 52/12 52/25 53/22 60/18 61/3 61/23 62/23 81/15

**similar [3]** 33/12 75/2

75/22

**simple [1]** 29/18

**simply [2]** 51/17 65/1

**since [6]** 22/18 33/3 34/7 37/3 70/17 106/23

**single [5]** 35/15 37/1 47/16 65/11 68/4

**sir [6]** 27/2 84/25 91/10 95/21 97/13 104/15

**sit [1]** 90/18

**sitting [1]** 94/22

**situation [6]** 20/16 49/22 53/10 61/8 61/12 98/24

**six [2]** 58/14 85/6

**size [1]** 54/1

**slice [1]** 20/17

**small [2]** 107/5 107/7

**so [132]**

**so-called [1]** 99/8

**sole [1]** 44/21

**solicitation [1]** 68/22

**soliciting [2]** 22/14 32/8

**SOLUTIONS [1]** 7/18

**solves [1]** 72/6

**some [36]** 19/13 22/19 29/13 29/20 30/2 35/11 35/13 37/7 37/12 37/14 42/14 43/16 44/10 47/6 48/21 53/23 56/15 57/20 60/1 66/9 68/2 75/12 75/25 85/10 85/11 90/21 91/17 93/8 95/3 96/5 104/1 104/24 105/11 105/19 106/13 107/4

**somebody [1]** 30/21

**somehow [4]** 20/23 50/17 57/1 91/21

**someone [2]** 33/14 47/21

**something [14]** 27/21 30/20 33/16 55/21 56/8 56/18 81/21 85/14 87/23 93/24 95/25 101/4 106/9 106/21

**Sometime [1]** 88/9

**somewhat [1]** 104/13

**soon [1]** 87/12

**sooner [1]** 94/17

**sorry [2]** 79/2 88/1

**sort [3]** 54/5 90/21 105/11

**sought [1]** 50/22

**sound [1]** 54/11

**sources [1]** 21/18

**South [2]** 16/3 18/3

**spam [7]** 37/16 98/25 99/1 100/4

**speak [2]** 57/12 58/7

**specific [6]** 50/19 57/17 66/9 84/10 93/6 96/24

**specifically [4]** 50/18 57/25 68/12 92/21

**speculation [1]** 21/4

**spend [1]** 93/18

**splitting [1]** 48/14

**SPOKEO [1]** 10/22

**spreadsheets [3]** 35/24 36/2 36/6

**staffs [1]** 89/23

**stage [1]** 100/12

**stand [1]** 37/8

**standing [1]** 35/14

**start [9]** 21/17 22/17 28/21 29/3 29/16 31/2 74/8 85/15 100/2

**started [4]** 22/14 26/11 61/10 92/11

**starting [3]** 29/19 51/3 84/21

**state [8]** 20/24 38/8 45/10 50/15 60/22 61/17 71/12 91/24

**stated [1]** 71/17

**statement [1]** 72/7

**statements [1]** 70/19

**STATES [3]** 1/1 1/16 19/2

**STATUS [1]** 1/5

**statute [11]** 45/8 45/12 46/4 46/6 48/14 49/2 49/4 56/25 79/24 91/15 91/25

**statutory [2]** 45/25 48/3

**stayed [1]** 101/20

**staying [1]** 85/11

**steam [1]** 107/25

**stenography [1]** 1/23

**step [3]** 37/25 63/24 79/7

**still [4]** 36/16 37/8 45/4 79/25

**STIO [29]** 16/15 19/15 19/21 21/21 27/11 28/10 28/21 30/18 30/25 34/18 35/21 36/14 38/13 41/19 62/22 66/10 70/21 72/20 73/19 74/8 76/3 79/12 79/25 92/6 93/24 94/23 95/3 106/23 107/13

**Stio's [2]** 36/19 67/4

**stipulate [1]** 101/1

**stop [1]** 57/4

**stopped [1]** 37/14

**story [1]** 24/22

**straightened [1]** 24/2

**straightforward [1]** 24/5

**straws [1]** 71/13

**Street [6]** 16/3 16/6 16/9 16/21 17/7 18/3

**Streets [1]** 1/13

**strong [2]** 54/6 70/20

**structure [1]** 81/3

**stuff [2]** 26/17 43/10

**subject [49]** 20/8 21/23 23/3 23/25 27/1 30/12 33/21 34/15 37/17 37/21 39/7 39/8 39/10 40/13 42/8 42/16 42/19 43/14 43/17 46/15 46/22 51/20 52/9 54/21 55/7 55/9 55/15 56/25 57/14 57/18 57/25 58/6 59/17 60/6 60/9 63/25 74/15 78/15 81/5 81/7 82/15 82/20 82/21 82/24 83/13 92/21 94/7 97/16 106/19

