**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

———————————————

ATLAS DATA PRIVACY                    CIVIL ACTION:
CORPORATION, et al.,
                                      NO. 24-4037
      v.

WE INFORM, LLC, et al.

———————————————————

ATLAS DATA PRIVACY                    CIVIL ACTION:
CORPORATION, et al.,
                                      NO. 24-4041
      v.

INFOMATICS, LLC, et al.

—————————————————

ATLAS DATA PRIVACY
CORPORATION, et al.,                  CIVIL ACTION:

      v.                              NO. 24-4045

THE PEOPLE SEARCHERS, LLC,
et al.

—————————————————

ATLAS DATA PRIVACY
CORPORATION, et al.,                  CIVIL ACTION:

      v.                              NO. 24-4075

DM GROUP, INC., et al.

—————————————————

**STATUS CONFERENCE**

**December 10, 2024**

Sharon Ricci, Official Court Reporter
Sharon.ricci.usdcnj@gmail.com
267-249-8780
Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1

2   ───────────────────────────

3   ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:

4       v.                           NO. 24-4080

5   DELUXE CORPORATION, et al.
    ───────────────────────────

6   ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:

7       v.                           NO. 24-4096

8   DELVEPOINT, LLC, et al.

9   ───────────────────────────

10  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:

11      v.                           NO. 24-4098

12  QUANTARIUM ALLIANCE, LLC,
    et al.

13
    ───────────────────────────

14  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:

15
        v.                           NO. 24-4103

16
    YARDI SYSTEMS, INC., et al.

17
    ───────────────────────────

18  ATLAS DATA PRIVACY
    CORPORATION, et al.,              CIVIL ACTION:

19
        v.                           NO. 24-4141

20
    DIGITAL SAFETY PRODUCTS, LLC,

21  et al.

22  ───────────────────────────

23

24

25

————————————————

**ATLAS DATA PRIVACY**                    **CIVIL ACTION:**
**CORPORATION, et al.,**
                                          **NO. 24-4143**
      **v.**

**CIVIL DATA RESEARCH**

————————————————

**ATLAS DATA PRIVACY**
**CORPORATION, et al.,**                  **CIVIL ACTION:**

      **v.**                             **NO. 24-4160**

**SCALABLE COMMERCE, LLC,**
**et al.,**

————————————————

**ATLAS DATA PRIVACY**
**CORPORATION, et al.,**                  **CIVIL ACTION:**

      **v.**                             **NO. 24-4174**

**LABELS & LISTS, INC.**

————————————————

**ATLAS DATA PRIVACY**
**CORPORATION, et al.,**                  **CIVIL ACTION:**

      **v.**                             **NO. 24-4176**

**INNOVIS DATA SOLUTIONS, INC.**

————————————————

**ATLAS DATA PRIVACY**
**CORPORATION, et al.,**
                                          **CIVIL ACTION:**
      **v.**
                                          **NO. 24-4178**
**ACCURATE APPEND, INC., et al.**

————————————————

**ATLAS DATA PRIVACY**
**CORPORATION, et al.,**
                                          **CIVIL ACTION:**
      **v.**
                                          **NO. 24-4256**
**ZILLOW, INC., et al.**

————————————————

1
_____

2   **ATLAS DATA PRIVACY**
    **CORPORATION, et al.,**            **CIVIL ACTION:**
3
          **v.**                        **NO. 24-4261**
4
    **EQUIMINE, INC., et al.**
5   _____

6   **ATLAS DATA PRIVACY**
    **CORPORATION, et al.,**            **CIVIL ACTION:**
7
          **v.**                        **NO. 24-4269**
8
    **THOMSON REUTERS CORPORATION,**
9   **et al.**
    _____
10
    **ATLAS DATA PRIVACY**
11  **CORPORATION, et al.,**            **CIVIL ACTION:**

12        **v.**                        **NO. 24-4292**

13  **MELISSA DATA CORP., et al.**

14  _____

    **ATLAS DATA PRIVACY**
15  **CORPORATION, et al.,**            **CIVIL ACTION:**

16        **v.**                        **NO. 24-4324**

17  **RESTORATION OF AMERICA,**
    **et al.**
18  _____

19  **ATLAS DATA PRIVACY**
    **CORPORATION, et al.,**            **CIVIL ACTION:**
20
          **v.**                        **NO. 24-4345**
21
    **i360, LLC, et al.**
22  _____

23

24

25

1

2    _____

3    **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**        **CIVIL ACTION:**

4          **v.**         **NO. 24-4380**

5    **GOHUNT, LLC, et al.**
   _____

6    **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**        **CIVIL ACTION:**

7

8          **v.**         **NO. 24-4383**

   **ACCUZIP, INC., et al.**

9    _____

10    **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**        **CIVIL ACTION:**

11

12          **v.**         **NO. 24-4385**

   **SYNAPTIX TECHNOLOGY, LLC,**
13    **et al.**

14    _____

15    **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**        **CIVIL ACTION:**

16          **v.**         **NO. 24-4389**

17    **JOY ROCKWELL ENTERPRISES,**
   **INC., et al.**

18    _____

19    **ATLAS DATA PRIVACY**
   **CORPORATION, et al.,**        **CIVIL ACTION:**

20

21          **v.**         **NO. 24-4390**

   **FORTNOFF FINANCIAL, LLC,**
22    **et al.**

23    _____

24

25

```
1  ───────────────────────────

2  ATLAS DATA PRIVACY
   CORPORATION, et al.,           CIVIL ACTION:
3
          v.                       NO. 24-4392
4
   MYHERITAGE, LTD., et al.
5  ───────────────────────────

6  ATLAS DATA PRIVACY
   CORPORATION, et al.,           CIVIL ACTION:
7
          v.                       NO. 24-4434
8
   E-MERGES.COM, INC.
9  ───────────────────────────

10 ATLAS DATA PRIVACY
   CORPORATION, et al.,           CIVIL ACTION:
11
          v.                       NO. 24-4609
12
   NUWBER, INC., et al.
13 ───────────────────────────

14 ATLAS DATA PRIVACY
   CORPORATION, et al.,           CIVIL ACTION:
15
          v.                       NO. 24-4664
16
   ROCKETREACH, LLC, et al.
17 ───────────────────────────

18 ATLAS DATA PRIVACY
   CORPORATION, et al.,           CIVIL ACTION:
19
          v.                       NO. 24-4949
20
   BELLES CAMP COMMUNICATIONS,
21 INC., et al.
22 ───────────────────────────

   ATLAS DATA PRIVACY
23 CORPORATION, et al.,           CIVIL ACTION:

24        v.                       NO. 24-5600

25 PROPERTYRADAR, INC, et al.
   ───────────────────────────
```

```
 1   _____

 2   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
 3
          v.                           NO. 24-5656
 4
     THE ALESCO GROUP, L.L.C.
 5   _____

 6   ATLAS DATA PRIVACY
     CORPORATION, et al.,
 7                                     CIVIL ACTION:
          v.
 8                                     NO. 24-5658
     SEARCHBUG, INC.
 9   _____

10   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
11
          v.                           NO. 24-5775
12
     AMERILIST, INC., et al.
13   _____

14   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
15
          v.                           NO. 24-7324
16
     US DATA CORPORATION, et al.
17   _____

18   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
19
          v.                           NO. 24-8075
20
     SMARTY, LLC, et al.
21   _____

22   ATLAS DATA PRIVACY
     CORPORATION, et al.,              CIVIL ACTION:
23
          v.                           NO. 24-8451
24
     COMPACT INFORMATION SYSTEMS,
25   LLC, et al.
     _____
```

———————————————————

ATLAS DATA PRIVACY
CORPORATION, et al.,
                                          CIVIL ACTION:

        v.
                                          NO. 24-10571

CONSTELLA INTELLIGENCE, INC.,
et al.

