Robert T. Szyba
Max A. Scharf
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendants Infomatics, LLC,*
*The People Searchers, LLC, and We Inform, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br>WE INFORM, LLC, et al.,<br>　　　　　Defendants. | Civil Action No.: 1:24-cv-04037-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br>INFOMATICS, LLC, et al.<br>　　　　　Defendants. | Civil Action No.: 2:24-cv-04041-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br>THE PEOPLE SEARCHERS, LLC, et al.,<br>　　　　　Defendants. | Civil Action No.: 2:24-cv-04045-HB |

## DEFENDANTS' SUPPORTING BRIEF IN SUPPORT OF THEIR MOTIONS TO DISMISS THE COMPLAINTS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND..................................................................3

I.      Defendants Have Extremely Limited Contact, If Any, with New Jersey. ......3

II.     Defendants' Customers and Products Are Almost Entirely Outside of New Jersey. ..................................................................4

III.    Defendants Publish Information Created By Third-Party Sources, Not Created By Themselves. ...........................................5

PROCEDURAL BACKGROUND..........................................................6

LEGAL ARGUMENT ...........................................................................8

I.      The Court Lacks Personal Jurisdiction Over the Defendants.........................9

   A.   The Court Lacks General Personal Jurisdiction Over the Defendants............9

   B.   The Court Lacks Specific Personal Jurisdiction Over the Defendants. ........11

II.     The Complaint Fails to State a Claim...........................................14

   A.   The Complaint Fails to State a Claim Because Daniel's Law Does Not Apply Extraterritorially. ...............................................14

   B.   The Complaint Fails to State a Claim Because Plaintiffs' Claims Are Barred By the Communications Decency Act. ........................................18

CONCLUSION .....................................................................................21

316780884v.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrams v. eResearch Tech., Inc.*,
   703 F. Supp. 3d 593 (E.D. Pa. 2023) ............................................................2, 14

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ........................................................................17

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003) ...............................................................................15

*American Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) .....................................................................6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)........................................................................................8

*Backpage.com, LLC v. Hoffman*,
   No. 13-cv-3952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013)............................18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................8, 16

*Brand Strategy v. CAC Projects*,
   No. 23-cv-748, 2023 WL 4688086 (D.N.J. July 5, 2023)..................................10

*D'Agostino v. Johnson & Johnson*,
   133 N.J. 516 (1993) ..........................................................................................14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................9

*Dennis v. MyLife.Com, Inc.*,
   No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) ................... 2, 18 - 21

*Dimeo v. Max*,
   248 F. App'x 280 (3d Cir. 2007) ......................................................................20

*Echavarria v. Williams Sonoma, Inc.*,
   No. 15-cv-6441, 2016 WL 1047225 (D.N.J. Mar. 16, 2016)............................16

iii

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021).............................................................................9

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...............................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).............................................................................9

*Green v. Am. Online*,
    318 F.3d 465 (3d Cir. 2003) .............................................................20

*Griggs v. Swift Transp. Co.*,
    No. 17-cv-13480, 2018 WL 3966304 (D.N.J. Aug. 17, 2018)............9

*Hankins v. Doubletree Mgmt., LLC,*
    No. 19-cv-8698, 2022 WL 3013089 (D.N.J. July 29, 2022) .......11, 12

*Hannah v. Johnson & Johnson Inc.*,
    No. 18-cv-10319, 2020 WL 3497010 (D.N.J. June 29, 2020) ............9

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...........................................................................12

*Hurley v. Cancun Playa Oasis Int'l*,
    No. 99-cv-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999)............11

*Lohr v. Kimmel & Silverman, P.C.*,
    No. 10-5857, 2011 WL 1603567 (E.D. Pa. Apr. 28, 2011) ............7, 8

*M.H. & J.H. v. Omegle.com, LLC*,
    No. 20-cv-11294-KM-JBC, 2021 WL 1050234
    (D.N.J. Mar. 19, 2021)......................................................................11

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ............................................................7, 8

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ..............................................................7, 8

*Munenzon v. Peters Advisors, LLC*,
    553 F. Supp. 3d 187 (D.N.J. 2021)...................................................14

iv

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) ...............................................................13

*Obado v. Magedson*,
    No. 13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) .....................19, 20

*Oyebanji v. Palmetto Vacation Rentals LLC*,
    No. 20-cv-8983, 2021 WL 3732883 (D.N.J. Aug. 20, 2021) ............................12

