# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br>         Plaintiffs, <br>   v. <br> INFOMATICS, LLC, et al., <br>         Defendants. | Civil Action No.: 1:24-cv-04041-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>         Plaintiffs, <br>   v. <br> THE PEOPLE SEARCHERS, LLC, et al. <br>         Defendants. | Civil Action No.: 2:24-cv-04045-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>         Plaintiffs, <br>   v. <br> WE INFORM, LLC, et al., <br>         Defendants. | Civil Action No.: 2:24-cv-04037-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br>         Plaintiffs, <br>   v. <br> SMARTY, LLC, et al., <br>         Defendants. | Civil Action No.: 2:24-cv-08075-HB |

**DEFENDANTS' CONSOLIDATED REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS BASED ON EXTRATERRITORIALITY AND COMMUNICATIONS DECENCY ACT**

| | |
|---|---|
| Robert T. Szyba <br> Max A. Scharf <br> SEYFARTH SHAW <br> 620 Eighth Avenue, 32nd Floor <br> New York, New York 10018 <br> (212) 218-5500 <br><br> *Attorneys for Defendants Infomatics, LLC, The People Searchers, LLC, and We Inform, LLC* | Kenneth D. Friedman <br> Matthew F. Bruno <br> Brandon P. Reilly (*pro hac vice*) <br> MANATT, PHELPS & PHILLIPS <br> 7 Times Square <br> New York, New York 10036 <br> (212) 790-4500 <br><br> *Attorneys for Defendants Smarty, LLC and SmartyStreets, LLC* |

318179786v.2

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

LEGAL ARGUMENT ...............................................................................................2

I.   The Complaint Fails to State a Claim Because Daniel's Law Does Not Apply Extraterritorially. ................................................................................2

II.  The CDA Bars Plaintiffs' Claims Against Defendants. ..................................6

III. The Complaint Should Be Dismissed With Prejudice ..................................10

CONCLUSION........................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. TikTok*,
   116 F.4th 180 (3d Cir. 2024) ................................................................................10

*Atlas, et al. v. Twilio, Inc., et al.*,
   MRS-L-000226-24 (N.J. Super. Ct. Law Div. Apr. 23, 2025) ............................10

*Buccilli v. Timby, Brown & Timby*,
   283 N.J. Super. 6 (1995) ........................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ................................................................................7

*Calabotta v. Phibro Animal Health Corp.*,
   460 N.J. Super. 38 (App. Div. 2019) .....................................................................3

*Callahan v. Ancestry.com Inc.*,
   2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ..........................................................9

*Dennis v. MyLife.Com.*,
   2021 WL 6049830 (D.N.J. Dec. 20, 2021) ..................................................2, 9, 10

*Divino Grp. LLC v. Google LLC*,
   2023 WL 218966 (N.D. Cal. Jan. 17, 2023) .........................................................9

*Foley v. IRBsearch, LLC*,
   2025 WL 950679 (S.D.N.Y. Mar. 28, 2025) .........................................................8

*Henderson v. Source for Pub. Data, L.P.*,
   53 F.4th 110 (4th Cir. 2022) ...............................................................................8, 9

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ...................................................................................7

*Mehlman v. Mobil Oil Corp.*,
   153 N.J. 163 (1998) ...............................................................................................3

*Moore v. Solanco Sch. Dist.*,
   471 F. Supp. 3d 640 (E.D. Pa. 2020) ...................................................................10

*Murawski v. Pataki*,
 514 F. Supp. 2d 577 (S.D.N.Y. 2007) ...................................................................................9

*Obado v. Magedson*,
 2014 WL 377826 (D.N.J. July 31, 2014) ..............................................................................7

*Parker v. Google, Inc.*,
 422 F. Supp. 2d 492 (E.D. Pa. 2006)....................................................................................9

*Ratermann v. Pierre Fabre USA*,
 651 F. Supp. 3d 657 (S.D.N.Y. 2023) ..................................................................................7

*Rybasack v. Travelers Insurance,*
 190 A. 308 (1937) .................................................................................................................4