**submit [1]** 102/17

**submitted [1]** 22/4

**subset [1]** 20/23

**substantive [1]** 104/22

**substitute [1]** 76/17

**subsumed [2]** 78/7 80/21

**sue [1]** 45/17

**sufficient [1]** 97/4

**suggest [2]** 32/11 90/9

**suggested [3]** 27/22 63/22 90/25

**suggesting [1]** 62/13

**suing [2]** 46/19 46/21

**Suite [5]** 16/12 16/16 17/13 17/19 18/3

**Sunshine [1]** 89/15

**Sunshine-related [1]** 89/15

**superseding [1]** 33/14

**supplement [1]** 103/15

**supplemental [2]** 88/6 103/23

**support [1]** 28/12

**supported [1]** 28/1

**suppose [1]** 106/6

**suppression [4]** 97/22 98/20 99/5 99/9

**Supreme [1]** 89/11

**sure [15]** 24/10 29/16 33/20 51/14 52/19 55/19 67/2 69/19 78/21 86/19 97/22 103/15 104/6 106/17 107/16

**surprise [1]** 89/21

**surprising [1]** 56/24

**surrounding [1]** 45/1

**suspect [1]** 67/10

**sustain [2]** 62/21 80/12

**SYNAPTIX [1]** 12/4

**system [6]** 37/3 69/18 98/16 100/1 101/5 105/19

**systems [6]** 4/9 8/13 8/18 99/25 100/3 101/6

**SZYBA [1]** 17/2

**T**

**table [1]** 70/24

**tail [1]** 46/17

**take [15]** 20/6 25/9 28/20 39/1 39/3 43/11 49/18 70/20 73/24 79/7 82/8 100/8 100/21 104/25 107/4

**take-down [3]** 39/3 43/11 104/25

**taken [2]** 43/10 74/4

**taking [2]** 22/17 28/10

**talk [2]** 22/5 23/4 31/5 36/23 50/24 51/13 61/14 65/3 77/8 84/7 94/9 96/7

**talked [10]** 29/7 40/9 55/7 58/18 58/24 79/24 83/5 93/24 106/11 107/6

**talking [15]** 26/1 29/8 29/14 30/13 30/18 42/9 45/25 46/22 62/1 69/1 71/2 80/1 81/11 93/1 93/3

**talks [2]** 48/14 85/23

**T**

**Tampa [1]** 16/9
**targeted [2]** 22/8 22/9
**TECHNOLOGIES [3]** 9/9 17/8 38/10
**TECHNOLOGY [1]** 12/4
**teed [1]** 19/20
**tell [4]** 43/2 44/9 47/1 68/11
**tells [1]** 38/21
**TELNYX [1]** 11/13
**TELTECH [1]** 8/18
**templates [1]** 35/17
**ten [1]** 51/7
**tens [1]** 93/19
**term [4]** 31/13 33/8 33/15 51/15
**terms [34]** 21/18 29/8 29/9 29/25 30/7 30/13 31/23 32/22 32/25 32/25 33/3 33/10 33/12 34/7 56/15 56/16 64/24 64/25 71/2 71/3 71/6 78/21 79/11 79/14 79/17 80/21 80/23 80/24 82/3 82/5 83/3 83/4 93/25 97/2
**test [3]** 61/7 66/7 70/18
**testifies [1]** 42/1
**testify [2]** 41/25 76/22
**thank [30]** 19/10 27/20 30/24 38/6 40/4 40/22 50/6 74/1 74/2 74/11 76/18 77/15 90/24 91/9 96/19 97/1 97/7 97/10 97/14 101/12 101/22 101/23 104/14 107/9 107/19 107/20 107/25 108/2 108/3 108/4
**them [51]** 20/18 21/2 21/5 21/11 21/12 21/13 22/19 24/20 25/17 26/10 26/18 29/6 29/11 32/25 35/25 37/7 37/10 37/14 37/15 38/14 38/21 39/12 40/1 41/22 42/19 44/25 50/18 51/8 52/10 55/23 57/4 65/16 66/3 68/8 70/4 70/17 71/4 71/7 72/24 77/10 78/21 85/11 85/19 85/22 87/13 90/17 90/19 92/13 93/12 95/7 101/9
**themselves [5]** 52/21 62/8 98/3 101/4 105/7
**theory [1]** 55/11
**thereafter [1]** 87/3
**therefore [1]** 51/12
**these [71]** 20/23 21/14 22/15 22/16 22/18 22/18 26/12 26/13 29/19 37/7 37/10 39/4 40/11 41/24 43/21 43/22 45/13 45/21 47/15 50/8 50/14 50/15 50/19 51/2 51/4 51/5 51/11 51/18 54/25 55/3 55/4 55/24 57/12 57/12 58/4 60/24 61/10 62/3