———————————————————

ATLAS DATA PRIVACY
CORPORATION, et al.,                      CIVIL ACTION:

        v.                                NO. 24-10596

BABEL STREET, INC., et al.

———————————————————

ATLAS DATA PRIVACY
CORPORATION, et al.,                      CIVIL ACTION:

        v.                                NO. 24-10600

DARKOWL, LLC, et al.

———————————————————

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
December 10, 2024
Commencing at 10:01 a.m.


B E F O R E:              THE HONORABLE HARVEY BARTLE, III,
                         UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:


    BOIES SCHILLER FLEXNER LLP
    BY: ADAM R. SHAW, ESQUIRE
    30 South Pearl Street, 12th Floor
    Albany, New York 12207
    For the Plaintiffs

**APPEARANCES CONTINUED:**

PEM LAW LLP
BY:  RAJIV D. PARIKH, ESQUIRE
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
For the Plaintiffs


TROUTMAN PEPPER HAMILTON SANDERS LLP
BY:  ANGELO A. STIO III, ESQUIRE
     MELISSA A. CHUDEREWICZ, ESQUIRE
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543
For the Defendants CARCO Group Inc.; Acxiom, LLC; AtData,
LLC; Deluxe Corporation; DM Group, Inc.; Enformion, LLC;
Red Violet, Inc.; Remine Inc.; RocketReach LLC; CoreLogic
Inc.


SIDLEY AUSTIN LLP
By:  JACQUELYN E. FRADETTE, ESQUIRE
1501 K. Street, N.W.
Washington, D.C. 20005
For the Defendant MyHeritage (USA), Inc.


BALLARD SPAHR LLP
BY:  MARCEL S. PRATT, ESQUIRE
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
For the Defendant Thomson Reuters


KAUFMAN DOLOWICH LLP
BY:  TIMOTHY M. ORTOLANI, ESQUIRE
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
For the Defendant Constella Intelligence


COVINGTON & BURLING, LLP
BY:  JORDAN JOACHIM, ESQUIRE
     DAVID A. LUTTINGER, ESQUIRE
The New York Times Building
620 Eighth Avenue
New York, New York 10018
For the Defendant Babel Street

1    **APPEARANCES CONTINUED:**

2

3        GREENSPOON MARDER
         BY:  KELLY M. PURCARO, ESQUIRE
4        1037 Raymond Boulevard, Suite 900
         Newark, New Jersey 07102
5        For the Defendants Alesco, Amerilist, US Data, Searchbug,
         Postcard Mania, DarkOwl

6

7        SEYFARTH SHAW LLP
         BY:  ROBERT T. SZYBA, ESQUIRE
8        620 Eighth Avenue, 32 Floor
         New York, New York 10018
         For the Defendant We Inform

9

10       FISHER BROYLES
         BY:  JASON SPAK, ESQUIRE
11       P.O. Box 5262
         Pittsburgh, Pennsylvania 15206
12       For the Defendant Innovis

13

14       CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
         BY:  JOHN E. MACDONALD, ESQUIRE
15       3120 Princeton Pike, Suite 301
         Lawrenceville, New Jersey 08648
16       For the Defendant Restoration of America

17       RKW LAW GROUP
         BY:  MARK STICHEL, ESQUIRE
18       10075 Red Run Boulevard, Suite 401
         Owings Mills, Maryland 21117
19       For the Defendant E-Merges

20

21    **A L S O   P R E S E N T:**

22       Larry Macstravic, Courtroom Deputy

23       Ryan Rose, Judicial Law Clerk

24
      (Further appearances of counsel are listed on sign-in sheet,
25    Attachment 1, to the docket minute entry.)

1          (Proceedings held in open court before The

2     Honorable Harvey Bartle, III, United States District Judge, at

3     10:01 a.m.)

4               THE COURTROOM DEPUTY:  All rise.

5               THE COURT:  Good morning.  You may be seated.  Now

6     that the Court has decided the remand issue and the issue

7     concerning facial constitutionality, I thought it would be

8     appropriate to have a status conference to see where we go from

9     here.

10              But before we get into the general issue as to where

11    we're going from here, there are two cases that were removed

12    and that weren't subject to the Court's decisions:  The Atlas

13    vs. Constella case, that's 24-10571; and the Babel Street case,

14    24-10596.  And on the face of those, it appears that they

15    should be remanded.

16              Are the attorneys here on those cases?

17              MR. ORTOLANI:  Good morning, Your Honor.

18              THE COURT:  Yes, why don't we deal with that,

19    whether -- I mean, obviously I have the authority sua sponte to

20    remand, but do the defendants wish to brief the issues in light

21    of what I decided on November 21st and file lengthy briefs on

22    the subject or should I just remand them?

23              Come forward so I can hear what you have to say.

24              MR. ORTOLANI:  Good morning, Your Honor, Timothy

25    Ortolani from Kaufman Dolowich on behalf of Defendant Constella

1   Intelligence.  Good morning.  Thank you.

2           We removed the matter prior to the remand opinion

3   coming down.

4           THE COURT:  I thought it was pretty close in time,

5   yes.

6           MR. ORTOLANI:  It was.  It was two days before.  So we

7   received Your Honor's remand opinion.

8           We have essentially no dispute that -- we would be

9   subject to that opinion.  Once the opinion came down, we had

10  our clerk's extension uploaded, we filed our answer last

11  evening to preserve our rights.

12          The question for us becomes, what does the effect of

13  the pending appeal of Your Honor's decision have on us?  We

14  would submit today that it makes practical sense for us to

15  remain here pending the appeal, if Your Honor's inclined to do

16  that.  But certainly if Your Honor has something else in mind,

17  we would understand that as well.

18          THE COURT:  Well, it seems to me the appropriate step

19  for me to take would be to grant the motion for remand and cite

20  my November 21st opinion, and then you a -- whatever appellate

21  rights you have, you have.  You could exercise them.

22          MR. ORTOLANI:  Understood, Your Honor.

23          THE COURT:  And then -- I mean, there's no -- I don't

24  know if there's any appeal of right, but you can either join in

25  with your other appeals or applications for appeal that have

1   been taken, you can certainly join in that.

2           MR. ORTOLANI:  I think that that's the route that we

3   would like to take.

4           THE COURT:  All right.  Well, that's what I'll do.

5   And you have whatever rights you have, similar to the other

6   defendants in the cases where I have granted remand.  All

7   right.  That's what we'll do with that.

8           MR. ORTOLANI:  Sure.

9           THE COURT:  Thank you very much.

10          MR. ORTOLANI:  Thank you, Your Honor.

11          THE COURT:  Now, how about the Babel Street case?

12          MR. JOACHIM:  Thank you, Your Honor.  Jordan Joachim

13  for Babel Street.

14          (Court reporter interruption.)