*Paczkowski v. Hyatt Corp.*,
    No. 20-cv-10821, 2021 WL 3076963 (D.N.J. July 21, 2021) ...........................13

*Peikin v. Kimmel & Silverman, P.C.*,
    576 F. Supp. 2d 654 (D.N.J. Aug. 21, 2008) ....................................................14

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .................................................................8

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ..................................................................8

*Psinet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) .................................................................15

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) .........................................................1, 11

*Rivera v. Loto Grp., LLC*,
    No. 20-cv-4062, 2020 WL 7384720 (D.N.J. Dec. 16, 2020) ........................9,10

*Rybasack v. Travelers Ins. Co.*,
    190 A. 308 (1937) .................................................................................15

*Saponaro v. Grindr, LLC*,
    93 F. Supp. 3d 319 (D.N.J. 2015) .......................................................18

*State v. Sumulikoski*,
    221 N.J. 93 (2015) ..............................................................................14

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ................................................................11

*Umland v. Planco Fin. Servs., Inc.*,
    542 F.3d 59 (3d Cir. 2008) ....................................................................8

v

*Weerahandi v. Shelesh*,
    No. 16-cv-6131, 2017 WL 4330365 (D.N.J. Sept. 29, 2017) ............................19

**Statutes**

Communications Decency Act of 1996, 47 U.S.C. § 230 ........................... 2, 17 - 21

Daniel's Law, N.J.S.A. 47:1A-1, *et seq.*.........................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ........................................................7, 8, 21

Federal Rule of Civil Procedure 12(b)(6) .........................................8, 14, 16, 17, 21

316780884v.1

Defendants We Inform, LLC ("We Inform"), Infomatics, LLC ("Infomatics"), and The People Searchers, LLC ("The People Searchers") respectfully submit this Supporting Brief in support of their Motions to Dismiss the Complaints against them (the "Complaints").[1]

## **INTRODUCTION**

Plaintiffs assert claims under New Jersey state law against We Inform and The People Searchers (Florida LLCs with no New Jersey office or employees) and Infomatics (California LLC with no New Jersey office or employees). Plaintiffs' claims are premised solely on Defendants' alleged publication of third parties' information on the Internet (namely, home addresses and phone numbers) in purported violation of Daniel's Law, N.J.S.A. 47:1A-1, *et seq.* They do not allege that Defendants created the information at issue, or that Defendants actually engaged in any conduct in the state of New Jersey. For multiple reasons, Plaintiffs' claims fail and should be dismissed.

*First*, the Court lacks personal jurisdiction over these out-of-state defendants. None of the Defendants are organized in New Jersey, headquartered in New Jersey,

---

[1]    Additionally, We Inform, Infomatics, and The People Searchers join in the Consolidated Motion to Dismiss Pursuant to Rule 12(b)(6) which was filed today under ECF No. 59 in the action captioned as *Atlas Data Privacy Corporation, et al. v. DM Group, Inc., et al.*, Civil Action No. 1:24-cv-04075-HB (the "Consolidated Rule 12(b)(6) Motion"), and incorporate by reference herein the arguments made in the Consolidated Rule 12(b)(6) Motion.

316780884v.1

or have any other minimum contacts New Jersey.  Plaintiffs allege that Defendants posted information about New Jersey residents who are "covered" under Daniel's Law on the Internet.  But those allegations do not come close to establishing personal jurisdiction.  *Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d Cir. 2001) ("[T]he mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction.").    Rather, Plaintiffs must allege that the Defendants purposefully targeted New Jersey residents, and they failed to do so.

**Second**, Daniel's Law cannot apply to the Defendants' actions, which were entirely outside of New Jersey.  As a New Jersey state statute, it does not apply to conduct nationwide and around the world.  *See Abrams v. eResearch Tech., Inc.*, 703 F. Supp. 3d 593, 600 (E.D. Pa. 2023) ("New Jersey law does not regulate conduct outside the state . . . The fact that [plaintiff] might have lived in New Jersey does not change that analysis.").

**Third**, Defendants' alleged publication on the Internet of phone numbers and home address information of others is protected by federal law.  Section 230 of the Communications Decency Act of 1996 (the "CDA") "create[es] federal immunity for service providers against any claims that seek to hold them liable for publishing information on the Internet that originates from third parties."    *Dennis v. MyLife.Com, Inc.*, No. 20-cv-954, 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021). Even accepting Plaintiffs' allegations as true, they are attempting to hold Defendants

liable for publishing the information of third-parties on the Internet, which is protected by the CDA.