*Schulman v. Zoetis, Inc.*,
 684 F. Supp. 3d 275 (D.N.J. 2023).......................................................................................3

*State v. Sumulikoski*,
 221 N.J. 93 (2015) .............................................................................................................4, 5

*Victaulic Co. v. Tieman*,
 499 F.3d 227 (3d Cir. 2008) .................................................................................................7

**Statutes**

Cal. Gov. Code § 6254.21......................................................................................................5

Colo. Rev. Stat. §18-9-313 ....................................................................................................5

Communications Decency Act of 1996, 47 U.S.C. § 230 ..........................................1, 2, 6 – 10

Daniel's Law, N.J.S.A. 47:1A-1, *et seq.*......................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6).....................................................................1, 2, 10

*Intellectual Property* Black's Law Dictionary (12th ed. 2024)................................................7

Defendants Infomatics, LLC, The People Searchers, LLC, We Inform, LLC, and Smarty, LLC and SmartyStreets, LLC respectfully submit this Consolidated Reply Brief in further support of their motions to dismiss based on extraterritoriality and Section 230 of the Communications Decency Act of 1996 (the "CDA").[1]

## INTRODUCTION

In their opening briefs, Defendants demonstrated that Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because: (i) Daniel's Law cannot apply to the Defendants' actions, which were entirely outside of New Jersey; and (ii) Defendants' alleged publication of phone numbers and home addresses of others is protected by the CDA.

Plaintiffs' brief in opposition (the "Opposition" or "Opp'n") fails to substantively respond to Defendants' arguments. For example, with respect to extraterritoriality, Plaintiffs ignore that they are requesting to apply New Jersey state-law to the conduct of out-of-state defendants which occurred outside the borders of New Jersey. They cite no statutory text or case law which supports their request for extraterritorial application of Daniel's Law (and there is none).

---

[1] Defendants join in and incorporate as if fully set forth herein the consolidated reply brief filed concurrently by Defendant DM Group Inc. in *Atlas Data Privacy Corporation v. DM Group, Inc.*, Civil Case No 1:24-cv-04075. *See* ECF No. 72. Smarty's joinder as to this consolidated reply is limited to arguments relating to the CDA and dismissal of the complaints with prejudice. *See infra* pp. 6 – 10.

1

Furthermore, Defendants explained in their Opening Briefs that the CDA applies in this case in the same way that it applied in *Dennis v. MyLife.Com*. *See* 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021) (Cecchi, J.). In *MyLife*, Judge Cecchi held that publication of "personal information" which was "gathered from third parties," such as the plaintiffs' "property records" and "contact information," was protected by the CDA. *See id*. at *5 (granting defendant's Rule 12(b)(6) motion to dismiss). Plaintiffs make no attempt to address or distinguish Judge Cecchi's ruling and, instead, rely on a host of irrelevant, out-of-circuit authorities regarding the CDA. Plaintiffs' inapposite, non-binding arguments regarding the CDA which, tellingly, they attempt to hide at the very end of their 52-page submission should be rejected.

For these reasons, and those set forth below, the Court should dismiss the Complaints for failure to state a claim upon which relief may be granted.

## LEGAL ARGUMENT

### I. The Complaint Fails to State a Claim Because Daniel's Law Does Not Apply Extraterritorially.

Plaintiffs argue that Daniel's Law should apply to Defendants' conduct outside of New Jersey for three reasons: (i) "no territorial limits apply" to this New Jersey statute; (ii) there is an exception to extraterritoriality for conduct ***anywhere in the world*** that "threatens the privacy and safety of [] New Jersey residents"; and

(iii) Daniel's Law can apply anywhere in the world because, according to Plaintiffs, "there is no risk of inconsistent legislation." These arguments are meritless.

***Daniel's Law Has Territorial Limits*.** Plaintiffs' contention that "no territorial limits" apply to Daniel's Law is unsupported by the statutory text or case law. Plaintiffs point to nothing in Daniel's Law which states that it applies all across the world. That is because there is no basis from the statutory text to conclude that New Jersey law is somehow affixed to all information at issue in this case, such that the information itself can travel globally all the while wearing a cloak of protection woven from the laws of New Jersey.