62/13 66/25 67/6 67/16 67/20 67/21 68/23 69/18 70/16 71/9 71/11 71/12 76/12 78/18 79/10 80/7 84/24 87/11 88/20 89/5 93/6 93/8 93/11 94/14 97/22 98/10 98/15 98/18 99/4 99/9 100/9 100/24 106/24
**they'd [1]** 84/15
**They'll [1]** 90/10
**they're [41]** 20/3 20/4 22/9 22/23 22/24 23/13 24/13 25/11 25/13 25/19 30/3 38/1 39/12 43/24 46/19 46/21 50/22 51/19 55/5 57/3 64/7 65/9 65/18 65/22 67/18 68/1 69/21 70/10 71/13 72/11 72/12 82/19 85/18 87/12 87/13 89/22 92/7 100/17 100/17 100/18 100/25
**they've [9]** 32/9 32/9 33/22 61/2 63/24 82/18 97/19 98/9 100/15
**thin [1]** 20/17
**thing [9]** 29/2 36/25 42/4 45/18 56/23 80/13 82/23 101/13 106/15
**things [17]** 21/19 22/3 22/17 23/9 24/16 26/12 29/16 38/12 51/1 56/5 59/20 78/1 80/25 81/4 84/11 91/20 94/7
**think [99]** 19/19 20/5 20/15 20/21 21/16 21/22 22/11 23/3 25/15 25/15 25/18 26/8 26/13 26/16 27/8 28/9 28/12 28/15 28/20 29/5 29/12 30/5 30/15 30/16 32/8 32/13 32/22 34/3 36/11 37/20 40/17 41/15 41/15 41/16 41/18 41/20 41/25 41/25 42/7 46/11 47/23 48/13 55/11 56/3 56/8 56/10 56/12 56/13 56/17 59/23 60/19 61/17 61/18 61/21 61/25 63/18 63/25 64/16 65/15 70/10 73/20 77/17 80/20 80/21 81/5 81/11 82/12 82/18 83/3 83/11 83/16 83/25 84/6 84/8 84/9 84/19 85/5 85/13 86/9 88/3 88/4 88/11 91/11 92/20 93/2 93/21 94/13 94/16 95/22 96/11 97/3 101/8 101/18 103/7 103/8 105/1 105/18 105/20 106/11
**thinking [1]** 89/19
**thinks [1]** 38/22
**third [2]** 59/24 86/20
**third-party [1]** 86/20
**this [92]** 19/10 19/20 20/16 20/17 20/19 21/16 22/15 23/2 23/11 23/17