15          THE COURT:  Just keep your voice up.

16          MR. JOACHIM:  Okay.  I'll do my best.  Jordan Joachim

17  for Babel Street.

18          THE COURT:  Yes.

19          MR. JOACHIM:  So I think we're similarly situated.

20  You know, one route would be to stay the cases and see what

21  happens essentially in the Third Circuit appeal.

22          If Your Honor is not inclined to follow that approach,

23  we agree there's no need to rebrief the remand issue.  The one

24  thing I would say about that is our client's deadline to

25  respond to the complaint is today and we filed a motion to

1   either stay or extend that deadline.

2           THE COURT:  Right.

3           MR. JOACHIM:  And so we would just request, if Your

4   Honor is inclined to remand the case, that we get an extension

5   or a stay of our deadline, as the other cases did that had been

6   remanded before they were remanded.

7           THE COURT:  Okay.  Well, I certainly don't want to

8   prejudice you in terms of your answer, so we'll deal with that.

9   But what I'll do is I'll also remand your case, cite my earlier

10  decision, and then you have whatever rights you have to go to

11  the court of appeals.

12          MR. JOACHIM:  Okay.  That's --

13          THE COURT:  And we'll make sure that no one can argue

14  that you were late in filing your answer, whatever.

15          MR. JOACHIM:  Okay.

16          THE COURT:  All right.

17          MR. JOACHIM:  I appreciate it, Your Honor.

18          THE COURT:  That will take care of those two.

19          Now, the other case was the DarkOwl case.  But before

20  I decided the constitutional issue, I got a letter saying that

21  they joined in, so DarkOwl was included in my decision

22  involving the facial challenge.

23          MS. PURCARO:  Yes.

24          THE COURT:  All right.  So as far as I know, they're

25  the only more recent case.  Is that correct?  Are there others?

1          MR. PARIKH:  That is correct, Judge, those are the

2    three cases that were recently removed -- recently filed,

3    recently removed.

4          We agree DarkOwl has diversity and should stay here

5    before Your Honor.

6          THE COURT:  Yes.  I already ruled, so they were

7    included in the other 30-some cases.

8          Now, the other individual case, the Reuters case, I

9    have the stipulation, but the stipulation talks about adding

10   two new defendants.

11         You want to come forward?

12         And as I read the stipulation, it says nothing about

13   the citizenship of the new defendants.

14         MR. PRATT:  Thank you, Your Honor.  Marcel Pratt of

15   Ballard Spahr on behalf of Thomson Reuters.

16         So of the two entities that are mentioned in the

17   stipulation are the same two entities that are mentioned in the

18   declaration that is the subject of the motion for

19   reconsideration.

20         So Your Honor may recall that in the declaration that

21   was attached to our composition, not only do we explain that

22   the non-diverse defendants had no connection to this case, but

23   we also identified the two entities that did have a connection

24   based on the allegations, and those were Thomson Reuters

25   Centre, which is a Swiss company that's headquartered there;

1  and then also West Publishing Corporation, which is a Minnesota

2  corporation, which is incorporated --

3          THE COURT:  Why don't you refile the stipulation

4  setting forth the citizenship of those parties and the

5  stipulation so we're not looking around for where that

6  information is.

7          MR. PRATT:  Yes.

8          THE COURT:  Can you do that?

9          MR. PRATT:  We'll do that, Your Honor.

10          THE COURT:  And I take it the plaintiffs have no

11  objection if that is submitted?

12          MR. SHAW:  No objection, Your Honor.

13          THE COURT:  All right.

14          MR. PRATT:  Your Honor, then we have one more issue.

15  So Your Honor's order on the motion to dismiss, as well as the

16  1292 order, was not entered in the Thomson Reuters cases, and

17  so we would ask that that happens if the stipulations --

18          THE COURT:  Absolutely.  I'll take care of that.  So

19  you'll be on the non-remand side and be in the same position as

20  all the non-remand defendants.

21          MR. PRATT:  Exactly.  And the petition is due this

22  Thursday so --

23          THE COURT:  All right.  Thank you very much.

24          MR. PRATT:  Thank you, Your Honor.

25          THE COURT:  All right.  That takes care of those.

1          Now, my certification order under 1292(b) was entered

2   on December 2nd.  I looked at the statute, the defendants have

3   10 days to apply to the court of appeals for -- today is the

4   10th day, I guess.

5          What's going to happen?  Or what has happened so far

6   with some of the defendants?  Mr. Stio?

7          MR. STIO:  So, Your Honor, the defendants intend to

8   file a petition, our deadline is the 12th.

9          THE COURT:  Right.

10         MR. STIO:  And we will be filing that for permission

11  to appeal.

12         The defendants have filed a petition with regard to

13  the remand order.  That has already been filed, I believe it

14  was on December 2nd we filed that, Your Honor.

15         What we would be asking for in terms of a path forward

16  is to see what happens with those petitions.  We would

17  anticipate they be ruled upon within the next 60 days.  We have

18  a holiday and have a case management conference on February

19  11th, which would be 60 days from the date we file.

20         The petition for permission to challenge the facial

21  challenge, and that will give us at least an opportunity to

22  see, have the petitions been accepted, what the Third Circuit

23  is going to do.

24         And the reason for this, Your Honor, is that we have

25  37 defendants who are subject to the remand order.  And the

1  cases get moved forward and then there's a review of that

2  order, and they get returned here, you know, we have now two

3  separate work streams.

4         And as to the facial challenge, Your Honor, we think

5  it's important to at least see what the Third Circuit does

6  because -- and I think the Court knows this, I think the

7  plaintiffs know this, you know, there will be facial challenges

8  individualized and we would like to see if we could get

9  guidance on, A, what is the standard?  Right?

10         So if the Third Circuit accepts the appeal and they

11  somehow reverse, all the cases go away.  But if it doesn't

12  reverse, there will be hopefully guidance provided on the

13  standard so that we don't proceed in an inefficient way with

14  time and resources with regard to developing a record for

15  as-applied challenges.

16         So we would ask the Court that we be given some time

17  to see what the Third Circuit at least does as to the

18  petitions, have a case management conference on February 11th.

19         And one of the things that plaintiff --

20         (Court reporter interruption.)

21         MR. STIO:  And then one of the things that we would do

22  in that time frame is meet and confer with the plaintiffs,

23  allow us to speak to the defendants and maybe come up with a

24  list of potential motions, pre-answer motions that would be

25  filed and try to do it in a way, to the extent we can, in an

 1   organized fashion.

 2           When I say "to the extent we can," a lot of these

 3   motions are going to be individualized.  For example, lack of

 4   personal jurisdiction, arbitration, if there's anyone who has a

 5   venue.  But we would like to get our arms around it, figure out

 6   what's out there, and then come back and discuss it with the

 7   Court, of course reserving the right, if the Third Circuit

 8   accepts either petition, to seek additional time to let that

 9   play out.

10           THE COURT:  Well, now, on the remand, that application

11   is limited, isn't it?

12           MR. STIO:  We have filed it on behalf of CAFA mass and

13   on behalf of diversity jurisdiction.  There is case law that

14   says that if you do it under 1453, they could review both.  But

15   we have it on two bases, CAFA mass and under diversity, Your

16   Honor.

17           THE COURT:  And there has been an application on all

18   the remand cases?