For all these reasons, the Court should dismiss the Complaints for lack of personal jurisdiction. Alternatively, the Court should dismiss the Complaints for failure to state a claim upon which relief may be granted.

## FACTUAL BACKGROUND

### I.    Defendants Have Extremely Limited Contact, If Any, with New Jersey.

Plaintiffs allege that each Defendant "discloses or re-discloses on the Internet . . . the home addresses and/or unpublished home telephone of covered persons." *See* Compl. ¶ 36. But the mere allegation that Defendants disclose information regarding covered persons "on the Internet," standing alone, is insufficient to confer personal jurisdiction in the state of New Jersey.

In reality, Defendants' contacts with New Jersey, if any, are nowhere near sufficient for personal jurisdiction to be appropriate in this State. None of the Defendants are organized in New Jersey.[2]   We Inform and The People Searchers are organized in Florida, and Infomatics is organized in California. (*See* We Inform Decl. ¶ 4; Infomatics Decl. ¶ 4.) None of them are registered to do business in

---

[2]    Citations to "We Inform Decl." refer to the Declaration of Mark Chin in the matter filed against We Inform, "People Searchers Decl." refer to the Declaration of Mark Chin in the matter filed against The People Searchers, and "Infomatics Decl." refer to the Declaration of Kwan Woo Park in the matter filed against Infomatics.

3

New Jersey. (*See* We Inform Decl. ¶¶ 4-11; Infomatics Decl. ¶¶ 4-11.) We Inform and The People Searchers are registered in Florida and Oregon. (We Inform Decl. ¶ 4; People Searchers Decl. ¶ 4.) Infomatics is registered in Oregon and California. (Infomatics Decl. ¶ 4.) None of them are headquartered in New Jersey. (We Inform Decl. ¶ 6; People Searchers Decl. ¶ 6; Infomatics Decl. ¶ 6.) None of the them have an office in New Jersey. (We Inform Decl. ¶ 7; People Searchers Decl. ¶ 7; Infomatics Decl. ¶ 7.) None of them have any real property in New Jersey. (We Inform Decl. ¶ 8; People Searchers Decl. ¶ 8; Infomatics Decl. ¶ 8.) None of them have any employees who work or reside in New Jersey. (We Inform Decl. ¶¶ 9-10; People Searchers Decl. ¶¶ 9-10; Infomatics Decl. ¶¶ 9-10.) None of them offer products specifically designed for New Jersey residents. (We Inform Decl. ¶ 11; People Searchers Decl. ¶ 11; Infomatics Decl. ¶ 11.)

## II.    Defendants' Customers and Products Are Almost Entirely Outside of New Jersey.

Each of the Defendants searches public records in order to provide comprehensive reports on millions of individuals across the country—their reports are not specifically directed to New Jersey customers. (We Inform Decl. ¶ 3; People Searchers Decl. ¶ 3; Infomatics Decl. ¶ 3.) Rather, the customers who purchase Defendants' reports are almost entirely ***outside of New Jersey***. [3]

---

[3]    The information provided in this Section II is accurate as of December 23, 2024.

We Inform has provided reports to 23,286 customers, only 302 (approximately 1.3%) of which reside in New Jersey. (We Inform Decl. ¶ 12.) The People Searchers has provided reports to 332,271 customers, only 3,958 (approximately 1.2%) of which reside in New Jersey. (People Searchers Decl. ¶ 12.) Infomatics has provided reports to 447,519 customers, only 6,082 (approximately 1.4%) of which reside in New Jersey. (Infomatics Decl. ¶ 12.)

Similarly, the individuals who are identified in the Defendants' comprehensive reports are located almost entirely *outside of New Jersey*. We Inform offers the reports of 42,065,494 individuals, only 305,193 (approximately 0.7%) of which reside in New Jersey. (We Inform Decl. ¶ 13.) The People Searchers offers the reports of 60,222,137 individuals, only 789,361 (approximately 1.3%) of which reside in New Jersey. (People Searchers Decl. ¶ 13.) Infomatics offers the reports of 126,178,680 individuals, only 1,442,660 (approximately 1.1%) of which reside in New Jersey. (Infomatics Decl. ¶ 13.)