Further, all of the cases cited by Plaintiffs are inapposite. Their cited cases consistently involve either: (i) in-state defendants (*e.g.*, application of New Jersey law to New Jersey companies), or (ii) lawsuits based on contract disputes involving in-state contracting parties—none of these circumstances are remotely relevant here. *See, e.g.*, *Calabotta v. Phibro Animal Health Corp.*, 460 N.J. Super. 38, 69 (App. Div. 2019) (New Jersey law applied to failure-to-promote claim by Illinois resident because he was denied a position **in New Jersey** with **in-state defendant**); *Schulman v. Zoetis, Inc.*, 684 F. Supp. 3d 275, 286 (D.N.J. 2023) ("the New Jersey LAD can apply to out-of-New Jersey workers employed by **New Jersey-based companies**") (emphasis added); *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 165 (1998)

(New Jersey law "protects an employee from retaliatory action taken against him *in New Jersey* by his *New Jersey employer*") (emphasis added).

In the absence of any supportive statutory text or case law, Plaintiffs' overbroad interpretation of Daniel's Law should be rejected. Plaintiffs' interpretation seeks an absurd result: that New Jersey law regulates conduct of all entities in the entire country, entire continent, and hemisphere (and beyond). As the New Jersey Supreme Court explained in *Rybasack v. Travelers Insurance* (a case which Plaintiffs fail to cite), "[i]t is so unusual for a legislature to intend that its acts shall have such world-wide effect that ***courts are never justified in putting such construction upon them***, if their language admits of any other reasonable construction." *See Rybasack*, 190 A. 308, 310 (1937) (emphasis added).

**There Is No Exception for Conduct That Threatens Privacy or Safety**. The issue of whether Daniel's Law protects "the privacy and safety of [] New Jersey residents," as Plaintiffs contend, is irrelevant to extraterritoriality. Opp'n at 36. New Jersey residents do not carry New Jersey state-law in their pockets, following them outside of New Jersey to ensure their continued "privacy and safety." *See id*. And, of course, there are numerous examples of state statutes designed to protect New Jersey residents which ***do not protect them from conduct outside the state***. *See, e.g.*, *State v. Sumulikoski*, 221 N.J. 93, 111 (2015) (New Jersey state-law against sexual assault did not apply to assault of three New Jersey teenagers on class trip in

Germany); *Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 10-11 (1995) (New Jersey state-law against retaliation did not apply to New Jersey resident who complained about harassment at work in Pennsylvania). For example, the conduct at issue in *Sumulikoski*, manifestly, related to the privacy and safety of New Jersey residents—*i.e.*, the State of New Jersey alleged that a teacher and school administrator had sexual intercourse with three underage New Jersey students. *See id*. at 97. However, the New Supreme Court correctly explained that N.J.S.A. 2C:14-2 (which governs "sexual assault") did not apply because "all of the acts of sexual misconduct allegedly occurred in Germany." *Id.* at 106-07.

**<u>There Is a Risk of Inconsistent Legislation</u>**.  Plaintiffs concede that "extraterritorial application of a statute" is impermissible "where it would result in 'inconsistent legislation' from other states." *See* Opp'n at 36 n.20. However, Plaintiffs baldly conclude there is "no risk" of inconsistent legislation because Daniel's Law applies to "New Jersey public servants." *Id*.

Plaintiffs' *ipse dixit* on this issue is overly simplistic and wrong. As an initial matter, as Plaintiffs know, Daniel's Law does not only apply to "New Jersey public servants"—it also applies to family members and ***former*** public servants (all of whom may reside outside the borders of New Jersey). Furthermore, there is already an assortment of inconsistent state statutes governing this area of law. *See, e.g.*, Cal. Gov. Code § 6254.21; Colo. Rev. Stat. §18-9-313 (under Colorado law "[i]t is

5

unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family").