25/24 26/21 28/7 30/15 30/22 32/1 32/10 33/1 34/4 35/11 35/14 35/19 38/18 39/6 39/12 41/3 41/13 42/12 44/24 45/7 47/9 47/10 49/18 50/16 52/5 53/9 54/20 55/6 55/13 55/16 56/4 57/14 59/18 59/22 59/23 60/4 61/25 62/4 62/8 62/23 63/6 63/23 67/2 68/19 68/20 68/22 70/7 70/15 70/21 70/22 70/23 71/10 79/1 79/14 79/14 79/16 79/20 80/10 80/16 81/6 82/16 82/17 82/19 84/13 85/10 85/13 86/8 89/24 92/20 93/21 93/23 94/10 94/11 99/17 99/18 99/19 99/21 100/8 101/19 104/8 105/22 106/16
**THOMSON [1]** 9/23
**though [3]** 20/25 76/7 86/1
**thought [4]** 75/10 75/11 76/6 83/23
**thousands [5]** 38/16 38/16 93/19 97/20 99/3
**three [15]** 31/17 31/22 36/21 53/1 63/12 65/10 67/4 67/9 68/4 70/13 89/4 93/25 94/14 94/16 95/6
**three-quarters [1]** 31/17
**through [22]** 19/16 23/21 29/3 29/21 30/2 30/5 30/17 31/3 35/4 41/10 51/8 51/23 54/14 58/19 58/20 62/11 73/20 79/25 85/10 91/18 98/5 101/5
**throwing [1]** 57/17
**time [38]** 23/1 23/25 26/1 26/13 28/8 28/18 29/25 30/2 30/15 31/14 32/4 32/7 32/11 32/13 33/12 33/24 34/13 35/7 35/9 37/3 41/13 51/7 51/25 54/24 62/15 63/20 71/1 84/13 84/19 91/17 93/1 93/2 93/23 95/3 96/9 102/15 106/12 107/6
**times [1]** 70/22
**timetable [2]** 94/11 95/5
**timing [2]** 21/9 54/4
**today [16]** 19/17 23/15 23/21 37/8 40/3 41/16 83/21 86/8 90/18 90/23 97/12 97/15 101/10 104/24 107/22 107/25
**together [2]** 93/19 105/20
**tomorrow [2]** 90/23 107/25
**too [6]** 20/17 21/16 56/12 62/19 85/9 96/9
**took [4]** 62/14 62/15 62/16 62/16
**tool [1]** 100/9
**top [1]** 54/10

**topic [15]** 19/10 74/13 75/3 75/3 75/5 75/22 75/23 75/25 76/3 76/6 76/17 81/6 81/13 82/7 82/17
**topic 1 [1]** 76/3
**topics [13]** 22/8 24/1 73/23 74/7 74/9 75/7 76/12 77/19 80/7 82/5 93/8 94/22 94/25
**total [1]** 70/5
**totality [8]** 22/5 43/25 44/3 46/25 47/11 49/23 79/10 99/2
**totally [1]** 54/22
**toward [1]** 95/24
**traditional [1]** 23/7
**Transcriber [1]** 108/14
**transcript [2]** 1/23 108/9
**transcription [1]** 1/23
**transmitted [4]** 37/11 51/2 99/22 100/24
**TRANSUNION [1]** 10/9
**tried [1]** 20/16
**TROUTMAN [4]** 16/14 27/23 28/1 54/15
**true [2]** 24/17 68/2
**trust [4]** 52/8 52/11 54/9 61/9
**try [7]** 19/16 21/23 61/20 71/13 101/8 104/21 107/7
**trying [14]** 20/18 21/4 39/3 41/19 45/6 46/12 47/3 47/8 48/3 49/25 53/9 56/15 72/20 99/8
**Tryon [1]** 18/3
**turn [2]** 73/22 74/7
**TWILIO [1]** 3/18
**two [18]** 22/15 23/6 33/20 39/19 39/23 44/18 46/3 46/6 52/25 54/9 62/3 62/13 68/14 88/22 94/15 103/21 104/22 105/8
**type [7]** 44/24 48/14 55/18 60/1 69/18 69/20 71/16
**types [1]** 40/11

**U**

**U.S [1]** 1/12
**U.S.C [3]** 53/11 53/14 57/2
**Uh [1]** 64/13
**Uh-huh [1]** 64/13
**ultimately [4]** 28/16 84/12 90/1 90/6
**undefined [1]** 20/24
**under [16]** 19/25 24/18 42/13 42/14 45/10 52/25 53/10 53/22 57/7 60/18 64/22 71/12 81/14 82/6 84/4 105/24
**underlying [2]** 75/12 91/1
**understand [19]** 24/8 40/5 40/19 46/5 46/21 47/3 47/11 48/3 49/2 50/4