19           MR. STIO:  There has been a petition on all the remand

20   cases.

21           THE COURT:  On all the remand cases?

22           MR. STIO:  Yes, Your Honor.

23           THE COURT:  Okay.  Now, the question arises of whether

24   the parties should file answers.  I mean, I think there's some

25   merit to what you say in not going too far down the road until

 1    the Third Circuit makes a decision.

 2            What about at least filing answers to the complaints?

 3    I know you say you have certain other motions.  Some of the

 4    defendants may have personal jurisdiction, there may be

 5    arbitration clauses you said.

 6            Do those have to be decided before an answer is

 7    filed?

 8            MR. STIO:  I don't know how they couldn't be decided

 9    before an answer.

10            THE COURT:  They what?

11            MR. STIO:  I don't know how they couldn't be decided

12    before an answer.  I don't think anyone wants to submit to the

13    jurisdiction of the court if --

14            THE COURT:  Well, you never submit to a jurisdiction

15    by filing an answer; you raise a jurisdictional issue, personal

16    jurisdiction.  But if there were personal jurisdiction

17    challenges, then there would have to be individual discovery,

18    wouldn't there, with respect to each defendant?

19            MR. STIO:  I don't know the answer to that, Your

20    Honor.  I --

21            THE COURT:  I assume not all defendants are going to

22    challenge personal jurisdiction; is that correct?  Or maybe I'm

23    wrong about that.

24            MR. STIO:  I would say that if defendant is

25    incorporated in the state of New Jersey, they wouldn't file a

1    lack of personal jurisdiction motion.

2            THE COURT:  I don't know that there are any that I

3    know of.

4            MR. STIO:  Yes, I'm not sure.

5            THE COURT:  So far, yes.

6            MR. STIO:  I'm trying to get my arms around it, Your

7    Honor.

8            THE COURT:  It would seem to me that would be an

9    individual issue, wouldn't it, whether there's personal

10   jurisdiction?

11           MR. STIO:  Oh, yeah.

12           THE COURT:  So there would have to be discovery, I

13   would assume, with respect to each individual defendant who's

14   going to challenge personal jurisdiction.

15           MR. STIO:  I don't know if that's the case in every --

16   so I'll give you an example.

17           THE COURT:  Yes, go ahead.

18           MR. STIO:  If I'm a foreign corporation and I have no

19   contacts with the state of New Jersey and I don't target anyone

20   in New Jersey, I don't have a website, I think that that's

21   really a -- that would be a situation where there's no

22   discovery.  I think the Court can take judicial notice of it,

23   see what's on the website, see what's pled in the complaint

24   itself.  And if the grounds for lack of personal jurisdiction

25   is from a complaint itself, something you can take judicial

1  notice of, I don't think you need discovery.  But I don't want

2  to go too far down that road.

3          THE COURT:  I understand.  Tell me about the

4  arbitration issue too.

5          MR. STIO:  I only raise that --

6          THE COURT:  I'm not asking you to argue it, just

7  what --

8          MR. STIO:  Yes.  I only raise that because at the

9  May 8th hearing, there were, I think, two defendants who

10 raised the motion to compel arbitration, and I have not looked

11 at that --

12         THE COURT:  Right.

13         MR. STIO:  -- so I don't know the answer.

14         THE COURT:  So do I have any other counsel who has

15 views as to whether answers should be filed or whether

16 everything just ought to be stayed pending the Third Circuit

17 decision?

18         I'll ask plaintiffs' counsel.  Let's start with you

19 and then we'll hear from any other defendant --

20         MR. STIO:  I'll have one of my colleagues --

21         THE COURT:  Go ahead.  Anybody else want to discuss

22 that subject?

23         Good morning.

24         MS. FRADETTE:  Good morning.  Jacquelyn Fradette from

25 Sidley Austin representing MyHeritage, Inc.

```
 1          THE COURT:  Okay.

 2          MS. FRADETTE:  And so our view would be that we very

 3   much agree with the rest of the defendants, that I'm sure my

 4   colleague mentioned, staying the case at least 60 days to see

 5   what the Third Circuit does, potentially longer.  But depending

 6   on how long we believe that stay might go, some defendants, my

 7   client in particular, may want to then pursue personal

 8   jurisdiction motions to be able to just resolve some of the

 9   cases while the appeals are pending.

10          But we generally agree with the stay for at least 60

11   days and then potentially can revisit it for some defendants

12   who may want to move forward.

13          THE COURT:  Any other defendants wish to speak to this

14   subject before we hear from plaintiffs' counsel?

15          Good morning.

16          MR. SZYBA:  Good morning, Your Honor.  Rob Szyba,

17   Seyfarth Shaw, for, among others, We Inform defendant.

18          On the issue of filing an answer, I think one thing to

19   consider with doing anything additional beyond any 12(b) or any

20   other type of individualized motions is that at some point

21   there's going -- at some point the more effort, work filings

22   that the defendants do, this all exacerbates the issue.  And if

23   a defendant has a personal jurisdiction issue, at some point

24   there's going to be an argument made by the plaintiffs that

25   they've submitted to jurisdiction.
```

```
 1          So in terms of filing an answer or any other thing
 2   that needs to happen, those steps should be deferred until
 3   after the issue of personal jurisdiction is decided, whether
 4   it's the court's jurisdiction, whether it's the jurisdiction of
 5   that defendant to be subject to New Jersey law.
 6          THE COURT:  All right.
 7          MR. SZYBA:  Thank you.
 8          THE COURT:  Good morning.
 9          MR. SPAK:  Good morning, Your Honor.  Jason Spak,
10   Fisher Broyles, I'm counsel for a defendant called Innovis.
11          We would not contest personal jurisdiction or
12   arbitration, but we think we have a good 12(b)(6) motion.  And
13   if we file an answer, we could certainly tee that up as a 12(c)
14   motion --
15          THE COURT:  Right.
16          MR. SPAK:  -- for a judgement on the pleadings.
17          The catch, though, if I understand Mr. Stio, if the
18   Court grants a stay, he can then work with defendants to say
19   how many of you guys have essentially the same issue to raise
20   at the 12(b)(6) stage.
21          THE COURT:  Right.
22          MR. SPAK:  And it's a lot easier to do that as a
23   12(b)(6) motion than as separate answers followed by 12(c)
24   motions.  So, you know, ultimately it's, you know, at your
25   discretion, which path is preferable.
```

1          THE COURT:  Right.

2          MR. SPAK:  But I would suggest that maybe this stay

3  option made sense because then we can -- if they are going to

4  be bundled 12(b)(6) motions, they can actually be bundled

5  before --

6          THE COURT:  Right.  What type of 12(b)(6) motion do

7  you have in mind?

8          MR. SPAK:  My client is a B2B defendant, meaning that

9  it provides credit reports or consumer reports.  That

10 information is not disclosed in the sense that, like, if you go

11 online, you can get it.  You can't.

12         THE COURT:  Right.

13         MR. SPAK:  In fact, it's only disclosed to people who

14 have it already.  Like, if they -- if you were to go to a bank

15 and say I'd like to, you know, borrow some money, the bank

16 would then get your name, your address, provide it to Innovis,

17 Innovis would just send a report back that had that same stuff

18 on it.