## III.  Defendants Publish Information Created By Third-Party Sources, Not Created By Themselves.

All of the information in the reports offered by Defendants originated from third parties (*i.e.*, the above-referenced public records)—this is confirmed by the Defendants' websites. The People Searchers' website provides: "[W]e collect Publicly Available Information from various databases, government entities, commercial data providers, and websites to create our reports and provide our Site."

5

*Your Privacy Rights*, PEOPLE SEARCHERS, https://www.peoplesearcher.com/privacy.

We Inform's website provides the same information: "[W]e collect Publicly

Available Information . . . to create our reports and provide our Site." *Your Privacy*

*Rights*, WE INFORM, https://www.weinform.org/privacy_and_policy.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Complaints against Infomatics and The People Searchers

on February 8, 2024, and against We Inform on February 23, 2024.  Each Complaint

asserts only one cause of action—*i.e.*, an alleged violation of Daniel's Law.

Defendants timely removed the Complaints to this Court on March 30, 2024.

*See* ECF No. 1.[4]

On April 2, 2024, the United States Court of Appeals for the Third Circuit

designated and assigned the Honorable Harvey Bartle, III, U.S.D.J., to 37 civil

actions filed by Plaintiffs seeking relief pursuant to Daniel's Law, including

Plaintiffs' actions against Infomatics, The People Searchers, and We Inform.

ECF No. 5.  On April 18, 2024, the Court directed Plaintiffs to file any motions to

remand on or before May 3, 2024.  ECF No. 10.  Plaintiffs did not move to remand

the actions against Defendants Infomatics, The People Searchers, or We Inform.

---

[4]     Unless stated otherwise, citations to "ECF No. __" refer to the ECF entries in
*Atlas Data Privacy Corp. v. The People Searchers*, No. 24-cv-4045-HB (D.N.J.)
(the "People Searchers Action"), and citations to "Compl. __" refer to the Complaint
in the People Searchers Action.

316780884v.1

On May 8, 2024, the Court directed the Defendants to file "any motions to dismiss on the ground that Daniel's Law is unconstitutional on its face." ECF No. 14 at p. 15 (internal citations omitted). The Defendants filed such a motion on June 10, 2024. *See, e.g.*, *Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*, No. 24-cv-4105, ECF No. 27 (D.N.J. June 10, 2024). On November 26, 2024, the Court denied the Defendants' aforementioned motion to dismiss. ECF No. 31. On December 2, 2024, the Court ruled that "its Order dated November 26, 2024 involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." ECF No. 32 at p. 8. On December 12, 2024, given the Court's certification of an "immediate appeal," Defendants appealed the Court's above-referenced denial of its motion to dismiss on the ground that Daniel's Law is unconstitutional to the U.S. Court of Appeals for the Third Circuit. *See Atlas Data Privacy Corp. v. We Inform*, Case No. 24-8047 (3d Cir.). The appeal is currently pending in the Third Circuit.

On January 22, 2025, this Court directed Defendants to file "any pre-trial motions with supporting briefs" on or before March 18, 2025. ECF No. 39 at p. 9. Accordingly, Defendants now move to dismiss the action for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.

## LEGAL ARGUMENT

The Honorable Harvey Bartle, III, U.S.D.J., set forth the legal standards governing motions to dismiss based on personal jurisdiction and failure to state a claim in *Lohr v. Kimmel & Silverman, P.C.*, as follows:

> When a defendant moves to dismiss a claim under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists. *See Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). At this stage the plaintiff must establish only "a prima facie case of personal jurisdiction" and is entitled to have her allegations taken as true and all factual disputes drawn in her favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nonetheless, the plaintiff must allege "specific facts" rather than vague or conclusory assertions. *Marten*, 499 F.3d at 298.

*        *        *

> Similarly, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim must do more than raise a "mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. On a motion to dismiss, a court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)).

*Lohr v. Kimmel & Silverman, P.C.*, No. 10-cv-5857, 2011 WL 1603567, at *1 (E.D. Pa. Apr. 28, 2011) (Bartle, J.).  Pursuant to Federal Rule 12(b)(2), in view of Defendants' extremely limited (if any) contacts with the forum state, the Court should dismiss the Complaints for lack of personal jurisdiction.  Should the Court not dismiss the Complaints based on lack of jurisdiction, it should conclude that Plaintiffs have failed to state a claim under Federal Rule 12(b)(6).