If Daniel's Law were permitted to apply outside New Jersey, it would result in a patchwork of overlapping state-law obligations for Defendants. Plaintiffs' argument also requires the (baseless) assumption that no jurisdiction in the world, other than New Jersey, could possibly pass a law that governs any of the same contact information of the same "covered persons" under Daniel's Law (e.g., former New Jersey public servants residing in various jurisdictions outside the State).

Plainly, there is not "no risk" of inconsistent laws, as Plaintiffs contend. Accordingly, Plaintiffs' claims against Defendants should be dismissed.

## II. The CDA Bars Plaintiffs' Claims Against Defendants.

Seeking to avoid the CDA's application, Plaintiffs advance the following arguments: (i) CDA immunity cannot be established based on website information; (ii) Plaintiffs' claims "pertain[] to intellectual property"; (iii) Plaintiffs do not seek liability based on Defendants' publishing of Covered Persons' information or "improper content"; and (iv) Defendants "are not exercising mere editorial functions." Opp'n at 45-52. Not one of these arguments have merit.

***Defendants' websites are expressly referenced and relied upon in the Complaints.*** It is blackletter law that where documents (here, websites) are "*explicitly relied* upon in the complaint," the Court may consider them as part of a

6

motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original and citations omitted). In each of Plaintiffs' complaints, they explicitly cite to and rely upon Defendants' respective websites, opening the door to the Court's consideration of these websites and negating Plaintiffs' reliance upon *Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2008). *See, e.g.*, *Atlas Data Privacy Corp., et al. v. We Inform, LLC, et al.*, Compl. ¶ 38.

**_Plaintiffs' claims do not pertain to Intellectual Property_**.  It is well-settled that the protections conferred by the CDA do not extend to claims based on intellectual property ("IP") law. *See* 47 U.S.C. § § 230(e)(2). IP, of course, refers to intangible rights such as rights based on patents, inventions, copyrights, trademarks and trade secrets. *See Hepp v. Facebook*, 14 F.4th 204, 213 (3d Cir. 2021); *Intellectual Property* Black's Law Dictionary (12th ed. 2024). Because, however, Daniel's Law does ***not*** implicate IP rights, Plaintiffs' reliance upon this exception, Opp'n at 47-48 n.26, is legally infirm. *See Obado v. Magedson*, 2014 WL 377826, at *7 (D.N.J. July 31, 2014) (rejecting IP exception based on the "mere appearance of Plaintiff's name"); *Ratermann v. Pierre Fabre USA*, 651 F. Supp. 3d 657, 669 (S.D.N.Y. 2023) (same).

**_Plaintiffs seek to impose liability based on Defendants' alleged publishing of Covered Person's information._**  In Opposition, Plaintiffs argue that "nothing in Daniel's Law requires the Covered Persons' information be published to third parties

7

318179786v.2

for liability to attach." Opp'n at 48. This misses the point. It is beyond dispute that Plaintiffs seek to hold Defendants liable as alleged publishers of Covered Person's information,[2] which places this matter squarely within the confines of the CDA.

**_The CDA is not limited to "improper content."_** Relying upon non-binding authority, Plaintiffs argue that because they do not seek to hold Defendants liable for publishing improper content, CDA immunity does not apply. Opp'n at 48-49 (citing *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 120–21 (4th Cir. 2022)). *Henderson*, however, is readily distinguishable: there, the Fourth Circuit examined the CDA against a defendant that published criminal charges, while omitting the charge dispositions, and added "its own misleading summaries." *Id.* at 128. It was against this factual backdrop that the Fourth Circuit narrowly construed the CDA's application to liability based on "improper content." *Id.* at 121.

That distinction aside, Plaintiffs' proposed interpretation makes no logical sense and would limit CDA immunity only to those who publish improper content, but not those who post accurate information. Recognizing this, the Fourth Circuit's narrow construction has been flatly rejected by, among others, federal courts in New York and California. *Foley v. IRBsearch, LLC*, 2025 WL 950679, at *11-13

---

[2] In relevant part, Daniel's Law requires, and Plaintiffs seek to hold Defendants liable for, allegedly continuing to "*disclose or re-disclose on the Internet or otherwise make available*, the home address or unpublished home telephone number of any covered person" after receiving an allegedly compliant notification not to do so. N.J. Stat. Ann. § 56:8-166.1 (emphasis added).