50/4 54/19 54/20 56/2 60/25 65/25 78/14 86/6 103/20
**understanding [4]** 27/25 63/8 80/1 97/24
**understood [5]** 60/15 77/15 101/21 102/11 102/15
**unduly [1]** 101/14
**unequivocally [1]** 40/10
**unfortunately [2]** 84/23 101/15
**unilateral [1]** 79/18
**union [3]** 69/1 69/2 69/7
**unions [4]** 41/7 47/15 56/4 69/3
**unique [9]** 36/25 102/12 102/13 103/2 103/3 103/5 104/1 104/7 104/10
**UNITED [3]** 1/1 1/16 19/2
**universe [1]** 85/13
**unless [2]** 24/21 103/23
**unlike [1]** 23/11
**unlimited [2]** 41/11 41/14
**unnecessary [1]** 21/19
**untethered [1]** 56/25
**until [5]** 26/24 34/14 41/16 61/11 74/4
**unusual [2]** 46/2 61/19
**unwillingness [1]** 97/18
**up [25]** 19/20 23/1 24/5 26/5 26/9 26/9 30/19 32/8 32/22 34/11 36/18 40/13 41/16 43/7 47/1 47/15 47/20 50/16 61/19 69/19 70/13 76/5 100/9 103/19 106/12
**upon [5]** 39/4 59/8 71/10 93/15 99/2
**us [15]** 17/9 21/15 22/24 22/24 38/23 46/9 46/19 61/6 61/9 61/20 72/18 84/9 93/18 95/16 100/2
**use [8]** 20/10 33/12 34/13 48/18 49/11 75/3 78/18 100/8
**used [3]** 31/13 44/21 57/19
**using [3]** 51/16 57/3 103/19

**V**

**vacations [1]** 96/15
**vagueness [1]** 20/5
**VALASSIS [2]** 14/13 17/24
**VALUE [3]** 14/18 17/11 104/19
**various [1]** 19/16
**vary [1]** 63/9
**VEDDER [1]** 16/20
**veracity [3]** 61/7 66/7 70/18
**versions [4]** 31/23 31/23 35/8 71/4
**versus [6]** 41/20 71/2

**V**

**versus... [4]** 81/2 81/9 83/6 93/23
**very [7]** 22/1 35/14 53/10 56/24 89/22 107/9 108/1
**view [3]** 19/24 90/11 98/18
**VIOLET [2]** 5/23 16/18
**virtual [1]** 106/13
**virtue [4]** 38/15 38/22 39/3 99/9
**volume [1]** 93/16
**vs [72]** 1/4 1/9 2/3 2/8 2/12 2/17 2/21 3/3 3/8 3/13 3/17 3/22 4/3 4/8 4/13 4/17 4/22 5/3 5/8 5/13 5/17 5/22 6/3 6/8 6/12 6/17 6/21 7/3 7/8 7/13 7/17 7/22 8/3 8/8 8/12 8/17 8/21 9/3 9/8 9/13 9/17 9/22 10/3 10/8 10/12 10/17 10/21 11/3 11/8 11/12 11/17 11/21 12/3 12/8 12/13 12/17 12/22 13/3 13/8 13/12 13/17 13/22 14/3 14/8 14/12 14/17 14/21 15/3 15/8 15/13 15/17 15/22

**W**

**Wabash [1]** 17/13
**wagging [1]** 46/17
**wait [4]** 19/18 50/11 65/5 75/5
**waiting [1]** 26/24
**waiver [4]** 40/9 40/14 40/18 100/5
**walk [1]** 58/20
**walked [1]** 32/9
**want [55]** 21/2 21/7 21/15 21/23 21/24 21/25 23/4 23/12 24/6 25/10 25/14 25/22 30/6 30/19 31/6 32/24 33/17 34/13 36/10 37/15 37/19 38/4 44/4 44/20 46/8 46/15 46/17 47/22 49/23 49/25 56/19 56/21 58/16 58/20 59/4 62/22 67/8 68/11 71/7 77/11 85/9 85/10 87/17 87/18 90/7 92/4 92/12 94/23 96/1 97/22 100/1 100/10 105/9 106/15 107/14
**wanted [11]** 23/19 35/19 56/8 61/12 91/2 92/16 102/7 102/10 105/4 106/4 107/16
**wants [5]** 26/20 58/7 59/22 88/20 105/17
**wasn't [3]** 48/21 49/18 56/4
**WATKINS [1]** 17/12
**way [14]** 21/5 23/7 24/5 26/9 27/15 29/18 36/18 39/24 50/14 55/23 79/14 79/19 81/6 82/18