19         THE COURT:  Right.

20         MR. SPAK:  And there's some question about whether or

21 not that's what Daniel's Law means when it talks about

22 disclosure.  And more than that, there's real questions I think

23 about whether the complaint can state a claim based on what the

24 complaint has alleged.  Because it's talking about how people

25 could just go to the Innovis website and get all this

1   information, that's just not possible.

2          THE COURT:  Now, I don't want to get too far in the

3   weeds on this --

4          MR. SPAK:  No.

5          THE COURT:  Is that properly a 12(b)(6)?  Because you

6   would have to base the motion on what's stated in the

7   complaint, and a lot of what you said introduces additional

8   facts which may be more appropriate on summary judgement or

9   trial.

10         MR. SPAK:  I'm sure that the way I'm talking about it,

11  it makes it sound that way.

12         THE COURT:  Yes.

13         MR. SPAK:  My review of the complaint suggests that it

14  does not state a claim for which relief can be granted just

15  because there's a disconnect between what the allegations say

16  Innovis does and what the facts as pled actually indicate that

17  it does.

18         THE COURT:  All right.  Thank you very much.

19         Good morning.

20         MR. STICHEL:  Good morning, Your Honor.  Mark Stichel,

21  I represent eMerges.com in case 24-4434.

22         And I would just urge the Court to have a complete

23  stay of everything until we know what the Third Circuit is

24  going to do with the case.  E-Merges is one of the defendants

25  that's relatively small.  And if you look at the group of the

1    defendants in the case, they range from very, very large

2    corporations down to companies like my client, which has one

3    employee.

4         And before we get to any type of discovery, anything

5    other than trying to resolve the facial issue, it would be a

6    significant financial hardship for my client, so therefore, I

7    would urge there be a stay so long as the matter is alive at

8    the Third Circuit until we get --

9         THE COURT:  All right.  Very good.

10        Good morning.

11        MS. PURCARO:  Good morning, Your Honor.  Kelly

12   Purcaro, I represent six defendants in the case that they're

13   not in the remand group and we support the stay.  We would like

14   to have time to see what the circuit is going to do.

15        And along the lines of some of the issues raised here,

16   I think we all need time to meet and confer, defendants and

17   plaintiffs, about how to handle the as-applied constitutional

18   challenges.  I think some of the items that counsel raised go

19   to the as-applied challenges and a number of my clients are

20   B2B.

21        There's some notice things, there are a lot of common

22   issues within the group that can be handled in that, and we

23   would -- similarly, a lot of my clients are very small, maybe

24   six employees or less, and so it just makes sense economically,

25   as well as judicial economy, to handle those constitutional

1  challenges collectively, if possible, rather than having 30 or

2  40 different briefings on the same issues.

3        So to the extent we have the stay, I think we can use

4  that time to also talk about a plan to address these issues

5  that are relatively global.

6        THE COURT:  Thank you very much.

7        MR. PURCARO:  Thank you.

8        THE COURT:  Good morning.

9        MR. MACDONALD:  Good morning, Your Honor.  John

10 MacDonald here from Constangy, Brooks, Smith & Prophete in

11 support of the stay.

12       Just a quick note, Your Honor, that whatever the Third

13 Circuit does or doesn't do may impact our affirmative defenses.

14 I just wanted to raise that for the Court.  So that would be a

15 reason not to compel the filing of an answer before we've heard

16 from them.  Thank you very much.

17       THE COURT:  Thank you very much.

18       Any other defendant?  All right.

19       Mr. Shaw?

20       MR. SHAW:  Thank you, Your Honor.  Adam Shaw for the

21 plaintiffs.

22       Your Honor, what's missing here is the most important

23 interest, which is the interest of the officers, the safety and

24 security of the officers.  That's why we brought these cases,

25 that's why Your Honor issued a ruling saying that that was the

1    purpose of the law.  And I believe everybody, all the

2    defendants here, you know, recognize that that's an overriding

3    concern.  So we want to bring -- keep the cases moving

4    forward.

5            If these defendants -- many of them say that they're

6    not even subject to the law, many of them are still disclosing

7    this information to the detriment of these officers.  If

8    they're willing to sign some kind of certification that they're

9    complying or that they're going to comply, then maybe a stay

10   would be appropriate.  But if they're not going to do that or

11   if there's not some way to protect the safety and security of

12   the officers in the interim, we request that the case go

13   forward.

14           You know, these cases have been pending coming up on a

15   year.  What they're doing is -- and as they explained here, is

16   they're taking seriatim shots to try to knock it out.  And

17   they're saying, well, we took this one shot, we didn't make it,

18   so let's wait and see if that goes up to the courts and then

19   come back here again; and then we want to take another shot,

20   and then presumably they're going to wait and see on that as

21   well.

22           THE COURT:  Well, I think I decided early on that the

23   only way to proceed in an orderly fashion with so many cases

24   which would deal with a remand, obviously, which is subject

25   matter jurisdiction, and also the facial challenge which all

1  the defendants join in, it would have been -- seemed to me that

2  we need to get that out of the way first before we begin to get

3  into the individual cases.

4       I don't see how we could -- we wouldn't have even

5  gotten this far if we had taken the approach, we were going to

6  hear arguments about arbitration and personal jurisdiction and

7  all that sort of thing.

8       MR. SHAW:  I agree, Your Honor.  And I commend you for

9  helping -- you know, allowing us to organize like that and

10 taking control and lassoing it, and I think you've done that.

11      But now here's -- now we're at where we're at, and

12 that one main motion has been decided and we have to figure out

13 how to go forward from here.  And a blanket stay would be to

14 the detriment of the safety and security of these officers.  So

15 how do you take that into consideration?

16      We suggest that they sign some type of -- come forward

17 and sign some type of compliance or indicate to the Court that

18 they're in compliance.

19      We also think, as we discussed in a couple of hearings

20 before, that even though these motions might have some facts

21 that are individualized, they really center around topics.

22 Arbitration is a topic, personal jurisdiction is a topic, a

23 12(b)(6) is a topic, even as-applied challenges is a topic.

24      There's no reason they can't -- they've had six months

25 to think about these motions.  There's no reason that they

1    can't put their briefing together on these issues.  Sure, it

2    will take them a little bit of time, but that is the position

3    they put themselves in by doing these seriatim.  And I would

4    suggest that causing them to take some time is outweighed by

5    the concerns about safety and security of the officers and

6    moving this case forward.

7            I also think as to personal jurisdiction, if they're

8    going to make the motions, as Your Honor suggested, there's

9    going to be discovery.  If you think about having a stay and

10   then doing that, you know, at some point several months from

11   now, you know, you're really pushing the schedule out very far.

12           There's some low-hanging fruit that we think that they

13   could produce in discovery, just like we did for their benefit

14   when we had our jurisdictional discovery --

15           THE COURT:  Well, what is the low-hanging fruit that

16   they can produce?

17           MR. SHAW:  Documents related to their contacts with

18   New Jersey.  I mean, Mr. Stio suggested there might be some

19   people that have no connection to New Jersey, but that's not

20   the case.  I mean, they're all defendants in this action

21   because they've disclosed information about officers in New

22   Jersey.  So there's some interactions with the state of New

23   Jersey and we think that there's some documents and information

24   about their contacts with New Jersey that they should produce

25   in the interim.