## I.    The Court Lacks Personal Jurisdiction Over the Defendants.

Personal jurisdiction over a defendant may be established through general or specific jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### A.    The Court Lacks General Personal Jurisdiction Over the Defendants.

General jurisdiction arises over a corporate defendant only in "its place of incorporation and principal place of business," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021), and, in "exceptional" cases, in jurisdictions where its activities are "so continuous and systematic as to render it essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (internal quotations omitted).  "Courts have applied the *Daimler* rules to limited liability companies with equal force." *Griggs v. Swift Transp. Co.*, No. 17-cv-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018) (internal quotations omitted).  As a result, "for the purposes of general personal jurisdiction, a limited liability

company's citizenship is that of its principal place of business and state of formation." *Rivera v. Loto Grp., LLC*, No. 20-cv-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020) (citing *Hannah v. Johnson & Johnson Inc.*, No. 18-cv-10319, 2020 WL 3497010, at *16 (D.N.J. June 29, 2020)). For example in *Rivera*, the District of New Jersey lacked personal jurisdiction over the defendant-LLC because "Defendant is organized as an LLC under the laws of Pennsylvania and maintains its principal place of business in Pennsylvania"; therefore, "[it] is a citizen of Pennsylvania." *Rivera*, 2020 WL 7384720, at *1-2.

In this case, none of the Defendants are even remotely close to being "at home" in New Jersey. *See id.* They are neither organized under the laws of New Jersey, nor do they have any principal places of business in New Jersey. We Inform and The People Searchers are organized under Florida law and headquartered in Florida, and Infomatics is organized under California law and headquartered in California.

This is also not an "exceptional" case in which any Defendant has "continuous and systematic" contacts with the forum state. The Defendants have no offices, employees, or real property in New Jersey, and none of them are registered to do business in New Jersey. *See, e.g.*, *Brand Strategy v. CAC Projects*, No. 23-cv-748, 2023 WL 4688086, at *4 (D.N.J. July 5, 2023) ("the evidence of record falls far short of establishing general jurisdiction . . . [defendant] does not maintain an office in New Jersey or have any New Jersey employees").

10

Accordingly, the Court lacks general personal jurisdiction over the Defendants and this case should be dismissed against them.

B.    The Court Lacks Specific Personal Jurisdiction Over the Defendants.

While the Defendants operate websites which are accessible in New Jersey (as well as the rest of the world), that does not come close to establishing specific jurisdiction in this state.

Mere operation of a web site "should not subject the operator to [specific] jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003).  "[T]he mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction."  *Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d Cir. 2001).  Further, "a basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website targeted those users."  *M.H. & J.H. v. Omegle.com, LLC*, No. 20-cv-11294-KM-JBC, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021).

District judges in the Third Circuit, including the Honorable Judge Bartle, have consistently declined jurisdiction based on website activity that is not ***purposefully targeted at the forum state***.  *See, e.g.*, *Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999) (Bartle, J.)

11

(concluding Pennsylvania lacked jurisdiction because there was no evidence "[defendant's] Web page was directed at Pennsylvania more than any other state"); *see also, e.g.*, *Omegle.com*, 2021 WL 1050234, at *3 (concluding New Jersey lacked jurisdiction because plaintiffs "do not allege anything about [defendant's] website that is New Jersey-specific"); *Hankins v. Doubletree Mgmt., LLC*, No. 19-cv-8698, 2022 WL 3013089, at *4 (D.N.J. July 29, 2022) (concluding New Jersey lacked jurisdiction because there was no evidence defendant was "directly targeting its web site to the [forum] state"); *Oyebanji v. Palmetto Vacation Rentals LLC*, No. 20-cv-8983, 2021 WL 3732883, at *3 (D.N.J. Aug. 20, 2021) ("absent evidence that [defendant] targeted its advertising efforts at New Jersey in particular, specific jurisdiction will not lie") (collecting cases).  For example, in *Hankins v. Doubletree Management*, the District of New Jersey lacked specific jurisdiction over Doubletree By Hilton notwithstanding that its website accepted hotel bookings from New Jersey residents.  *See Doubletree,* 2022 WL 3013089, at *4 (D.N.J. July 29, 2022).  The court explained that Doubletree's website did not purposefully avail itself of the forum state because it "***does not appear to have specifically targeted New Jersey customers***." *Id*. (emphasis added).