8

nn. 2 & 4 (S.D.N.Y. Mar. 28, 2025) ("The Court parts company with the Fourth Circuit's conclusion in *Henderson*"); *Divino Grp. LLC v. Google LLC*, 2023 WL 218966, at *2 (N.D. Cal. Jan. 17, 2023) ("*Henderson's* narrow interpretation of section 230(c)(1) is in tension with the California Supreme Court's broader view").

More importantly, this Court has not adopted the Fourth Circuit's narrowed approach and, instead, has applied the CDA to the disclosure of ***accurate*** information. *See MyLife.com*, 2021 WL 6049830, at *5 (applying the CDA to the disclosure of "property records" and "contact information"). Indeed, federal courts across the country have similarly adopted this common-sense interpretation. *See, e.g.*, *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (applying CDA where Google listed plaintiff's name in response to search queries); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) (same); *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *1, *6 (N.D. Cal. Mar. 1, 2021) (accord).

**<u>Defendants publish information provided by other content providers.</u>** In a final effort to avoid the CDA, Plaintiffs baldly assert that "Defendants take an active role in soliciting and obtaining specifically sought Covered Persons' information, including unpublished content, and curating it for publication to its customers." Opp'n at 51. But nowhere in the Complaint do Plaintiffs make these allegations.[3]

---

[3] Paragraphs 33 and 34 of the Complaint, which Plaintiffs rely upon in support of this argument, ***say nothing*** about Defendants' purported solicitation, collection, or curation of information.

9

Nor could they, since it is plain from Defendants' respective websites that this information is received by other information content providers, which therefore immunizes Defendants from liability. *See MyLife.com*, 2021 WL 6049830, at *5.[4] Put differently, the complained-of information (i.e., Covered Person's ***own*** phone number and address) "derive[s] solely from information generated by third parties," which was, clearly, ***not generated by Defendants***. *See Anderson v. TikTok*, 116 F.4th 180, 184 n.13 (3d Cir. 2024) ("Merely arranging and displaying others' content . . . is not enough to hold a defendant platform responsible as the developer or creator of that content") (quotations and brackets omitted).

### III.   The Complaint Should Be Dismissed With Prejudice

Because no amendment could cure the legal deficiencies, leave to amend should be denied as futile. *See, e.g.*, *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 664 n.8 (E.D. Pa. 2020) ("Because the claim fails as a matter of law, leave to amend would be futile").

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaints with prejudice for failure to state a claim under Federal Rule 12(b)(6).

---

[4] This, in turn, renders inapposite Plaintiffs' reliance upon the state court's unpublished decision in *Atlas, et al. v. Twilio, Inc., et al.*, MRS-L-000226-24 (N.J. Super. Ct. Law Div. Apr. 23, 2025), since Twilio's website failed to similarly establish that it published information of third-parties.

Dated: June 3, 2025                SEYFARTH SHAW LLP

        By: */s/ Robert T. Szyba*
            Robert T. Szyba
            rszyba@seyfarth.com
            Max A. Scharf
            mscharf@seyfarth.com
            620 Eighth Avenue
            New York, New York  10018
            Telephone:  (212) 218-5500
            Facsimile:  (212) 218-5526

*Attorneys for Defendants Infomatics, LLC,*
*The People Searchers, LLC, and We Inform, LLC*

MANATT, PHELPS & PHILLIPS, LLP

        By: */s/ Kenneth D. Friedman*
            Kenneth D. Friedman
            Matthew F. Bruno
            7 Times Square
            New York, New York 10036
            (212) 790-4500
            kfriedman@manatt.com
            mbruno@manatt.com

            Brandon P. Reilly (*pro hac vice*)
            One Embarcadero Center, 30th Floor
            San Francisco, California 94111
            (415) 291-7400
            breilly@manatt.com

*Attorneys for Defendants Smarty, LLC and*
*SmartyStreets, LLC*

318179786v.2