**ways [1]** 23/6
**we'd [4]** 87/13 90/2 102/20 106/24
**we'll [39]** 23/25 24/2 24/4 28/17 30/23 34/10 35/21 37/21 37/22 37/25 39/11 40/1 56/6 57/20 61/20 75/13 75/14 76/16 76/16 76/25 78/8 90/2 94/5 95/12 95/25 96/21 96/24 96/25 97/6 97/8 101/1 104/12 107/2 107/7 107/25
**we've [22]** 29/6 29/11 30/16 30/16 32/21 36/5 42/17 50/22 54/14 54/17 71/4 79/24 80/7 86/8 93/13 93/22 96/5 97/20 98/22 99/1 99/23 104/24
**website [3]** 33/17 79/15 79/16
**week [1]** 94/5
**weeks [5]** 89/17 89/18 94/14 94/16 95/6
**welcome [1]** 38/7
**went [3]** 37/15 37/24 41/12
**weren't [2]** 61/11 61/12
**West [1]** 16/12
**whatever [6]** 59/11 60/3 77/13 81/25 90/19 107/5
**whether [33]** 19/16 20/1 20/2 26/22 34/4 38/1 52/12 53/22 54/2 54/3 54/4 54/6 54/11 54/12 60/2 64/1 64/22 65/23 66/10 66/13 66/23 66/24 75/11 77/10 88/20 91/22 93/14 100/3 100/9 100/19 100/21 101/3 106/12
**WHITEPAGES [4]** 1/10 16/22 27/3 52/2
**who's [3]** 44/22 47/21 107/4
**whole [6]** 48/2 49/18 55/17 79/23 82/23 83/1
**wholesale [1]** 85/12
**wholesome [1]** 21/16
**whose [2]** 59/18 59/19
**why [16]** 22/11 22/12 22/25 30/25 34/9 36/17 43/20 49/10 49/10 49/13 56/15 63/19 65/24 80/15 89/16 106/21
**WILAND [1]** 13/4
**will [22]** 23/15 26/2 27/7 28/16 30/15 38/21 45/23 45/24 60/11 65/14 74/7 83/3 83/20 95/21 95/23 96/2 96/11 97/9 105/9 105/11 107/12 107/24
**WILLIAM [1]** 17/22
**willing [3]** 23/22 24/16 26/10
**window [2]** 89/1 96/22
**wish [2]** 105/9 105/12

**wished [1]** 102/16
**wishes [1]** 106/5
**withheld [10]** 20/2 24/12 27/17 29/12 83/25 84/4 86/8 92/18 93/13 93/22
**withhold [3]** 25/11 25/13 93/10
**withholding [6]** 24/13 25/8 85/19 92/12 92/19 94/1
**within [12]** 23/24 29/24 42/19 51/7 53/25 56/14 81/4 82/14 93/11 94/5 94/14 94/15
**without [1]** 42/18
**witness [23]** 21/13 21/15 21/20 26/17 41/22 41/23 50/2 51/18 51/22 55/24 61/5 63/7 63/23 64/3 65/2 66/5 66/8 76/13 79/22 80/1 80/16 83/10 106/10
**won't [2]** 87/15 94/7
**wondering [1]** 52/1
**word [1]** 76/21
**words [6]** 45/16 55/8 57/19 57/19 90/4 103/17
**work [12]** 30/5 84/21 95/25 96/2 96/24 105/11 105/18 105/20 106/9 106/24 106/25 107/3
**working [1]** 107/13
**works [2]** 79/14 79/21
**wouldn't [7]** 56/20 60/20 81/16 81/16 82/8 92/3 103/22
**writing [3]** 22/25 25/8 58/13

**Y**

**YARDI [1]** 4/9
**yeah [49]** 20/14 28/25 29/4 31/10 31/12 31/20 33/2 41/15 41/23 42/7 42/23 49/7 49/12 55/25 57/16 58/12 58/21 58/21 58/22 60/20 66/2 67/24 69/5 74/12 74/19 76/6 78/16 79/8 80/4 81/11 82/1 82/8 83/11 85/4 88/9 88/11 88/13 89/8 95/15 95/17 96/13 98/14 102/19 106/11 106/14 106/20 106/22 107/6 107/8
**Year's [1]** 32/6
**years [1]** 85/6
**yes [32]** 27/2 32/19 38/5 38/9 38/11 40/25 52/4 52/22 52/23 58/25 66/9 68/4 68/10 72/8 72/13 73/2 75/6 84/25 87/2 87/19 91/10 95/11 95/21 97/13 98/7 99/15 101/25 102/5 104/15 104/20 106/1 107/18
**yet [2]** 87/7 87/15
**York [5]** 16/3 17/3 17/3 17/11 17/11

**you [207]**
**you'd [4]** 35/12 48/16 87/5 87/8
**you'll [4]** 24/2 37/22 37/23 40/8
**you've [1]** 23/11

**Z**

**zero [1]** 89/2
**ZILLOW [1]** 9/14
**Zoom [2]** 106/13 107/1