 1          And again, you know, putting together briefing on

 2    these categories seems like a -- you know, a reasonable way to

 3    go forward so that we don't completely put a stay on and then

 4    seriatim add to the stay as each of these attempts to knock out

 5    the case take place.

 6          And again, our concern is the officers' safety and

 7    security.  And Your Honor did coordinate the cases and did make

 8    great progress in doing that, but you denied their motion on

 9    the First Amendment grounds.  So we're in the position where we

10    can go forward.  For sure it's going to be heard potentially by

11    the Third Circuit on a petition, but we don't know what's going

12    to happen with that so we suggest that the cases go forward and

13    that we protect the officers in the interim.

14          THE COURT:  Mr. Stio, what about the fact that this

15    information is still out there?

16          MR. STIO:  Your Honor --

17          THE COURT:  It's still being disclosed.

18          MR. STIO:  -- if there is information still out there,

19    they can put that in a form that's acceptable to the Court,

20    like an injunction.  They keep saying the officers' safety, the

21    officers' safety.  They haven't brought a preliminary

22    injunction.  They can do that.

23          I'm not aware of any defendants that are out there

24    making it available on the internet and doing it for the

25    purpose of invading privacy or hurting the safety.  But their

1   case is about money damages.  They haven't brought a

2   preliminary injunction.

3        And I would submit to the Court that if they brought a

4   preliminary injunction two and a half years after they started

5   collecting these opt-out requests, they would probably lose it.

6   So they keep saying officers' safety, officers' safety without

7   putting any evidence in the record.

8        And the Court came up with a procedure, which we

9   agreed with, which is, let's do this in an orderly fashion, I

10  want you to file a facial challenge and then we'll certify it

11  to the Third Circuit either way to see if it will be accepted

12  for an appeal so we can get guidance.  Because that's a

13  dispositive issue.  Either it's going to knock out all these

14  complaints or it's going to result in giving all the defendants

15  and even the plaintiffs guidance.

16       So I would submit that going forward without at least

17  seeing what the court, Third Circuit, does on the petitions is

18  not an efficient way to proceed.

19       And, you know, they talk about discovery.  I just

20  think that let's figure out what motions are out there.  And I

21  don't know if these can be grouped, but we can try because I

22  think that's what the Court wants us to do.  And to the extent

23  they can, we will be in a better position if we have a case

24  management conference on February 11th because I'm optimistic

25  that we will have some decisions from the Third Circuit on the

 1   two petitions, we'll have a chance to at least come up with

 2   these are the types of motions.  And if to the extent we can

 3   group them, we will attempt to do that.

 4        But I say that, but if the Third Circuit accepts the

 5   facial challenge appeal, I will be back here on February 11th,

 6   if that's the date of the case, and ask for a continuation of

 7   the stay because it's up on the Third Circuit.  So I don't want

 8   the judge to think that I'm not being transparent.

 9        THE COURT:  No, let's think about that.  The 1292(b),

10   you of course have ten days to file your application, and that

11   expires on December 12th.

12        MR. STIO:  Correct.

13        THE COURT:  Now, we don't know whether the court of

14   appeals is going to accept it.  That's the first step, they

15   have to accept it.  And if they accept it, then there will be

16   briefing and oral argument, I assume.

17        Now, you talk about the 60 days.  There's no time

18   frame for the court of appeals to decide whether it's going to

19   take the appeal under the 1292(b), am I right about that?  That

20   60 days only applies to the deadline for them to make a

21   decision on the class action issues?

22        MR. STIO:  Correct, yes.

23        THE COURT:  But I guess it's 60 days after they decide

24   to take it.  In other words, that's the first step, they can

25   say we're not going to take it, and that may be sooner.  We

1    don't know.

2           If they decide not to take it or if they decide not to

3    take any of the remand cases --

4           MR. STIO:  Yes, I agree with Your Honor with that.

5           THE COURT:  So the 60 days is somewhat arbitrary

6    because even if they decide to take it, they may not decide to

7    take it for the class cases for 20 days.  Then it's 60 days

8    after that, isn't it?  It isn't 60 days after you file your

9    application for appeal.

10          MR. STIO:  Yes.  So what I was trying to get at, Your

11   Honor, is not that any of these appeals will be decided within

12   60 days.  I was just trying to say with the application what

13   would be a reasonable time that may give us insight as to

14   whether the Third Circuit is going to at least accept the

15   petition and grant leave, and I thought of 60 days.

16          And the reason I did that is we have the intervening

17   holidays, we have the new year.  I would think they would be

18   able to do it within 60 days, but there is no deadline.

19          THE COURT:  It might be well for us just to maybe sit

20   back and see what the court of appeals does.

21          In other words, if within a month they decide not to

22   take either one of those, then the Court can schedule a hearing

23   more quickly.  I don't know why we have an arbitrary date.  I

24   mean, maybe --

25          MR. STIO:  Yeah, I'm fine with that, Your Honor.

1          THE COURT:  I'm just thinking out loud a little bit to

2    stay these actions pending further order of court and let's see

3    what happens.

4          MR. STIO:  I'm fine with --

5          THE COURT:  If they don't take the 1292(b) -- I think

6    it's probably likely they will, but I don't have any inside

7    information about that.  And you haven't filed your papers, so

8    nobody can -- and then we can schedule a lot sooner.

9          MR. STIO:  Yes, we agree.

10         THE COURT:  And on the remand they may decide not to

11   take that.  So, I mean, if they don't take that, then those

12   cases are no longer of any concern here --

13         MR. STIO:  Correct.

14         THE COURT:  -- in New Jersey.

15         So I think rather than say February 11th, I'll just

16   keep an eye on it, and you can keep an eye on it too.  And if

17   there are any developments, let me know as soon as they occur,

18   and then I'll make a decision as to whether to have a status

19   conference.

20         MR. STIO:  And that's fine with the defendants, Your

21   Honor.

22         THE COURT:  I mean, I think Mr. Shaw, the idea -- I

23   mean, if for some reason -- who knows what the court of appeals

24   is going to do.  But if they totally reverse and say the

25   statute's unconstitutional on its face, that's the ball game,

1  isn't it?

2          MR. SHAW:  It is, Your Honor.  But you could always

3  stay the case later on after that happens.

4          But also, there's no indication that within 30 days

5  they're going to review this petition and make a decision.

6          THE COURT:  I know.

7          MR. SHAW:  He hasn't asked for expedited treatment of

8  it.  And again --

9          THE COURT:  Well, first of all, they haven't filed

10 anything under 1292(b) yet.  The deadline to file is two days

11 from now.

12         MR. SHAW:  Correct.

13         THE COURT:  And we'll see what the court of appeals

14 does, how soon they act.  And then, you know, if they decide in

15 two weeks that they're going to take the case, that's one

16 thing.  If they decide not to, that's another thing.

17         MR. SHAW:  But if they don't do anything for 90 days,

18 will we --

19         THE COURT:  Well, we'll just have to see.  I think the

20 point is we'll -- I think at this stage, since we know very

21 little, I think I'll just stay it until further order of court.

22 And then I'm certainly mindful that we don't want this thing to

23 drag on forever and ever because I think it's important to try

24 to move it along.

25         But I do think it's -- on balance, it's important to

1   hear what the court of appeals says.  That's why I certified --

2   I told you early on that I would certify it rather than go

3   through this whole exercise and then two years from now have

4   the court of appeals reverse everything we've done here.  That

5   wouldn't make sense.  I hope.  I'm not saying that I think

6   that's what's going to happen, but I don't have a crystal ball.