The rule that a defendant must purposefully target the forum state is not new. Courts recognized this rule long before the Internet existed—*e.g.*, a New Jersey resident cannot order products by mail, telephone, or otherwise, and then attempt to

hale a nonresident defendant for suit in New Jersey based on their own unilateral conduct. The United States Supreme Court made that clear in *Hanson v. Denckla*, explaining that: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Rather, what is necessary (and completely absent here) is a deliberate targeting of the forum state <u>by the defendant</u>. *Id*. (requiring that "defendant purposefully avails itself of . . . the forum State"); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) ("what is necessary is a ***<u>deliberate targeting</u>*** of the forum") (emphasis added).

In this case, as in *Doubletree* and the abundant case law cited above, Defendants operate websites outside of New Jersey, and they never purposefully availed themselves of the forum state. None of the Defendants offer products specifically designed for New Jersey residents. Indeed, ***<u>99% of the customers</u>*** for each of the Defendants are located ***<u>outside of New Jersey</u>***. Similarly, ***<u>99% of the information provided</u>*** on Defendants' websites is related to individuals located ***<u>outside of New Jersey</u>***. *See, e.g.*, *Paczkowski v. Hyatt Corp.*, No. 20-cv-10821, 2021 WL 3076963, at *5 (D.N.J. July 21, 2021) ("mere operation of a website should not subject the operator to jurisdiction anywhere in the world unless there is evidence that the defendant" was "directly targeting residents in New Jersey").

13

Clearly, for these reasons, it is not appropriate for Plaintiffs to sue Defendants in New Jersey. Defendants are citizens of California and Florida, and they have not purposefully targeted the forum state in any way. This action should be dismissed for lack of personal jurisdiction.

## II.    **The Complaint Fails to State a Claim**

If the Court reaches the merits of Plaintiffs' Complaints, it should dismiss the Complaints with prejudice because Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) for two independent reasons: (i) Daniel's Law does not apply extraterritorially, outside the borders of New Jersey, to the Defendants in California and Florida; and, (ii) as Internet providers of third-party information, Defendants' actions are protected by federal law, *i.e.*, Section 230 of the CDA.

### A.    The Complaint Fails to State a Claim Because Daniel's Law Does Not Apply Extraterritorially.

Plaintiffs fail to state a claim under Daniel's Law, a New Jersey statute, because their claims are based on conduct outside New Jersey.

There is a "well-settled understanding that New Jersey law regulates conduct in New Jersey, not outside the state." *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657-58 (D.N.J. Aug. 21, 2008). The rule that New Jersey law only applies to conduct within the state has been consistently applied by New Jersey state and federal courts. *See, e.g.*, *D'Agostino v. Johnson & Johnson*, 133 N.J. 516, 539 (1993) ("New Jersey law does not regulate conduct outside the state. Rather, New

14

Jersey law regulates conduct in New Jersey"); *State v. Sumulikoski*, 221 N.J. 93, 111 (2015) (defendants' conduct in Germany is outside "territorial jurisdiction" of New Jersey law); *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 200 (D.N.J. 2021) ("extraterritorial application of the [New Jersey Wage Payment Law] and [New Jersey Wage and Hour Law] to Illinois employees would violate state policy"); *see also, e.g.*, *Abrams v. eResearch Tech., Inc.*, 703 F. Supp. 3d 593, 600 (E.D. Pa. 2023) ("New Jersey law does not regulate conduct outside the state . . . The fact that [plaintiff] might have lived in New Jersey does not change that analysis.").

Plaintiffs' construction of the statute, without a territorial limit, would require courts to apply Daniel's Law to anyone who posts on the Internet—regardless of where that individual resides in (or even outside of) the United States.  That is an absurd reading, and the New Jersey Supreme Court has recognized as much: "It is unusual for a legislature to intend that its statutes shall apply over the whole world." *See Rybasack v. Travelers Ins. Co.*, 190 A. 308, 310 (1937).  "It is so unusual for a legislature to intend that its acts shall have such world-wide effect that ***courts are never justified in putting such construction upon them***, if their language admits of any other reasonable interpretation."  *Id.* (emphasis added).