7          MR. SHAW:  No.  We think that's important for appeal

8   purposes, but we're right now trying to figure out should the

9   case be stayed and what interests do you need to weigh in

10  dealing with that, and we would like to try to find some way to

11  protect the officers in the interim.

12         THE COURT:  Right.

13         MR. SHAW:  And maybe we can fashion some form of

14  compliance certification that we could --

15         THE COURT:  Well, you can talk to defense counsel

16  about that.  I don't know whether you -- I assume that you've

17  had some discussions but they haven't been productive.

18         MR. SHAW:  Correct.

19         So, you know, that's why we're asking the Court if we

20  could do something like that, if we could submit some type of

21  form for your consideration.

22         That's what they're asking for in the interim, is to

23  get a stay pending all their activities.  You know, and

24  certainly going to the appellate court is one of those

25  activities that's allowed.  And we're just trying to weigh that

1    stay versus the interest --

2            THE COURT:  Well, one of the things that we might want

3    to do, even if I stay everything, is maybe to have another

4    status conference to discuss what the motions are likely to be

5    if the court of appeals affirms or doesn't take the 1292(b),

6    just so we don't have that go on.

7            I would be interested in sort of framing the issues

8    and talking about what will be needed so we're not doing that a

9    year down the road or two years down the road.

10           MR. SHAW:  We think that would be helpful.  I mean,

11   they've had several months to think about that.

12           THE COURT:  So maybe we can do -- I'm just thinking

13   about maybe some time in mid January to let the parties -- I

14   don't mean filing the briefs, but what issues we're likely to

15   face.

16           And if we're talking about personal jurisdiction, how

17   many defendants are going to be raising the issue of personal

18   -- is it all 30-some or is it 2?  And what is the arbitration

19   issue?  Is there some sort of an arbitration clause that all

20   the plaintiffs agree to with the defendants?  And each

21   defendant would be different, I assume?

22           Is there -- I haven't seen it yet.  Is there an

23   arbitration provision somewhere that all these cases will be

24   subject to arbitration?

25           MR. SHAW:  We don't think so.  I think that's a

1    specious argument.  But these are the types of things -- and

2    you raised this in May, and they should know which of them are

3    going to make the motion and the basis of it, and certainly

4    that's information that could be brought to the Court.

5            And as you say, if there's only two people making a

6    personal jurisdiction motion or 12(b)(6) motion, that will

7    affect the way I think you decide what to do going forward.  If

8    it's only -- if it's only a small group of people, you may want

9    to have the briefing done on that.  If it's a small group of

10   people, you may want to have the discovery go forward on

11   that.  So I do think it's important to get that information

12   from the defendants.

13           But again, if we could somehow in this interim period,

14   you know, find a way to protect the officers, we would like to

15   do that.

16           THE COURT:  Mr. Stio, what about that?  Could you at

17   least have some discussion among the -- I mean, obviously it

18   would be all wasted if the court of appeals says the statute is

19   unconstitutional, but I think there is some merit to maybe

20   totally forgetting about the case for --

21           MR. STIO:  Your Honor, we would be amenable to meeting

22   and conferring, trying to come up with the issues that will

23   likely be the subject of a motion if the court of appeals does

24   not accept the appeal.  And we could have a case management

25   conference in mid January.

```
 1            But, you know, they keep saying the safety of the
 2   officers.  They can file a motion for preliminary injunction.
 3   They haven't put anything in front of the Court --
 4            THE COURT:  Right, I understand.
 5            MR. STIO:  But we're happy to at least get those
 6   discussions among the defendants and then speak with the
 7   plaintiffs and maybe we submit a joint letter ahead of any
 8   conference that you set mid January --
 9            THE COURT:  I'll go back and look at my calendar, but
10   maybe we'll try to set something for mid January.  And maybe by
11   that time we'll know something from the court of appeals, at
12   least whether they're going to take these issues, maybe we
13   won't.
14            MR. STIO:  Yeah.
15            THE COURT:  I don't want to let it go until February.
16   But I just would be interested in knowing what motions might
17   be on the horizon so we can begin thinking about it.  And,
18   you know, how many defendants are going to challenge
19   personal jurisdiction, how many are going to raise arbitration,
20   how many are going to file a 12(b)(6) motion for failure to
21   state a claim?  Just to get some idea so we're not doing this
22   many months from now.  I think that would be helpful to do
23   that.
24            MR. STIO:  Understood, Your Honor.  I think we are
25   fine with doing that.
```

1          THE COURT:  And obviously, if anything comes up sooner

2    from the court of appeals in terms of denial, then maybe --

3    we'll maybe have a status -- we'll see.  We just don't know.

4          MR. STIO:  That's all we're asking for.

5          THE COURT:  In the meantime what I'll do is stay all

6    the remaining cases pending further order of the Court.

7          And I'll deal with the Reuters situation.  They're

8    going to file an amended stipulation.

9          And in the Babel Street case, I'll give you a little

10   bit more time to file an answer, but I'll remand that case, the

11   Constella case, as I said I would.

12         Now, there's also just one final issue.  There's a

13   motion to seal that I really haven't studied in detail.  I'm a

14   little puzzled by it.

15         Does that relate mainly to the remand cases so that --

16   that was where all the discovery was.  I'm just not clear what

17   has to be sealed.  I mean, just -- is it really necessary to

18   seal anything here at this point?  We've talked about it here.

19   I know there 's always a little overreaction by corporations

20   and other things to keep everything secret, but these are

21   public proceedings.

22         MR. PARIKH:  Your Honor, I can address that.  I think

23   we really -- between what was sealed with the initial motions

24   and what was pared-down ultimately through a very long

25   meet-and-confer process, the items that sought to be sealed are

1  either very -- either highly proprietary or security-related

2  information.  So names of individuals, for example, who work

3  for Atlas who don't have any public persona anywhere and the

4  only reason their name is part of the record is because -- and

5  it's completely irrelevant to the remand motion, but the

6  defendants chose to include that entire page of the transcript

7  in their briefing.

8              THE COURT:  When you say "names" --

9              MR. PARIKH:  Certain individuals, Your Honor, that

10  have kept a very private persona, who have personal security

11  risks and other things like that.

12              THE COURT:  Are you talking about the officials of

13  Atlas?

14              MR. PARIKH:  Correct.  Well, not the officials, Your

15  Honor, but just regular employees of Atlas.  There are some

16  people that work for Atlas that have security concerns.  That's

17  just one example.

18              There are other examples, Your Honor, such as personal

19  information.  There are some other little things that are

20  redacted here and there.

21              The 30(b)(6) deposition which the defendants took is

22  very broad, even though it was supposed to be limited in scope

23  on jurisdictional issues.  They asked all kinds of questions.

24  We didn't object because we were trying to move things along.

25  And so what we've asked to be redacted are really just a very

1    de minimus number of things.  There's a chart that's part of

2    the motion, which is required by the local rule, that

3    identifies specifically what those things are.

4         My understanding from the defendants is that they do

5    not object to those, but reserve their ability in the future

6    that if they believe something should be unsealed for some

7    other future proceeding.

8         THE COURT:  But weren't those motions to seal in

9    connection with the remand?