Courts in other jurisdictions, too, have recognized that state laws should not be construed to apply to all conduct on the Internet worldwide—and for good reason, as worldwide regulation of the Internet by individual states would lead to a jumbled

assortment of inconsistent legal obligations. *See, e.g.*, *PSINet, Inc. v. Chapman*, 362 F.3d 227, 234 (4th Cir. 2004) ("Attempting to localize Internet regulation is extremely problematic because the Internet by its nature has no local areas") (internal quotations omitted); *Am. Booksellers Found. v. Dean,* 342 F.3d 96, 104 (2d Cir. 2003) (holding Vermont law cannot restrict Internet posts in other states, and observing "the internet's geographic reach . . . makes state regulation impracticable"); *American Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168 (S.D.N.Y. 1997) (concluding New York Law cannot restrict Internet posts in other states, as "[t]he unique nature of the Internet highlights the likelihood that a single actor might be subject to haphazard, uncoordinated, and even outright inconsistent regulation by states").

In this case, Plaintiffs fail to identify ***any*** conduct by ***any*** of the Defendants within the borders of the state of New Jersey. *See Echavarria v. Williams Sonoma, Inc.*, No. 15-cv-6441, 2016 WL 1047225, at *9 (D.N.J. Mar. 16, 2016) ("New Jersey law does not apply beyond its borders"). They do not allege that the Defendants, while in New Jersey, disclosed the information of any covered persons.[5]  Nor can

---

[5]    The Complaints also do not allege that the Defendants disclosed the information of covered persons at all, whether within the state of New Jersey or otherwise.  Disclosure of covered persons' information is an essential element of a claim under Daniel's Law.  *See* N.J.S.A. 56:8-166.1 (defendant "shall not disclose or re-disclose on the Internet or otherwise make available, the [information] of any covered person").  The Complaints do not contain any specific factual allegations regarding the Defendants' supposed "disclosure" of the covered persons'

they.  All of the Defendants are organized, headquartered, and registered to do business outside New Jersey.  Moreover, none of the Defendants' employees work or reside in New Jersey.  Therefore, Plaintiffs attempt to allege that Defendants engaged in conduct which Daniel's Law does not prohibit—*i.e.*, conduct which occurred entirely outside of the state.[6]

---

information—*e.g.*, there are no facts about where, when, or how the supposed disclosure took place.  Rather, Plaintiffs just repeat *ad nauseum* the boilerplate statement that Defendants made a "disclosure or redisclosure on the Internet or the otherwise [sic] making available of protected information."  *See, e.g.*, Compl. ¶ 28, *Atlas Data Privacy Corp. v. We Inform*, No. 24-cv-4037; *id.* ¶ 53 (defendant engaged in "disclosure or re-disclosure on the Internet or the otherwise [sic] making available"); *id.* ¶ 61 (defendant engaged in "disclosure or re-disclosure on the Internet or the otherwise [sic] making available").

Plaintiffs' conclusory allegations are insufficient to pass muster under Federal Rule 12(b)(6).  *See Twombly*, 550 U.S. at 570 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient).  For this reason, too, Plaintiffs' claims should be dismissed.

[6]    Due to the boundary-less nature of Internet, courts have held it may not even be possible to construe state laws, like Daniel's Law, to apply only to intrastate activity.  Such state laws have been struck down based on the Dormant Commerce Clause of the United States Constitution.  *See, e.g.*, *ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) (striking down New Mexico statute which purported to regulate Internet communications, and explaining the statute "cannot effectively be limited to purely intrastate communications over the Internet because no such communications exist").  While Defendants argue that Daniel's Law should not apply outside of New Jersey, they do not concede that Daniel's Law could be applied to Internet communications of any nature (whether posted on the Internet by New Jersey residents or otherwise).

17

B.    <u>The Complaint Fails to State a Claim Because Plaintiffs' Claims Are Barred By the Communications Decency Act.</u>

Lastly, Plaintiffs are attempting to regulate a defendant's publication of third-party information on the Internet.  Under Section 230 of the CDA, Plaintiffs are barred from doing so.  For this reason, too, Plaintiffs' claims should be dismissed.

Section 230 of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."   47 U.S.C. § 230(c)(1). The CDA preempts any state law to the contrary. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent" with the CDA).  "Courts have interpreted [the CDA's] language . . . as creating federal immunity for service providers against ___any___ claims that seek to hold them liable for publishing information on the internet that originates from third parties." *Dennis v. MyLife.Com, Inc.*, No. 20-cv-954, 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021) (emphasis added); *see also Backpage.com, LLC v. Hoffman*, No. 13-cv-3952, 2013 WL 4502097, at *6 (D.N.J. Aug. 20, 2013) ("[W]hat matters is not the name of the cause of action . . . [but] whether [it] inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.") (internal citations omitted).