10         MR. PARIKH:  They were, Your Honor.

11         THE COURT:  So now that the case has been remanded,

12    that's off the table as far as I'm concerned.  I mean, once I

13    remand the case, it's remanded, so there's nothing for me to

14    decide now.

15         I think the Reuters case is sort of in limbo at the

16    moment and there may be -- it may relate to that case.  But all

17    the others, it really is a moot point, isn't it, the motion to

18    seal?

19         MR. PARIKH:  I don't think it is, Your Honor,

20    respectfully, because those records still exist within the

21    court's docket and they will exist there.  Even though the case

22    has been remanded, the filings that the defendants made that

23    contained confidential and proprietary information will forever

24    remain on the electronic docket in federal court.

25         THE COURT:  They remain here even though they're being

 1   remanded?

 2        MR. PARIKH:  They do, Your Honor, on the ECF system.

 3   So on the electronic filing --

 4        THE COURT:  In the old days everything would have been

 5   sent back to the state court, all the paperwork --

 6        MR. PARIKH:  Right, the entire file would have been

 7   gone, but no longer.

 8        So that's why I think those continue to be relevant,

 9   Your Honor.  I think the parties did really meet and confer.

10   Thomson Reuters, for example, I think we had originally filed a

11   motion to seal, but I think we resolved all of those issues, so

12   I don't think there's a sealing issue there with respect to

13   that because we really did spend a lot of time to try to narrow

14   down what it was that was sought to be sealed.

15        THE COURT:  Mr. Stio?

16        MR. STIO:  Your Honor, the issue that we had, I think

17   during the meet and confer, is the motion they wanted to file

18   said "permanently seal," and we want to reserve the right at a

19   later stage to unseal it if we needed to.  And I think that

20   Mr. Parikh articulated that, but I just wanted to make that

21   clear that we're not saying you should seal this permanently

22   because we don't think --

23        THE COURT:  Yes, permanent is a very long time.

24        MR. PARIKH:  Well, Your Honor, respectfully to

25   Mr. Stio, you know, he's kind of saying two different things at

1    the same time.

2          He's saying that they reserve their right.  We already

3    agreed to that with them.  But those cases, as Your Honor

4    mentioned, they're not going to be before this Court anymore.

5    So any future issue with respect to whether something is

6    confidential and proprietary that was filed in this court or

7    not will be decided by state court -- right? -- will be decided

8    by a state court judge.

9          So what our position is and what our prospective has

10   been is that because the parties agreed, met and conferred,

11   went through the whole local Civil Rule 5.3 process, and we

12   believe we've met the standard for sealing this very limited

13   amount of information, that Your Honor can enter those orders

14   with respect to those sealing motions.  They've reserved their

15   rights, we've said it on the record, we've had it confirmed in

16   emails.

17         And if in state court, you know, a month down the road

18   they believe that one of those particular issues needs to not

19   be maintained as confidential under a discovery order that's

20   entered in state court, then we're happy to litigate those

21   issues or meet and confer and resolve them before the state

22   court.

23         MR. STIO:  Your Honor, again, they have to meet the

24   Pansy factors, and I don't want an order entered in this court

25   that says that it's permanently sealed.  Because they'll take

 1    that order and they'll go into state court and I can't unseal

 2    it.  I don't think the information that they have said is

 3    sealed -- and we took no position on it.  Actually, we may have

 4    said in the chart, I just don't have it in front of me, that we

 5    don't think it's sealed but we'll let the Court do what they

 6    want to do, is for some private information.

 7         I think the only document -- and I'm not even sure

 8    that it's attached, but to the extent it was, would be a

 9    spreadsheet of the covered persons, we would consent to that.

10         THE COURT:  All right.

11         MR. PARIKH:  Your Honor, if I could just go back to

12    just two other quick things.

13         THE COURT:  Sure.

14         MR. PARIKH:  One is with respect to -- and I think it

15    sounds like Your Honor is inclined to stay the cases, which is

16    fine.  I think what was very helpful previously in this case

17    was Your Honor setting some guardrails for us.

18         So if -- I think it would be helpful if Your Honor

19    gave the defendants a specific date within -- by which they can

20    confer within themselves to come up with what these different

21    buckets of motions are and which parties are going to be, you

22    know, dealing with those motions so that when we next come

23    before Your Honor, we have that information, instead of hearing

24    from the defendants again, as we've heard since May, that

25    they're working on it.  So that would be one request that I

1  would make.

2          The second, Your Honor, with respect to the

3  preliminary injunction that has been raised several times, you

4  know, the posture of this case, preliminary injunction would

5  require discovery to some extent.  And we had been moving

6  through this case, we had from day one said that the privacy,

7  safety, and security of the covered persons is of paramount

8  importance here.  The defendants have all agreed to that.

9          Why some defendants continue to publish information or

10  disclose information, we don't understand it.  We will -- and

11  we've said this before and I'll say it for the record today,

12  Your Honor -- be pursuing punitive damages for the

13  reckless, willful disregard of these notices that were served

14  upon these defendants almost a year ago at this point.

15  But a certification, which we've requested, I think would go a

16  very, very long way towards resolving some of these issues in

17  the sense that if Atlas and the plaintiffs had comfort that all

18  of the defendants were taking all appropriate measures and all

19  reasonable measures to make sure that they are not disclosing

20  this information during the pendency of appeal, I think our

21  position would really change with respect to how these things

22  should move forward.  When we talk about what the defendants

23  are asking for in terms of, you know, what is a complete

24  blanket stay, and Mr. Stio has acknowledged it, that he'll come

25  back here again and ask for another extension of a stay and

1  another extension of a stay.

2       At a certain point, you know, the covered persons and

3  their rights here are going to really be oppressed by the fact

4  that the case is dragging on.  I'm not disagreeing with Your

5  Honor in terms of a short stay.  I just think that at a certain

6  point the stays are going to get very far afield with

7  defendants who have now spent several months doing briefing

8  before Your Honor.

9       We believe Your Honor's decision is spot on, we

10 believe the circuit will, if they adhere it, will uphold it and

11 that the cases should proceed as quickly as possible.

12 Either in the interim with things that can be done such as

13 personal jurisdiction discovery, that can happen while there is

14 a stay of the litigation, so to speak, and while an appeal is

15 pending, so that once the circuit court comes back and affirms

16 Your Honor's decision, these cases can move forward very

17 quickly.

18       THE COURT:  All right.  Is there anything else we need

19 to talk about today?

20       Anyone else have any --

21       MR. STIO:  No.  Thank you, Your Honor.

22       THE COURT:  -- issues that they wish to raise at this

23 point?

24       (No response.)

25       THE COURT:  All right.  Thank you very much.  We'll

1  enter the appropriate orders in due course.  And I wish

2  everyone a Merry Christmas or a happy holiday, as the case may

3  be.

4            THE COURTROOM DEPUTY:  All rise.

5            (Matter adjourned at 10:55 a.m.)

6

7

8       - - - - - - - - - - - - - - - -

9

10           I certify that the foregoing is a correct transcript

11  from the record of proceedings in the above-entitled matter.

12

13  */S/ Sharon Ricci, RMR, CRR*
    *Official Court Reporter*

14

15  *December 10, 2024*
        *Date*

16

17

18

19

20

21

22

23

24

25