Courts, including the District of New Jersey, have concluded that the immunity conferred by the CDA should be broadly construed.  *See MyLife.Com, Inc.*,

18

2021 WL 6049830, at *7 (holding that the CDA "immunizes Defendant from Plaintiffs' claims . . . as each claim seeks to hold Defendant liable for publishing information on its website that originated from third parties"); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 325 (D.N.J. 2015) ("[T]he CDA manifests a Congressional policy supporting broad immunity."); *Weerahandi v. Shelesh*, No. 16-cv-6131, 2017 WL 4330365, at *6 (D.N.J. Sept. 29, 2017) ("Congress conferred broad immunity upon Internet companies by enacting the CDA").

Courts apply a three-prong test for CDA immunity. First, "the defendant must be a provider or user of an interactive computer service." *Obado v. Magedson*, No. 13-cv-2382, 2014 WL 3778261, at *3 (D.N.J. July 31, 2014). Second, "the asserted claims must treat the defendant as a publisher or speaker of information." *Id.* Third, "the challenged communication must be information provided by another information content provider." *Id.* All three factors exist here.

**_The Defendants Are Service Providers_**. First, consistent with the CDA's definition of an "interactive computer service," each Defendant is an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet[.]" 47 U.S.C. § 230(f)(2). Plaintiffs do not dispute that Defendants are interactive computer services. For example,

Plaintiffs repeatedly state that each Defendant "discloses or re-discloses [information] on the Internet." *See, e.g.*, Compl. ¶¶ 36, 45, 36, 62.

*__The Defendants Are Publishers of Information__*. Second, Plaintiffs' claims undeniably treat each Defendant as a "publisher or speaker of information." *See Obado*, 2014 WL 3778261, at *4. Indeed, Plaintiffs' entire theory relies on Defendants' deciding to publish and not withdraw the information of covered persons. For example, they allege that "Defendants did not cease the disclosure" of the protected information, in violation of Daniel's Law. *See* Compl. ¶ 60. It is well settled that "deciding whether to publish [or] withdraw" are the "traditional" functions of a publisher. *See, e.g.*, *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003).

*__The Challenged Communication Originated From Others__*. The final element is satisfied because "the challenged communication [is] information provided by another information content provider." *Obado*, 2014 WL 3778261, at *3. Tellingly, Plaintiffs do not allege that any of the Defendants "authored the [content] on the website or that [any Defendant] is an information content provider." *Dimeo v. Max*, 248 F. App'x 280, 282 (3d Cir. 2007). Rather, as discussed above, Defendants' websites make it clear that they collect their information from third parties, *i.e.*, publicly available sources. *See, e.g.*, *Your Privacy Rights*, WE INFORM, https://www.weinform.org/privacy_and_policy ("[W]e collect

20

Publicly Available Information . . . to create our reports and provide our Site."). Notably, the District of New Jersey directly addressed this issue in *MyLife.com*. In that case, the court held that publication of "personal information" which was "gathered from third parties," such as the plaintiffs' "property records" and "contact information," was protected by the CDA. *MyLife.com*, 2021 WL 6049830, at *1.

Furthermore, by definition, the challenged information could not have been "originated" by the Defendants. *See MyLife.com*, 2021 WL 6049830, at *5. The Defendants did not "originate" the telephone number or home address of any covered persons, *i.e.*, the challenged information at issue. Plaintiffs do not allege otherwise, as the crux of their case is that Defendants are disclosing Plaintiffs' own information. Stated differently, Plaintiffs allege that Defendants are doing ***exactly what the CDA protects***—namely, passing along accurate information created by others. *See id*. ("the third requirement is met as Plaintiffs admittedly seek to hold Defendant liable for information created by third parties"). Accordingly, Plaintiffs' Complaints should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaints against the Defendants for lack of personal jurisdiction under Federal Rule 12(b)(2) or, in the alternative, it should dismiss the Complaints for failure to state a claim under Federal Rule 12(b)(6).

316780884v.1

Dated: March 18, 2025          SEYFARTH SHAW LLP


By: */s/ Robert T. Szyba*
    Robert T. Szyba
    Max A. Scharf
    SEYFARTH SHAW LLP
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    rszyba@seyfarth.com
    mscharf@seyfarth.com

*Attorneys for Defendants We Inform, LLC,*
*Infomatics, LLC, & The People Searchers, LLC*

316780884v.1